**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KEVIN J. MATTSON, | ) | Chapter 7 |
| | ) | Case No. 24-20188 PGC |
| Debtor. | ) | |
| _____ | ) | |
| MONTRESOR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Proc. No. 25-2006 |
| v. | ) | |
| | ) | |
| KEVIN J. MATTSON, | ) | |
| | ) | |
| Defendant/Debtor. | ) | |

**CREDITOR MONTRESOR LLC'S OBJECTION TO CONSENTED-TO**
**MOTION TO WITHDRAW AS COUNSEL**

NOW COMES Montresor LLC ("Montresor"), Plaintiff in the above-captioned Adversary Proceeding and creditor in the Chapter 7 case of Debtor, Kevin J. Mattson ("Debtor"), pursuant to 11 U.S.C. §§ 105 and 329, Federal Rules of Bankruptcy Procedure 2016, 2017, 9011, 9013 and 9014, D. Me. LBR 9010-1(d), 9013-1, and 9014-1, and the applicable Maine Rules of Professional Conduct, and objects to Marcus Clegg's Consented-to Motion to Withdraw as Counsel, dated December 12, 2025 (Adv. Proc. D.E. 30) ("Motion to Withdraw").

The basis for Montresor's objection to the Motion to Withdraw is simple.

Either 11 U.S.C. § 329, Federal Rules of Bankruptcy Procedure 2016, 2017, and 9011, D. Me. LBR 9010-1(d)(1), Maine Rules of Professional Conduct 1.1, 1.2(d), 1.3, 1.4(a)(5), 1.5(a), (b), and (h), 1.6(b)(2) and (3), 1.7(b), 1.8(f). 1.16(b)(5). 3.3(a)(1), (2), and (3), 3.4(c) and (e), 3.5(d), 4.1(a), and 8.4(a) and (d), and Marcus Clegg's Disclosure of Compensation for Debtor, dated November 10, 2025 (D.E. 173) ("Disclosure of Compensation"), mean what they say and can be relied upon by attorneys and parties appearing in this Court – or the Motion to Withdraw can be granted. It cannot be both.

In support of its Objection, Montresor states as follows.

### I. Constitutional and Statutory Authority, Jurisdiction, and Venue

1.  This Court possesses Constitutional authority to issue final orders and judgments in this contested matter, it has jurisdiction pursuant to 28 U.S.C. § 1334(b), this is a statutorily-core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. Facts

2.  On September 12, 2024 ("Filing Date"), multiple petitioning creditors commenced this case against Debtor through the filing of a Chapter 7 Involuntary Petition Against an Individual.

3.  On October 2, 2024, Debtor, then proceeding *pro se*, filed his Motion to Extend Deadline to Respond to Involuntary Petition (D.E. 7). In his Motion to Extend, Debtor stated that "[s]ince being served with the [Involuntary] summons, I have been working diligently to find counsel." Motion to Extend, p.1.[1]

4.  On October 10, 2024, the Court issued its Order for Relief in an Involuntary Case (D.E. 10).

5.  On October 23, 2024, the Court issued its Order (D.E. 30) granting Debtor's Motion to Convert Case from Chapter 7 to Chapter 11 (D.E. 13).

6.  On February 11, 2025, Andrew C. Helman, Esq. and Dentons ("Attorney Helman") entered their appearance on behalf of Debtor in his then-Chapter 11 case (D.E. 78).

7.  On February 11, 2025, the Court issued its Order re-converting Debtor's Chapter 11 case to one under Chapter 7 of the United States Bankruptcy Code (the "Code") (D.E. 80).

---

[1] Despite his diligent efforts to find counsel, Debtor was unable to do so for the next four months until Attorney Helman entered his appearance on behalf of Debtor on February 11, 2025 (D.E. 92).

2

8. On February 18, 2025, Marcus Clegg entered its appearance on behalf of Debtor in his Chapter 7 case (D.E. 92).

9. On February 21, 2025, Attorney Helman withdrew his appearance on behalf of Debtor in his Chapter 7 case (D.E. 93).

10. On May 5, 2025, Montresor commenced the above-captioned Adversary Proceeding against Debtor pursuant to 11 U.S.C. § 727(a)(2) – (7) (Adv. Proc. D.E. 1).

11. On May 12, 2025, Marcus Clegg entered its appearance on behalf of Debtor in the Adversary Proceeding (Adv. Proc. D.E. 5, 6).

12. On August 7, 2025, the Chapter 7 Trustee, Edmond J. Ford, Esq. ("Trustee"), in Debtor's Chapter 7 case filed an Adversary Proceeding against Marcus Clegg, an entity solely owned by Debtor, Seton Unit 4, LLC ("Seton 4"), and a creditor of Debtor, Terence J. Conklin ("Conklin"), Adv. Proc. 25-2009 ("Trustee Adversary Proceeding").

13. On August 18, 2025, Marcus Clegg filed a Motion to Dismiss the Trustee Adversary Proceeding on behalf of itself and the interests of Conklin, who is purportedly proceeding "*pro se*" in the Trustee Adversary Proceeding. *See* Trustee Adversary Proceeding, D.E. 6.

14. On September 23, 2025, the Bankruptcy Court denied the Motion to Dismiss filed by Marcus Clegg on its and Conklin's behalf. *See* Trustee Adversary Proceeding, D.E. 17.

15. On October 6, 2025, Marcus Clegg filed its Answer and Affirmative Defenses in the Trustee Adversary Proceeding (D.E. 18).

16. On October 7, 2025, Conklin filed his filed its Answer and Affirmative Defenses in the Trustee Adversary Proceeding (D.E. 18) – which Answer and Affirmative Defenses is identical to the one filed by Marcus Clegg, right down to the font.[2]

---

[2] Not only that, but Conklin is also a creditor of Debtor with an unenforceable claim against Debtor's estate. *See* Montresor LLC's Objection to Proof of Claim of Terence J. Conklin, dated December 8, 2025 (D.E. 182). *See In re Morey*, 416 B.R. 364, 368 (Bankr. D. Mass. 2009) ("Several courts examining possible attorney conflicts in similar

3

17. On October 26, 2025, Montresor filed its Motion for Determination of Excessiveness of Payments for Legal Services Rendered by Counsel, Pursuant to Federal Rule of Bankruptcy Procedure 2017 (D.E. 167) (the "Rule 2017 Motion").

18. In its Rule 2017 Motion, Montresor raised the issues of Marcus Clegg's:

(i) ongoing failure to file the required disclosure of compensation statement under Federal Rule of Bankruptcy Procedure 2016;

(ii) undisclosed receipt of $30,000 in fees from Debtor within the year before the Filing Date; and

(iii) undisclosed payment agreement and arrangement with Debtor set forth in that certain Guaranty (dated March 7, 2024) signed by Seton 4 through Debtor.

*See* Rule 2017 Motion, ¶¶ 16 – 20.

19. On November 10, 2025, Marcus Clegg filed its Disclosure of Compensation (D.E. 173).[3]

20. In its Disclosure of Compensation, Marcus Clegg states as follows:

- "Prior to the filing of this statement I have received…….$5,0000.00" (¶ 1);

- "In return for the above-disclosed fee, I have agreed to render legal services for all aspects of the bankruptcy case, including….

   Revisions to schedules and Statement of Financial Affairs, representation in ongoing Chapter 7 case, including any nondischargeability adversary proceedings." Disclosure of Compensation (¶ 5(d) (emphasis added));

- "By agreement with the debtor(s), the above-disclosed fee does not include the following service:" _____ (¶ 6); and

- "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding." Disclosure of Compensation, Certification (emphasis added).

---

circumstances have held that simultaneous representation of the debtor and non-debtor defendants in an adversary proceeding creates an irreconcilable conflict of interest.") (Chapter 7 debtor's counsel disqualified).

[3] A true copy of which is attached as Exhibit A.

21. On November 20, 2025, the Court issued its Order (D.E. 176) denying Montresor's Rule 2017 Motion, concluding that equity demanded that no further assessment of Marcus Clegg's transparency and disclosure obligations under the Code or applicable Federal Rules of Bankruptcy Procedure be conducted.

22. Now, 10 months after first entering its appearance on behalf of Debtor in his Chapter 7 case, and less than 1 month before discovery closes in this Adversary Proceeding (January 8, 2026), Marcus Clegg seeks permission to withdraw as Debtor's counsel. *See* Motion to Withdraw (Adv. Proc. No. 30); *see also* Consented-To Motion to Withdraw as Counsel, dated December 12, 2025 (D.E. 183).[4]

23. The Code, the applicable rules of procedure, and this Court's inherent power to manage cases efficiently require that the Motion to Withdraw be denied.

### III. Discussion

**A. Marcus Clegg Agreed to Represent Debtor in All Aspects of his Chapter 7 Case and This Adversary Proceeding for (Most Likely) $5,000**

24. Pursuant to Marcus Clegg's Disclosure of Compensation, it agreed with Debtor to represent him in all aspects of his Chapter 7 case and this Adversary Proceeding in exchange for "$5,0000.00" Disclosure of Compensation ¶ 1, 5. And while Marcus Clegg and Debtor could have agreed to exclude certain or specific legal services from their flat-fee payment agreement or arrangement, such as any adversary proceedings for example, they elected not to. *Id.* ¶ 6.

25. Consequently, if § 329 of the Code, Federal Rule of Bankruptcy Procedure 2016(b), and applicable federal law mean what they say and apply, then that is the end of it and the Motion to

---

[4] Notably, Marcus Clegg is not similarly seeking to withdraw as Debtor's counsel in the Trustee Adversary Proceeding. Perhaps it is because of the Trustee's pending Motion to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a), dated December 3, 2025 ("9019 Motion") (D.E. 178), seeking the Court's approval of a proposed settlement by and among the Trustee, Marcus Clegg, Seton 4, and Conklin in relation to the Trustee Adversary Proceeding, which Montresor will oppose on multiple legal and factual grounds by the December 26 deadline for objections.

5

Withdraw must be denied. *See* 11 U.S.C. § 329(a) ("Any attorney representing a debtor in a case under this title, or in connection with such a case, . . . shall file with the court a statement of <u>the compensation</u> paid or <u>agreed to be paid</u>….") (emphasis added); Fed. R. Bankr. P. 2016(b) (implementing § 329 of the Code); *see*

26. Yet strangely, in its Motion to Withdraw, Marcus Clegg states that the basis for its request to withdraw is because a "conflict has arisen between the Debtor and [Marcus Clegg] with respect to the terms of counsel's representation of the Debtor as previously agreed upon." Motion to Withdraw ¶ 2. But that cannot be right.

27. Marcus Clegg and Debtor, as set forth in Disclosure of Compensation, specifically and expressly agreed that the firm would represent Debtor in all aspects of his Chapter 7 case and this Adversary Proceeding for $5,000. *See* Disclosure of Compensation ¶¶ 1, 5. What "conflict" could there possibly be between Marcus Clegg and Debtor "with respect to the terms of" Marcus Clegg's representation of Debtor "as previously agreed upon"?

28. The disclosed terms of representation are pretty simple. Debtor paid Marcus Clegg $5,000 prior to the filing of the Disclosure of Compensation, and in exchange, Marcus Clegg agreed to represent Debtor to the final conclusion of every aspect of his Chapter 7 case and any discharge proceedings. In fairness, it does seem like a bad deal for Marcus Clegg, but that is what the firm knowingly agreed to do, and it has a long history of representing debtors in this District. It is not like Marcus Clegg can be surprised by any of this given its deep experience in bankruptcy proceedings.

29. Nor did anyone force Marcus Clegg to represent Debtor. In fact, it only entered its appearance on behalf of Debtor 5 months after the Filing Date, and after the U.S. Trustee sought the conversion of Debtor' case to Chapter 7 under § 1112(b) because of Debtor's myriad failures to comply with any of his disclosure and other obligations while in Chapter 11, and because he was

6

uncooperative and not forthcoming with the U.S. Trustee. Marcus Clegg knew, or clearly should have known, what it was taking on when it agreed to represent Debtor for $5,000. The firm cannot be heard to complain now about the situation it finds itself in, which is completely self-created.

30. Now, if Marcus Clegg's reference to a conflict over the terms of representation between itself and Debtor relates to the undisclosed Guaranty from Seton 4 (agreed to within 1 year before the Filing Date), then that would make much more sense. For under that undisclosed Guaranty and agreement and arrangement for payment, Marcus Clegg specifically retained the right to "Cease providing legal services to any or all of the Client Entities" in the event of non-payment. *See* Exhibit B attached hereto (Guaranty, p. 1 and ¶ 3(b)) ("Client Entities" specifically includes Debtor).

31. But Marcus Clegg cannot be referring to a conflict with respect to the Guaranty, because for purposes of the Chapter 7 case, it does not exist. *See, e.g.,* Disclosure of Compensation. It is ironic, though, that if it did exist, at least in Montresor's view, Marcus Clegg's failure to disclose the Guaranty and its agreement and arrangement for payment by Debtor to Marcus Clegg would be grounds for disqualification under §§ 105 and 329 of the Code and Federal Rule of Bankruptcy Procedure 2016(b). *See, e.g., In re Indep. Eng'g Co., Inc.*, 197 F.3d 13, 17 (1st Cir. 1999) ("Section 329 requires debtor's counsel to disclose to the court the amount and the source of any compensation that counsel has received, or expects to receive, from the client for the year that preceded the bankruptcy petition.").

> Compliance with Section 329 and Fed. R. Bankr. P. 2016(b) is mandatory. In re Parrilla, 530 B.R. 1, 10 (Bankr. D.P.R. 2015) ("Debtor's attorneys must comply with the mandatory disclosure requirements of 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b) to receive compensation."). "In short, the Rule 2016(b) statement is an attorney's certification on which the Debtor, the Court, the Trustee, and the creditors rely. It is not a meaningless paper that attorneys can ignore or blithely treat as insignificant." In re Kowalski, 402 B.R. 843, 848 (Bankr. N.D. Ill. 2009). Accordingly, "[c]ourts have been ready to impose severe sanctions on professionals who fail to comply with the rules and statutory scheme governing compensation." Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶ 2016.01 (16th ed. 2015). "Failure to comply with Bankruptcy Rule 2016 can provide grounds for disqualification of debtor's counsel, disallowance of fees in whole or in part and

7

disgorgement of fees." McMullen v. Schultz, 428 B.R. 4, 13 (D. Mass. 2010). *In re Bonilla*, 573 B.R. 368, 378 (Bankr. D.P.R. 2017) (Chapter 7 debtor counsel's fees disgorged).

32. Regardless, for the straightforward reason discussed above with respect to the Disclosure of Compensation and § 329 of the Code, the Motion to Withdraw must be denied.

### B. It is Completely Unjustified and Too Late for Marcus Clegg to Withdraw Now

33. "It is well-settled that a court has 'considerable discretion in deciding a motion for withdrawal of counsel." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 657 B.R. 382, 387–88 (Bankr. S.D.N.Y. 2024). "[I]n the absence of a compelling justification, the Court will not relieve an attorney from his obligations." *Id.* at 88.

34. Under the totality of the circumstances, the Motion to Withdraw must be denied.

35. First, as set forth above, Marcus Clegg unequivocally knew what it was signing up for when it agreed to represent Debtor in these proceedings. And the firm has represented Debtor and all his seemingly innumerable entities for well over a decade if not more, *see, e.g.,* Dirigo Global Holdings, LLC, Ch. 11, Case No. 24-10084; Waterville Redevelopment Company, IV, LLC, Ch. 11, Case No. 24-10027; Waterville Redevelopment Company, III, LLC, Ch. 11, Case No. 24-10265 (Schedule E/F ¶ 3.15 (D.E. 18) ("WRC III") (listing Marcus Clegg as an unsecured creditor with a claim in the amount of $181,898.33). Plainly, Marcus Clegg is best suited to represent Debtor given its extensive knowledge of his financial affairs and all his many businesses.

36. Second, Marcus Clegg cannot be heard to complain about non-payment of fees for legal services provided because: (a) it agreed to accept a flat fee of $5,000 for those services; (b) it actual has knowledge that Debtor is completely unreliable in terms of paying his debts as they come due (*e.g.*, the firm is owed $181,000+ from WRC III); and (c) it knew when it took on the case that Mattson claimed assets of $19,580 and liabilities in excess of $36 million dollars. *See* Schedules (D.E. 41). *See Sec. Inv'r Prot. Corp.*, 657 B.R. at 390 ("When evaluating a motion to withdraw based

8

on nonpayment of fees, courts may consider the warning that the law firm had regarding its client's future inability to pay."). Against that backdrop, it was completely foreseeable that Marcus Clegg would eventually be faced with non-payment issues from its hopelessly insolvent client.

37. Three, discovery in this Adversary Proceeding closes on January 8, 2026. Montresor likely has in excess of 50,000 pages of bank records, documents, contracts, and communications that it will need to fully review, organize, and prepare for trial. Debtor is going to have to do the same. And both sides are going to have to prepare exhibit and witness lists to deal with the 20 counts of Montresor's Amended Complaint under § 727(a)(2) – (7) of the Code.

38. That is going to be a substantial amount of work in the next 60 days to be ready for trial in early March. And yet Marcus Clegg submits that Debtor is going to be just fine managing all that on a *pro se* basis? Debtor already tried that approach during the Chapter 11 phase of this case from September 2024 to February 2025, and it did not go or end well. In other words, it is too late for Marcus Clegg to withdraw now, and it would be severely prejudicial Debtor, Montresor, and this Court's management of its docket. *See Sec. Inv'r Prot. Corp.*, 657 B.R. at 391, 393 ("The Court may also consider whether the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel.") (quotations omitted); ("The Court finds that there is significant risk of disrupting a critical stage of the litigation and will not allow Counsel to withdraw at this stage of the proceeding on the basis of the facts presented.").

39. Four, Montresor submits that Marcus Clegg's effort to withdraw is an absolute abdication of its professional obligations to Debtor and basically ensures that his discharge – of $36 million in scheduled liabilities – will be denied. *See In re Morey*, 416 B.R. at 367 ("This Court . . . believes that the only duty which counsel for the debtor assumes is to his or her client."); *see also* Maine Rules of Professional Conduct 1.1, 1.2(d), 1.3, 1.4(a)(5), 1.5(a), (b), and (h), 1.6(b)(2) and (3), 1.7(b), 1.8(f). 1.16(b)(5). 3.3(a)(1), (2), and (3), 3.4(c) and (e), 3.5(d), 4.1(a), and 8.4(a) and (d).

40. Five, while Montresor will respond Debtor's Motion for an Order Staying Adversary Proceeding, dated December 12, 2025 (D.E. 29) in due course, suffice to say that that motion is more than a bit troubling given its representations and extraordinarily cynical. Once the matter is fully briefed and presented to the Court, Montresor believes that Debtor's request for a stay of this Adversary Proceeding will be denied.

41. Finally, while the Court has "discretion to condition leave to withdraw mitigating the prejudice or disruption that withdrawal would otherwise cause," for instance by permitting Marcus Clegg to withdraw upon the entry of appearance of replacement counsel, if that "new" counsel is the once and future Attorney Helman and Dentons, then it is exceedingly likely that Montresor will seek their disqualification in this case. It is not a threat, but a statement of fact that additional satellite litigation will likely ensue if that happens. The Court should take that into account in its determination of whether, and on what terms, Marcus Clegg is permitted to withdraw, if it is so permitted, which it should not be for all the reasons discussed above.

### IV. Conclusion

WHEREFORE, for all these reasons, Creditor Montresor LLC requests that the Court deny Marcus Clegg's Motion to Withdraw, and that it grant Montresor such other and further relief as may be just and equitable under the circumstances.

Dated at Portland, Maine this 13th day of December, 2025.

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditor,
Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that today I served copies of the above Response and this Certificate of Service, upon each of the parties listed on the Notice of Electronic Filing via the Court's Administrative Procedures Governing the Filing and Service by Electronic Means.

    Dated at Portland, Maine this 13th day of December, 2025.

                                                          /s/ Randy J. Creswell
                                                          Randy J. Creswell, Esq.
                                                          Counsel for Creditor,
                                                          Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com