UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

*********************
In re:                                                                                  Chapter 7
Kevin J. Mattson,                                                           Case No. 24-20188-PGC
        Debtor
*********************

**TRUSTEE'S SUPPLEMENTAL MEMORANDUM
ON CERTAIN TAX ISSUES RELATING TO
MOTION TO APPROVE COMPROMISE
PURSUANT TO FED. R. BANKR. P. 9019(a)**

*NOW COMES* Edmond J. Ford, Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate of Kevin J. Mattson (the "Estate"), by his attorneys Ford, McDonald & Borden, P.A., and files this Supplemental Memorandum in on Certain Tax Issues Relating to his Motion to Approve Compromise.

**INTRODUCTION**

The Trustee has exercised his business judgement in seeking approval of this compromise because he does not believe there is any realistic possibility that anyone will obtain and keep any federal or state historic rehabilitation tax credits from the Debtor's Elizabeth Seton Memorial Hospital project. Montresor, LLC, a creditor, objected[1] arguing (among other things) that the Trustee will prevail in the compromised litigation and that, there are no adverse tax consequences to the estate if there is a credit.

The tax argument made is that: (a) any investment credit recapture is merely a pre-petition tax claim *Montresor Obj.* ¶¶29-34, *citing,* In re Higgins, 29 B.R. 196 (Bankr. N.D. Iowa 1983); and (b) that because the Maine limited liability statute restricts the transfer of non-

---

[1] *Creditor Montresor LLC's Objection to Motion to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a)* [D.E. 201] ("*Montresor Obj.*")

economic rights of members, in this single member LLC, tax consequences do not flow to the estate. *Montresor Obj.* ¶¶38-43, *citing* no federal law.

**SUMMARY**: Montresor's priority argument depends on a case whose facts predated the Bankruptcy Tax Act of 1980 and provides no guidance as to the application of that act. The State Law argument as it relates to federal tax law is just wrong.

Montresor's tax law argument, even if correct, would make the tax an eighth priority claim. 11 U.S.C. § 507(a)(8). Montresor's state law argument would not change that priority. If Montressor is right, the recapture tax liability, is paid in full before unsecured creditors. Whether Montresor is right or wrong, the dilution to unsecured creditors is the same.

The Trustee's role is to cause payment not to the IRS but to unsecured creditors. Handbook for Chapter 7 Trustees, US Dept. of Justice, October 1,2012, p. 4-3 ("Prior to administering a case as an asset case, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors.")

**Analysis of Higgins**: *Higgins Pre-dates the Current Tax Law.*

Higgins  involved two issues – allowance of a late filed claim on behalf of the IRS (before the current Rule 3004) and whether the claim was a first priority §507(a)(1) or sixth priority §507(a) (6)[2] (before the Bankruptcy Tax Act of 1980 was in effect).

The Higgins court had two reasons for treating the tax as a prepetition claim (and therefore a 6th priority). The first was the two-part analysis cited by Montressor – the tax relates to pre-petition income, and did not relate to estate's use of property. Higgins, at 201. The second alternative rational was that the creation of the bankruptcy estate by Section 541 (a) was a transfer that triggered income taxes:

---

[2] The statutory references were modified by P.L. 109-8, Title II, Subtitle B, § 212, Subtitle C, § 223, Title VII, §§ 705, 706, Title XIV, § 1401, Title XV, § 1502(a)(1), 119 Stat. 51, 62, 126, 214, 216. ("BAPCPA")

2

> There is yet another reason for deciding that the investment credit recapture tax is not a tax incurred by the estate. Under the Bankruptcy Act of 1898, the IRS took the position that a debtor's liability for such a tax arose on the date the assets were transferred to the bankruptcy trustee because such a transfer was a "disposition" of the asset for purposes of triggering the recapture provision. 26 U.S.C. § 47(a); Treas. Reg. § 1.47-2(a); *Mueller v. Commissioner,* 60 T.C. 36, 47 (1973); Rev. Rul. 74-26, 1974 C.B.-7.

Id, at 201.

As the Higgins Court recognized, the Bankruptcy Tax Act of 1980 changed that analysis:

> under the Bankruptcy Reform Act of 1978, the debtor's assets are likewise "transferred" to the estate as of the commencement of the case, 11 U.S.C. § 546(a), but Section 3 of the Bankruptcy Tax Act of 1980, 26 U.S.C. § 1398(f), provides that the transfer of assets from the debtor to the estate is *not* a disposition for purposes of the Internal Revenue Code recapture provisions.  The Bankruptcy Tax Act took effect after the commencement of this case, however, and thus has no application to this case.  *See,* Bankruptcy Tax Act of 1980, § 7(b).

Id, at 201-02. As the Higgins Court notes, cases filed after 1980 benefit from the rule that no taxable transaction occurs by the creation of the bankruptcy estate.

Today, the transfers effected by 11 U.S.C. §§541 and 554 (abandonment) trigger no recognition of income.  That non-recognition is implemented by 26 U.S.C. §1398(f) (non-recognition) and (g) (succession to tax attributes):

> **(f)** Treatment of transfers between debtor and estate.
>
> > (1) Transfer to estate not treated as disposition. A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.
>
> > (2) Transfer from estate to debtor not treated as disposition. In the case of a termination of the estate, a transfer (other than by sale or exchange) of an asset from the estate to the debtor shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the debtor shall be treated as the estate would be treated with respect to such asset.

> (g) Estate succeeds to tax attributes of debtor. The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor—
>
> > (1) Net operating loss carryovers. . . .
> >
> > (2) Charitable contributions carryovers. . . .
> >
> > (3) Recovery of tax benefit items. . . .
> >
> > (4) Credit carryovers, etc. . . .
> >
> > (5) Capital loss carryovers. ..
> >
> > (6) Basis, holding period, and character of assets. . . .
> >
> > (7) Method of accounting. The method of accounting used by the debtor.
> >
> > (8) Other attributes. Other tax attributes of the debtor, to the extent provided in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section.

26 U.S.C.S. § 1398. The law changed since Higgins; the statute now expressly provides that the creation of a bankruptcy estate is not a taxable event. 26 U.S.C. §1398(f). The estate instead, acquires the property with its tax attributes. 26 U.S.C. §1398(g). In sum, Higgins provides this Court with no guidance.

**Analysis of Other Cited Cases:** Davidson is Decided on Untimely Filing.

Montresor's Objection cites Higgins and three other cases. Of the three other cases, only In re Davidson Lumber Co., 47 B.R. 597 (Bankr. S.D. Fla. 1985) deals with investment tax credit recapture. The other two are irrelevant: (1) In re Garfinckels, Inc., 203 B.R. 814 (Bankr. D.D.C. 1996) deals with the priority of a personal property tax for property held and sold post-petition, and allows such a tax administrative priority. (2) In re Overly-Hautz Co., 57 B.R. 932 (Bankr. N.D. Ohio 1986) deals with an excise tax for a pension plan pre-petition underfunding. That court held that the tax was not administrative but pre-petition because even though it was assessed post-petition it accrued pre-petiion. Only Davidson follows Higgins.

4

Davidson, like Higgins, involved a late filed IRS claim. Unlike Higgins the IRS claim was originally allowed to file an untimely by the IRS (in Higgins the claim was filed by the Debtor). The IRS then sought to amend the claim to include the recapture. The Davidson Court refused to allow the amendment of the late filed claim because the claim as filed gave no notice of the recapture liability. Id. at 599; *following* In re Int'l Horizons, Inc., 751 F.2d 1213 (11th Cir. 1985). The Davidson Court found that the amendment asserted a new claim and being tardy was not allowed. Id. at 599.

The Davidson court notes the Bankruptcy Tax Act of 1980 and saying: "[t]he I.R.S. in its memorandum of law (C.P. No. 487) concedes, and I agree, that this legislative history is inconclusive." Id. The legislative history was deletion of language that expressly made tax on recapture income a **pre**-petition liability. *Citing,* S. Rep. 95-989, 95th Cong., 2d Sess. 65 (1978). The argument that the Davidson court held inconclusive was that drafters rejected language that made tax credit recapture a pre-petition claim thereby evidencing intent that tax credit recapture be an administrative claim.

In Davidson the IRS argued that the new Bankruptcy Tax Act made the claim an administrative claim. The Court said, the legislative history is inconclusive but in any event the claim is late and therefore disallowed. Davidson does not teach that tax on recapture income is a pre-petition claim.

**State Law Claims:**

    a. *Montresor Misunderstands Basic Bankruptcy Tax Law – the Effect of Abandonment*

Montresor makes various wrong statements about tax law in ¶¶36 – 42. Montresor starts with the wrong assertion in ¶37 that:

> First, as discussed above, only Debtor has exposure in the event of recapture, not Seton 4, because Seton 4 is a disregarded entity for tax

5

purposes. So abandoning the estate's membership interest in Seton 4 does nothing to limit the estate's liability for Debtor's tax obligations.

The Tax Code disregards the single member LLC, and so the tax attributes of the single member LLC are treated as attributes of the Debtor Mr. Mattson.  When Mr. Mattson became a debtor under the code, those tax attributes became tax attributes of the Bankruptcy Estate. 26 U.S.C.S. § 1398 (g).

The Tax Code treats Mr. Mattson as owner of a membership interest in Waterville Commercial, and through it, of real estate burdened by potential tax credit recapture.  Now the estate holds those attributes under the Tax Code.

When the Trustee abandons real estate, 11 U.S.C. §554 passes title back to the Debtor. 26 U.S.C. §1398(f)(2) causes those same tax attributes to pass back to the Debtor. After abandonment, if the property is foreclosed, the gain that arises is post-petition gain taxable to the post-petition debtor. Samore v. Olson (In re Olson), 930 F.2d 6 (8th Cir. 1991).

Abandoning the disregarded entity, Seton Unit 4, LLC, is the same as abandoning the interest in real estate it holds.  The tax law is that such an abandonment shifts the tax consequences of foreclosure to the Debtor.

      b.    *Montresor Misstates Fundamental Bankruptcy Law – the Debtor's Prepetition Debts are Claims.*

Montresor ends the tax section of its Objection with the wrong statement that:

> Critically, the Trustee's and estate's ownership of Debtor's transferrable interest in Seton 4 does not make either of them liable for Seton 4's debts or Debtor's tax liabilities.

*Montresor Obj.* ¶41.  The estate is liable for the Debtor's pre-petition tax liabilities in the sense that tax liabilities are claims entitled to a priority distribution. 11 U.S.C. §507(a)(8).

6

It is true that Debtor's post-petition tax liabilities are not claims against the Estate, but, whether the tax consequence of the disposition of property is recognized by the Debtor or the Estate depends on the interplay between 11 U.S.C. §554 and 26 U.S.C. §1398.

There is no provision of state law that insulates the bankruptcy estate from the tax consequences arising under federal law. Federal law says that the estate succeeds to Mr. Mattson's tax attributes.

### **The Numbers:**

The Trustee firmly believes that there will never be a Tax Credit Refund because the project has no hope of being, and will never be, finished. There is the possibility that improper tax return filings will generate an erroneous credit but the Trustee does not believe there will ever be a properly due credit.

If the Trustee is wrong, the proposed settlement is still better than continuing. It is better because the Estate gets about $70,000 without income tax recapture liability. *Motion to Approve Compromise*, p. 2. [D.E. 178]. It does so because the membership interest is abandoned as of the petition date. *Settlement Agreement*, ¶12, clause (e) [D.E. 41-1]. Abandonment shifts to the Debtor the tax liability. The income tax liability could easily make the net recovery (even if the Elizabeth Seton Hospital Project were finished) less than the settlement.

The general estimates follow. The estimates are merely guesses, but, they are the best the Trustee has.

The key problem is that the Hospital was foreclosed upon in 2025. Foreclosure is a recapture event triggering the recapture taxes and limiting the tax credit refund. The estimates follow:

7

*Gross Income*: If the Trustee rejects the settlement and completes the Hospital Project then the gross reportable income is the State Tax Credit Refund plus the federal investment credit recapture - $630,423.00 computed as follows:

| Years | State Refund | Fed Credit | Total |
|---|---|---|---|
| 2023 | $192,202.25 | $123,009.44 | $315,211.69 |
| 2024 | $192,202.25 | $123,009.44 | $315,211.69 |
| | | | |
| Total | $384,404.50 | $246,018.88 | $630,423.38 |

*Taxable Income:* Taxable income will probably be somewhere around $435,000.00 as follows:

| | |
|---|---|
| Gross Income | $630,423.38 |
| Standard Deduction | $15,750.00 |
| Trustee Fees | $90,000.00 |
| Project fees | $90,000.00 |
| Total Deductions | $195,750.00 |
| Taxable income | $434,673.38 |

*Federal Tax:* The federal income tax on that amount is around $122,000.00:

| 2025 Tax Calcs | |
|---|---|
| | |
| Taxable Income | $434,673.38 |
| Base Tax | $57,231.00 |
| Marginal Rate | 35% |
| Rate cut line | $250,525.00 |
| Total Tax | $121,682.93 |

*State Tax:* The state tax is around 7% of taxable income or $30,427.00. The total tax bill is therefore around $150,000. In addition, the State of Maine will offset its pre-petition taxes before payment. Those are scheduled at $62,433.10.

*The Net Benefit to the Estate about $40,000.00:* In light of the likely costs of amending and completing the National Park Service certification and of preparing the tax returns to get the credits for the project the net benefit to the estate is around $40,000.00:

| Calculation of Net Benefit to Estate | | |
|---|---|---|
| State Refund | | **$384,404.50** |
| State of Maine Set off for Taxes | $62,433.10 | |
| Costs to complete permitting | $40,000.00 | |
| Costs to file Tax Returns | $40,000.00 | |
| Cost to finish AP Litigation | $40,000.00 | |
| National Park Service Fees | $10,000.00 | |
| Taxes Due | $152,110.07 | |
| Total costs | | $344,543.17 |
| | | |
| **Net** | | **$39,861.33** |

Each of those costs are admittedly guesses. For the accountants, the costs are less than the agreed charges in the settlement. That does not mean that the Trustee thinks that the proposed payment to the accountants is unreasonable, it only means that even if the objection to the proposed payment were accurate, some significant amount still must be set aside for the expenses and any reasonable amount supports the settlement.

Similarly, the Trustee thinks that the $25,000 allocated in the settlement to Heritage Consultants is probably a significant underestimate.

*The "At Risk" Problem*: The Trustee does not believe that the Tax Credits will ever be properly realized because he does not believe that the Project will ever be completed by Waterville Redevelopment Company III, LLC. Proceeding with the litigation and then with attempting to obtain the credits means the Estate will have to incur substantial expenses which, in the Trustee's view, will never be recovered.

9

It makes no business sense to commit to risk those funds on a likely failing effort especially when the alternative is the compromise that removes the estate from any obligation to pay professionals (except through proceeds) and if the compromise succeeds generates $70,000 more or less.

### The Justice of Payments to Conklin and Marcus Clegg

The settlement only pays Conklin and Marcus Clegg if a miracle occurs. If a miracle occurs, the Trustee does not care whether they get paid – the settlement is still better than litigating and succeeding and unsecured creditors are better off.

The settlement does not allow the claims of Marcus Clegg and Conklin as to other estate recoveries, but only from the highly unlikely tax credit recoveries.

If, on the other hand, the Trustee does not settle because Conklin and Marus Clegg are getting paid, then the likelihood is that the estate will either expend significant funds completing this litigation without a recovery, or the Trustee will abandon the asset. In each case unsecured creditors are worse off than they are with the settlement.

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court order and decree as follows:

  A. That this Motion be Granted;

  B. That the Trustee's proposed settlement, docketed at D.E. 41 in *Ford v. Conklin*, A. P. 25-02009, be authorized under Rule 9019; and

  C. For such other and further relief as is just and equitable.

> Respectfully submitted,
> Edmond J. Ford, Ch. 7 Trustee
>
> By his Attorneys,
> FORD, McDONALD & BORDEN, P.A.

10

Date: January 31, 2026                    By: */s/ Edmond J. Ford*
                                          Edmond J. Ford  (Bar No.  010174)
                                          815 Elm Street, Suite 5 B
                                          Manchester, NH 03101
                                          (603) 373-1737 (Telephone)
                                          (603) 242-1381 (Facsimile)
                                          eford@fordlaw.com


Certificate of Service

    On January 31, 2026, I electronically filed the foregoing document through the Court's CM/ECF systems which will send a notice of electronic filing to the parties on the Court's electronic service list. I further sent an electronic copy via email to:

    Terrence Conklin at tjconks@gmail.com
    Kevin Mattson at kevin@dirigocapitaladvisors.com


                                              */s/ Edmond J. Ford*
                                              Edmond J. Ford  (Bar No.  010174)


Shared Documents/WPDATA/Ed/TRUSTEE/24-20188 - Mattson Me/pleadings/dr/Mot approve settlement  on Tax Credits.docx