RECEIVED

By USBC Portland at 10:45 a.m., 03/27/2026

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

KEVIN J. MATTSON, Debtor.

Chapter 7
Case No. 24-20188-PGC

## DEBTOR'S OPPOSITION TO CREDITOR BELIVEAU'S RULE 60(a) MOTION AND REQUEST FOR DETERMINATION REGARDING STATUS OF AUTOMATIC STAY

NOW COMES the Debtor, Kevin J. Mattson, appearing pro se, and respectfully submits this Opposition to Creditor Severin M. Beliveau's ("Beliveau") Motion to Correct Order Approving Written Waiver of Discharge, or Alternatively to Confirm Termination of the Automatic Stay. In addition to opposing the relief requested, the Debtor seeks (i) a determination from this Court regarding the continued applicability of the automatic stay, (ii) a determination that he voluntarily waived his discharge and that the discharge was not denied by the Court, and (iii) a determination whether Beliveau and Montresor LLC violated the stay by initiating multiple postpetition collection actions while this Chapter 7 case remains open and under administration. In support of this Opposition and request for relief, the Debtor states as follows:

### Facts

1.      On September 9, 2024, Judge Duddy in the Maine Business and Consumer Court issued an order on the amount owed to Beliveau under a settlement agreement from the previous year ("the Beliveau Claim"). The settlement came after several years of litigation between Beliveau and Debtor. The final amount owed under the agreement became a matter of dispute. After a Rule 60(b) motion filed by Debtor, Judge Duddy ruled in Debtor's favor and set the amount owed to Beliveau at $288,020. A copy of the order is attached as Exhibit A.

2.      Less than 72 hours after Judge Duddy's decision, four petitioning creditors, including Beliveau, filed an involuntary Chapter 7 case against Debtor. Beliveau was represented by Attorney Randy Creswell, who filed the petition.

1

3.      On May 6, 2025, Beliveau filed a proof of his claim in Debtor's Chapter 7 case for $846,836.52—the same amount Judge Duddy had denied in his order. A copy of the claim is attached as Exhibit B.

4.      On or about March 2, 2025, Montresor LLC was formed. Its ownership appears to be comprised of Beliveau and at least one of his sons, Conor, who is a real estate agent licensed in Maine.  Montresor is managed by Marion Capital Group, which appears to be owned by Attorney Creswell's wife, Gwen, and managed by Attorney Creswell.  Montresor is also represented by Attorney Creswell.

5.      Montresor then purchased a note from SW Legacy, a creditor in Debtor's Chapter 7 case ("the Legacy Note"). The note is secured by Debtor's wife's home, where he and his two children also live. Montresor stepped into SW Legacy's position to continue a foreclosure action against the house.

6.      On May 5, 2025, Montresor used the guaranty Debtor had executed for the Legacy Note to file an adversary action objecting to Debtor's discharge. No other creditor did so, and more importantly neither did the Trustee.  Montresor stated that it was filing on behalf of all creditors. Montresor then conducted far-reaching discovery and by its own account gathered "50–60,000 pages of documents."

7.      A dispute arose in the state foreclosure case regarding the amount due under the Legacy Note.  Montresor was attempting to add Chapter 7 adversary-proceeding legal fees in the bankruptcy case to the second mortgage payoff of the Legacy Note which prohibited a payoff of the mortgage.  A brief was filed in state court on or about November 10, 2025, arguing that the Chapter 7 fees were unreasonable and unrelated to the mortgage debt.

8.      Montresor's voluminous discovery efforts in the adversary action and the resulting costs of defense became so onerous that Debtor requested a stay of discovery to "stop the clock" while the state court considered the contested legal fee issue related to the Legacy Note and a payoff amount could be definitively set.

9.      On December 16, 2025, the Bankruptcy Court denied the stay request. With complete uncertainty as to the state court's decision on the amount due under the Legacy Note, which could have included mounting legal fees related to Montresor's adversary case, Debtor filed a motion with the Bankruptcy Court to voluntarily waive his discharge. Debtor did so for one reason—to stop the unchecked legal fees generated by Montresor in the adversary case, which threatened his wife's only asset, her home.

2

10.     The Bankruptcy Court granted Debtor's request for a voluntary waiver of discharge on December 17, 2025. The Order approving the written waiver of discharge is attached as Exhibit C. The Court's resulting order is clear: Debtor's discharge was not denied; rather his voluntary waiver was approved. These are two very different results. As made clear in the *In re Carlsson* decision referenced in Beliveau's motion, "a waiver of discharge is not the same as a denial of discharge" for purposes of the automatic stay. This is in part for significant practical reasons regarding the efficient administration of the bankruptcy estate.

11.     On February 25, 2026, Justice O'Neil ruled that Montresor's Chapter 7-related fees for the Legacy Note were not reasonable, did not belong in the foreclosure case, and denied them entirely. A copy of the decision is attached as Exhibit D. Montresor has appealed the decision to the Law Court.

12.     On March 10, 2026, Beliveau requested a writ of execution from Judge Duddy on the Beliveau Claim. It is not known if Judge Duddy was made aware of the open Chapter 7 case and the uncertainty of the stay when he issued the writ. The writ was granted the next day along with ten copies, presumably for service on banks and financial institutions. A copy is attached as Exhibit E.

13.     On March 16, 2026, Beliveau filed a disclosure action against Debtor in state court for the Beliveau Claim (not in the amount Beliveau filed in his Proof of Claim but the claim amount allowed by Judge Duddy). A copy is attached as Exhibit F.

14.     Also on March 16, Montresor filed a separate Superior Court action to collect on the guarantee of the Legacy Note. The complaint sought amounts that included the Chapter 7 related legal fees already rejected by Justice O'Neil a few weeks earlier. A copy is attached as Exhibit G. The complaint references the voluntary waiver of discharge but does not mention that the court had not yet ruled on the status of the automatic stay.

15.     On March 23, 2026, Beliveau served a discovery request on First National Bank, the first mortgage holder on Ms. Mattson's house which is the security for the Legacy Note, but the subpoena was apparently related to the Beliveau Claim. A copy is attached as Exhibit H.

16.     Debtor then filed a letter with the state court advising that he remains a debtor in an active Chapter 7 case and that the Bankruptcy Court had not ruled on the status of the automatic stay. A copy is attached as Exhibit I.

3

## DISCUSSION AND ARGUMENT

### I.  Rule 60(a) Does Not Permit Substantive Alteration of the Court's Order.

17.   Beliveau seeks to transform the Court's approval of Debtor's voluntary waiver into an affirmative denial of discharge. Rule 60(a) allows correction of clerical errors, not substantive changes. The Court's order accurately reflected its intent: to approve my voluntary waiver. Nothing in the record suggests the Court intended to deny my discharge based on cause. Beliveau seeks to convert a voluntary waiver into a judicial denial—an outcome that would require findings of fact, notice, and a hearing, none of which occurred.

### II.  A Voluntary Waiver Under § 727(a)(10) Is Not a Denial of Discharge Under § 362(c)(2)(C).

18.   The *In re Carlsson* decision makes clear that a waiver is not equivalent to a denial. A waiver occurs mid-case; a denial occurs at the end of the case. § 362(c)(2)(C) is explicit: the stay ends only when discharge is *granted or denied*. Neither event has occurred. A waiver is not listed in the statute as a terminating event.

### III.  The Automatic Stay Remains in Effect. Because Debtor's discharge has neither been granted nor denied, the automatic stay remains in effect under § 362(c)(2)(C) which will allow for efficient administration of Debtor's estate.

19.   The bankruptcy estate remains open, and the Trustee continues to administer assets. Allowing individual creditors to pursue collection actions now would significantly disrupt the orderly administration of the estate. At this time, there is a pending settlement offer presented to the court for approval on April 15. As is made clear in the Trustee's motion, Debtor borrowed funds which have been placed in the trust account of the Trustee in order to fund the proposed settlement. There are several similar situations where the Debtor may seek to purchase assets from the Trustee or to settle preference claims which will require use of funds obtained by Debtor postpetition. Allowing the Beliveau Claim - or any creditor - to resume aggressive collection as the Trustee attempts to administer the bankruptcy estate and maximize assets will result in fewer available resources for creditors -the very creditors Montresor claimed to represent when it filed the adversary case. Allowing the stay to be lifted would not only delay and complicate the Trustee's work but would certainly result in fewer resources available to distribute.

### IV.  Beliveau and Montresor Likely Violated the Automatic Stay.

20.     Beliveau and Montresor initiated multiple collection actions—including a writ of execution, a disclosure action, a Superior Court action, and discovery—without seeking clarification from this Court.  On February 6, 2026, Marcus Clegg filed a motion in state court to withdraw from representing Debtor in a long running debt collection case against both Beliveau and Mattson.  The letter clearly stated that while the Debtor had voluntarily waived his discharge, it was unclear as to whether the stay was affected because the court had not issued an order.  The withdrawal notice is attached as Exhibit J.  These actions appear to violate § 362(a).  <u>Creditors act at their own peril when proceeding without stay relief.</u>

21.     For these reasons, and to preserve the orderly administration of the estate, the Court should deny Beliveau's motion and confirm that the automatic stay remains in full force.

## REQUEST FOR RELIEF

22. Debtor respectfully requests that the Court DENY Beliveau's Rule 60(a) Motion.
23. DECLARE that the Court's December 17, 2025 order approved a voluntary waiver and did not deny discharge.
24. DETERMINE that the automatic stay remains in effect.
25. FIND that Beliveau and Montresor violated the automatic stay.
26. ORDER appropriate relief for any stay violations, including voiding actions taken in violation of the stay.
27. Grant such other relief as the Court deems just and proper.



Respectfully submitted,
Kevin J. Mattson, Pro Se
P.O. Box 596
Gardiner, ME 04345
(207) 242-5250
Kevinmattson2112@gmail.com


## CERTIFICATE OF SERVICE

I, Kevin J. Mattson, certify that on this 27th day of March 2026, I served a copy of the foregoing on all parties via the Court's CM/ECF system.

5

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

In re:

KEVIN J. MATTSON, Debtor.

Chapter 7

Case No. 24-20188-PGC

# ORDER ON CREDITOR BELIVEAU'S RULE 60(a) MOTION AND DEBTOR'S REQUEST FOR DETERMINATION REGARDING STATUS OF AUTOMATIC STAY

This matter came before the Court on (i) Creditor Severin M. Beliveau's Motion to Correct Order Approving Written Waiver of Discharge, or Alternatively to Confirm Termination of the Automatic Stay (the "Rule 60(a) Motion"), and (ii) the Debtor's Opposition and request for a determination regarding the continued applicability of the automatic stay and (iii) whether postpetition collection actions undertaken by Beliveau and Montresor LLC violated 11 U.S.C. § 362.

After review of the filings, the record in this case, and for good cause shown, IT IS HEREBY ORDERED:

1. Creditor Beliveau's Rule 60(a) Motion is _____ [GRANTED / DENIED].

2. The Court finds and concludes that its December 17, 2025 Order approved the Debtor's voluntary waiver of discharge pursuant to 11 U.S.C. § 727(a)(10), and did not constitute a denial of discharge under § 727(a).

3. The Court further finds and concludes that, because the Debtor's discharge has neither been granted nor denied, the automatic stay remains in effect pursuant to 11 U.S.C. § 362(c)(2)(C) unless and until the case is closed or dismissed.

4. The Court further finds that the following actions undertaken by Creditor Beliveau and/or Montresor LLC on or after March 10, 2026 occurred while the automatic stay remained in effect: (a) the request for and issuance of a writ of execution; (b) the filing of a

disclosure action in state court; (c) the filing of a Superior Court collection action; and (d) the service of discovery requests.

5. The Court will determine the legal consequences of any stay violations, including whether such actions are void or voidable, upon further motion or after hearing, as appropriate.

6. The Court shall retain jurisdiction to enforce and interpret this Order.

SO ORDERED.

Dated: _____, 2026

_____

Hon. Peter G. Cary
United States Bankruptcy Judge

EXHIBIT A

Electronically Filed: 8/16/2024 9:05 AM

|  |  |  |
|---|---|---|
| SEVERIN M. BELIVEAU, ESQ. and | ) | |
| CYNTHIA MURRAY BELIVEAU | ) | |
| | ) | |
| Plaintiffs / Counter Claim Defendant | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| KEVIN J. MATTSON, et al. | ) | |
| | ) | |
| Defendants / Counter Claim Plaintiff | ) | |
| | ) | |
| | ) | |

Upon review of Kevin J. Mattson's *Order Seeking Relief from Order Pursuant to Maine Rule of Civil Procedure 60(b)*(the "Motion"), the Court having considered the parties' pleadings regarding the same, Mattson having demonstrated that he is entitled to relief under Rule 60(b), and good cause being shown, it is hereby: **ORDERED**, that the Court corrects the Order (as that term is defined in the Motion) such that the judgment against him is in the principal amount of $288,020.00, not $835.172.38.

Date: **09/09/2024**

Entered on the docket: 09/09/2024

Judge, Business and Consumer Court

The Court understands Plaintiffs' argument to the contrary, but the Settlement Agreement and Mutural General Release dated October 31, 2023, and the Promissory Note, are clear and unambiguous. Both of those documents call for the standard and well-established present value discounting calculation performed by Defendants. Further, both documents are fully integrated, thereby prohibiting the Court from considering parol or extrinsic evidence.

EXHIBIT 3

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Kevin J Mattson |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Maine |
| Case number | 24-20188 |

## Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Severin M. Beliveau
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Randy J Creswell, Esq.
Name

PO Box 7340
Number    Street

Portland              ME        04112
City                 State     ZIP Code

Contact phone  207-358-1010

Contact email  rcreswell@creswelllaw.com

Where should payments to the creditor be sent? (if different)

Severin M. Beliveau
Name

135 Sheridan Street, Unit 405
Number    Street

Portland              ME        04101
City                 State     ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
        MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                    Proof of Claim                    page 1

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

   ☑ No

   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7. **How much is the claim?** $_____ 846,836.52 . **Does this amount include interest or other charges?**

   ☐ No

   ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

   Limit disclosing information that is entitled to privacy, such as health care information.

   Stipulated Judgment / Promissory Note per Settlement Agreement

9. **Is all or part of the claim secured?**

   ☑ No

   ☐ Yes. The claim is secured by a lien on property.

   **Nature of property:**

   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

   ☐ Motor vehicle

   ☐ Other. Describe: _____

   **Basis for perfection:** _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property: $_____

   Amount of the claim that is secured: $_____

   Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition: $_____

   Annual Interest Rate (when case was filed)_____%

   ☐ Fixed

   ☐ Variable

10. **Is this claim based on a lease?**

    ☑ No

    ☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

11. **Is this claim subject to a right of setoff?**

    ☑ No

    ☐ Yes. Identify the property: _____

Official Form 410 Proof of Claim page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/06/2025
                   MM / DD / YYYY

/s/ Randy J Creswell
Signature

Print the name of the person who is completing and signing this claim:

| Name | Randy J Creswell, Esq. | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Counsel to Severin M. Beliveau | | |
| Company | Creswell Law | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | PO Box 7340 | | |
| | Number       Street | | |
| | Portland | ME | 04112 |
| | City | State | ZIP Code |
| Contact phone | 207-358-1010 | Email | rcreswell@creswelllaw.com |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

|  | EXHIBIT G |
|---|---|
| In re: | |
| | Chapter 7 |
| KEVIN J. MATTSON, | Case No. 24-20188 |
| Debtor. | |

## ORDER APPROVING WRITTEN WAIVER OF DISCHARGE

On December 16, 2025, the Debtor filed a Stipulation to Waiver of Discharge stating that

he stipulates to a waiver of his discharge pursuant to 11 U.S.C. § 727(a)(10).  The Debtor further

stated that the waiver is made knowingly and with the understanding of the legal and financial

consequences flowing from that decision.  Accordingly, the Court hereby approves the waiver.

No discharge shall enter in favor of the Debtor in this case.


Date: December 17, 2025                    /s/ Peter G. Cary
                                          Judge Peter G. Cary
                                          United States Bankruptcy Court

EXHIBIT D

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
NO. PORSC-CV-2024-00037
RE:

MONTRESOR LLC,

    Plaintiff,

v.

JEANNE M. MATTSON,

    Defendant.

JUDGMENT OF FORECLOSURE
AND SALE

10 Cranberry Ridge Road
Freeport, Maine 04032

Book 39661, Page 1

Before the court are briefs from Plaintiff Montresor LLC ("Montresor") and Defendant Jeanne Mattson which dispute the damages Montresor may be awarded in its foreclosure action against Jeanne. The court grants Montresor judgment of foreclosure and determines the recoverable damages below.

## BACKGROUND

Jeanne Mattson and Kevin Mattson (together "the Mattsons") are Freeport residents who previously managed a company called Hailcore LLC ("Hailcore"). On August 11, 2022, Jeanne took out a mortgage on her home (the "Property") to obtain a $450,000 loan for Hailcore.[1] R. Ex. B. The lender, SW Legacy ("Legacy"), obtained a promissory note ("Note") from Hailcore and individual Guaranty Agreements signed by Jeanne and Kevin ("Jeanne Guaranty" and "Kevin Guaranty"). R. Exs. B, D, E. Two years later, Hailcore defaulted on the Note and Legacy began foreclosure

---

[1] Neither party disputes that Jeanne is the sole owner of the Property.

proceedings. On October 3, 2024, Hailcore and Legacy entered a Forbearance

Agreement, stipulating to a debt of $512,336.26 and agreeing to list the Property for

sale. R. Ex. J. The Forbearance Agreement specified the following amounts due:

| | |
|---|---|
| Principal: | $450,000.00; |
| Accrued Interest: | $44,362.50; |
| Attorney's Fees: | $12,858.76; |
| Publication Costs: | $615.00; |
| Loan Extension Fee: | $4,500.00; |
| Total: | $512,336.26. |

R. Ex. J at 1.

While these events were taking place, Kevin became the subject of several

independent suits from other creditors. By September 2024, those creditors filed an

involuntary petition against Kevin to begin Chapter 7 bankruptcy proceedings. Def.'s

Br. Ex. 1. Accordingly, this court granted the Mattsons a six-month stay on

foreclosure proceedings, ending September 10, 2025.

Montresor LLC ("Montresor") recently joined the case as Legacy's replacement.

On April 1, 2025, Legacy assigned the Mortgage, Note, and Guaranty Agreements to

Montresor, who substituted as Plaintiff on June 6, 2025. R. Ex. S. After the stay

ended, the court held a hearing to discuss damages and schedule future proceedings.

*See* Hearing 10/3/2025 ("Hearing"). Montresor explained that in addition to seeking

foreclosure, attorney fees and costs against Jeanne, it is also pursuing damages

against Kevin in his pending bankruptcy case.[2] The court then asked the parties to

brief arguments on calculating damages against Jeanne.

---

[2] Montresor voluntarily dismissed its claims against Kevin at the 10/3/2025 Hearing. Montresor's
remaining claims against Jeanne include foreclosure (count I) and breach of contract (count III).

## DISCUSSION

The central controversy is (1) whether Jeanne is liable for attorney fees that Montresor incurred against Kevin in his bankruptcy case, and (2) the interest rate on Hailcore's defaulted Note.

### A.     Attorney Fees

Montresor argues that Jeanne's Guaranty compels her to pay all costs and fees incurred to recover the Note balance. Montresor believes this includes fees spent pursuing Kevin in bankruptcy court. Jeanne admits her Guaranty contemplates bankruptcy attorney fees but asserts those fees are unreasonable.

A court may award attorney fees "based on: (1) a contractual agreement between the parties; (2) a specific statutory authorization; or (3) the court's inherent authority to sanction serious misconduct in a judicial proceeding." *Truman v. Browne*, 2001 ME 182, ¶ 13, 788 A.2d 168 (citing *Baker v. Manter*, 2001 ME 26, ¶ 17, 765 A.2d 583, 586). The Supreme Court has explained that "'the character of a contractual obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy,'". *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 444 (2007) (alteration in original) (quoting *Sec. Mortg. Co. v. Powers*, 278 U.S. 149, 154 (1928)). Moreover, the Law Court has recognized circumstances where parties in state court may obtain attorney fees incurred from bankruptcy proceedings. *See Soley v. Karll*, 2004 ME 89, ¶¶ 10-15, 853 A.2d 755.

The court agrees that Jeanne's Guaranty and Hailcore's Note allow Montresor to collect reasonable attorney fees from Jeanne. Under Jeanne's Guaranty, she agreed to repay "Guaranteed Obligations," such as,

> (a) All principal, interest, reasonable attorneys' fees, commitment fees, liabilities for costs and expenses, and other indebtedness, obligations, and liabilities of Borrower to Lender at any time created or arising in connection with the Note, the Mortgage, and the other loan Documents
>
> . . . .
>
> (c) All costs, expenses, and fees, including but not limited to court costs and reasonable attorneys' fees and paralegal fees, arising in connection with, or as a consequence of the non-payment, non-performance or non-observance of all amounts, indebtedness, obligations and liabilities of Borrower to Lender described in items (a) and (b) of this Section 3.

R. Ex. D at 2. Hailcore's Note identifies the scope of attorney fees Montresor can recover against Jeanne,

> As used in this Note, the term "attorneys' fees" shall mean reasonable charges and expenses for legal services rendered to or on behalf of Lender in connection with the collection of the indebtedness evidenced by this Note at any time whether prior to the commencement of judicial proceedings and/or thereafter at the trial and/or appellate level and/or in pre and post judgment or bankruptcy proceedings.

R. Ex. B at 6.

The next issue is whether attorney fees incurred in Kevin's bankruptcy proceeding are *reasonable* when imposed on Jeanne. Montresor argues Jeanne's Guaranty makes all guarantors joint and severally liable, allowing Montresor to "pick its victim." Pl.'s Br. 12 (quoting *Kandlis v. Huotari*, 678 A.2d 41, 44 (Me. 1996)). Even if this were true, Hailcore's Note and Jeanne's Guaranty specify that fees must be "reasonable." R. Exs. D at 2, B at 6. The court is not convinced that attorney fees are reasonable when accumulated in a separate, ongoing action against a different party

4

who could be liable for those fees. *See Sweet v. Breivogel*, 2019 ME 18, ¶ 25 n.4, 201 A.3d 1215 (describing factors to consider when deciding the reasonableness of attorney fees). Montresor acknowledges their action is still pending against Kevin in bankruptcy court. Pl.'s Reply Br. 4. Accordingly, Montresor may seek attorney fees from Kevin in that case. *See Travelers Cas. & Sur. Co. of Am*, 549 U.S. at 444.

Notwithstanding the above, neither party disputes Montresor's costs and fees associated with this current action. Therefore, Montresor is entitled to reasonable attorney fees and costs incurred solely in this proceeding.

## B. Interest Rate

The Parties next dispute the interest rate that applies to the amounts due under the loan documents. Montresor argues the rate is split: a 15% default interest rate applies before Hailcore entered the Forbearance Agreement and after Hailcore defaulted on the Forbearance Agreement; the 12% interest rate applied only during the Forbearance Agreement term. Jeanne responds that the Forbearance Agreement permanently reduced interest to 12% from its effective date forward.

The court will interpret a contract's unambiguous terms according to their plain meaning unless the contract explicitly provides otherwise. *Barr v. Dyke*, 2012 ME 108, ¶ 13, 49 A.3d 1280 (citing *Travelers Indem. Co. v. Bryant*, 2012 ME 38, ¶ 9, 38, A.3d 1267). The Note and Guaranty set the default interest rate at 15%. *See* R. Exs. B at 4, D at 4. Under the Forbearance Agreement, Legacy agreed to (1) defer the interest already accrued, and (2) reduce the interest rate to "12.00% per annum, effective October 1, 2024." R. Ex. J at 4. The rate would remain at 12% until the new

5

Maturity Date, April 1, 2025, so long as Hailcore made regularly scheduled payments. R. Ex. J. at 4. However, "failure to pay any interest payment as and when it comes due is an Event of Default . . . ." R. Ex. J at 4. "Upon any default under the Loan Documents or this Agreement, Lender, its successors or assigns, shall be free to exercise all rights and remedies under the Loan Documents . . . ." R. Ex. J at 5.

The plain language of the Forbearance Agreement sets the interest rate at 12% between the Agreement's effective date, October 1, 2024, and Hailcore's default. After Hailcore missed payment on January 6, 2025, Legacy/Montresor was free to impose a 15% interest rate. *See* R. Ex. P at 1. Accordingly, Montresor is entitled to interest at 15% prior to October 1, 2024, and after January 6, 2025.

C.   Foreclosure

After considering the Parties' briefs, exhibits, and relevant portions of the record, the court grants Plaintiff Montresor LLC judgment of foreclosure and sale according to the findings below:

1.   The record indicates the following Parties and Counsel of Record:

| PARTY | COUNSEL |
|---|---|
| Plaintiff:   Montresor LLC<br>167 Newbury Street<br>Portland, ME 04101 | Randy J. Creswell, Esq.<br>Creswell Law LLC<br>PO Box 7340<br>Portland, ME 04112 |
| Defendant:   Jeanne J. Mattson<br>10 Cranberry Ridge Road<br>Freeport, ME 04032 | Lee H. Bals, Esq.<br>Marcus Clegg<br>16 Middle Street, Unit 501<br>Portland, ME 04101 |

6

2. That all appearing parties have received notice of the proceedings in this action and that notice was given in accordance with the applicable provisions of the Maine Rules of Civil Procedure. Defendants properly acknowledged service of process in this action on April 12, 2024.

3. That venue is properly laid in this court;

4. That Defendant Jeanne Mattson stipulated to liability and judgment on the foreclosure and sale of 10 Cranberry Ridge Road Freeport, Maine.

5. That mediation and Alternative Dispute Resolution occurred on September 16, 2024, and that Defendant Jeanne Mattson is not in the military service and subject to the Servicemembers Civil Relief Act of 2003. *See* 50 U.S.C. § 511;

6. That the court finds and concludes that Plaintiff Montresor LLC is entitled to judgment as a matter of law on Count I (Foreclosure of Guaranty Second Mortgage) and Count III (Breach of Contract) of its Complaint against Defendant Jeanne Mattson, pursuant to Maine Rule of Civil Procedure 50(d);

7. That Defendant Jeanne Mattson is in default under the terms of the Guaranty Agreement, dated August 11, 2022, Guaranty Second Mortgage, Assignment of Rents and Leases, and Security Agreement and Financing Statement, dated August 11, 2022, and recorded in the Cumberland County Registry of Deeds in Book 39661, Page 1, First Note Extension and Mortgage Modification Agreement, dated August 31

7

<u>$285,402.37</u>.

Default interest continues to accrue on the principal balance due at the per diem rate of $65.61 prior to the entry of this Judgement of Foreclosure and Sale, and Plaintiff Montresor is entitled to any and all additional costs, advances, expenses, and legal fees incurred through and including the sale of the Property.

10. That the order of priority and the amount of the claim of each party appearing and proving its claim against the proceeds of sale, after payment and expenses of sale, is as follows:

i. $285,402.37 by virtue of the Guaranty Second Mortgage, recorded in Book 39661, Page 1 of the Cumberland County Registry of Deeds,

plus accrued interest on the principal $157,471.86 at the per diem rate of $65.61 between November 10, 2025 and the date of entry of this judgment,

plus post-judgment interest on the judgment amount of $285,402.37 after the entry of judgment, at the default rate of 15% per annum as set forth in Jeanne's Guaranty, pursuant to 14 M.R.S. § 1602-C(1)(A),

plus all other post-judgment, reasonable legal fees, expenses and costs to protect Plaintiff's mortgage security and rights, claims, and obligations, and

ii.    Defendant Jeanne Mattson: any excess proceeds from the sale of the Property pursuant to 14 M.R.S. § 6324.

11.    That Defendant, Jeanne Mattson executed and delivered to Plaintiff a Guaranty which she contracted to guarantee full and punctual payment and satisfaction of Hailcore, LLC's indebtedness and obligations under the Loan Documents.

12.    That Defendant Jeanne Mattson has defaulted on her obligations under her Guaranty by failing to make required payments, and failing to pay the entirety of the sums due under her Guaranty.

13.    That Plaintiff is entitled to judgment as a matter of law on Count III of its complaint pursuant to Maine Rule of Civil Procedure 50(d).

## CONCLUSION

For the reasons stated above, the court enters Judgement of Foreclosure and Sale in favor of Plaintiff Montresor. If Defendant Jeanne Mattson does not pay Montresor, their successors and assigns, the amount specified in ¶ 9 as set forth above with interest, attorney fees and costs accruing within the period of redemption within ninety (90) days from entry of this Order, then Plaintiff Montresor shall sell Defendant Jeanne Mattson's real estate free and clear of all liens and encumbrances pursuant to 14 M.R.S. § 6321-6324 (2025). If Defendant Jeanne Mattson or her successors, heirs, and assigns pay the sum due and payable to Plaintiff Montresor within the period of redemption, then Plaintiff Montresor shall forthwith discharge

the lien and file a dismissal of the action for foreclosure with the clerk of the court. *See* 14 M.R.S. § 6322.

Judgment shall enter against Defendant Jeanne Mattson for any deficiency, provided that the statutory requirements are met. *See* 14 M.R.S. § 6323. If Defendant Jeanne Mattson has not redeemed within the ninety (90) day period and has not vacated the premises, she is ordered to vacate the premises. *Id.*

The entry is:

1.  Plaintiff Montresor LLC is granted Judgment as a matter of law on Count I (Foreclosure of Guaranty Second Mortgage) and Count III (Breach of Contract) of its Complaint against Defendant Jeanne Mattson. The court enters Judgment of Foreclosure and Sale.

The clerk is directed to enter this Order as a final judgment pursuant to Rule 54(b)(1), except as to any additional post-judgment attorney fees and disbursements. Plaintiff shall file a report of sale pursuant to 14 M.R.S. § 6324.

A Writ of Possession shall issue to Plaintiff upon request following the expiration of Defendant's rights of redemption.

The clerk is directed to incorporate this order into the docket by reverence. M.R. Civ. P. 79(a).

2/25/26
_____
Dated

_____
John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket: 02/27/26

11

EXHIBIT E

Electronically Filed: 3/10/2026 11:56 AM

# CRESWELLLAW

RANDY J. CRESWELL
rcreswell@creswelllaw.com

March 10, 2026

Business and Consumer Court Clerk's Office
Danielle Young, Clerk
Cumberland County Courthouse
205 Newbury Street, Ground Floor
Portland, ME  04101

> **GRANTED**
>
> 03/11/2026 _[signature]_
> Entered on the docket:  03/11/2026

Re:   Severin M. Beliveau, *et al.* v. Kevin J. Mattson, *et al.*, Docket No. BCD-CIV-2023-0031

Dear Clerk Young:

In reference to the above civil proceeding, please issue a Writ of Execution in favor of my clients and the Judgment Creditors, Severin M. Beliveau and Cynthia M. Beliveau, and against the Judgment Debtor, Kevin J. Mattson, in accordance with the following:

- Business Court Order, dated July 23, 2024, granting Judgment in favor of Judgment Creditors and against Judgment Debtor, with post-judgment interest accruing at the rate of 10.79%, plus costs and expenses;
- Business Court Order, dated September 9, 2024, modifying the amount of the Judgment ($288,020) set forth in the Business Court's July 2024 Judgment

Please also issue an **additional 10 attested copies** of the original Writ of Execution.  The filing fee is enclosed.

Please be advised that, notwithstanding the statutory requirement for the issuance of writs within one year of the date of final judgments pursuant to 14 M.R.S. § 4652, this request is timely pursuant 11 U.S.C. § 108(c)(2), which has tolled Judgment Creditors' deadline under § 4652.

Once the Writs of Execution have been prepared, please contact me and I will come to the Business Court Clerk's Office and collect them.

Thank you for your assistance, and please do not hesitate to contact me directly if you should have any questions.

Sincerely yours,

_[signature]_

Randy J. Creswell, Esq.
Maine Bar No. 8962

RJC/

EXHIBIT F

CONTAINS NONPUBLIC DIGITAL INFORMATION

MAINE JUDICIAL BRANCH

| Severin M Beliveau | Judgment Creditor |
| Cynthia Beliveau | |

DISTRICT COURT
Location (Town): Portland
Docket No.: PORDC-SA-2026-

V.
Kevin J Mattson    Judgment Debtor

## DISCLOSURE SUBPOENA
### 14 M.R.S. § 3122

To: Kevin J Mattson
    10 Cranberry Ridge Road
    Freeport, ME 04032

On (date - mm/dd/yyyy): 09/09/2024          , a judgment was issued against you in the amount of $288,020.00 plus interest and costs.

☐ The judgment at issue is based on a debt collection action pursuant to Title 32 of the Maine Revised Statutes. The judgment creditor  ☐ has attached proof of payment of the $127 surcharge owed in this case, or
☐ is paying the surcharge with the filing of this subpoena.

☒ This judgment at issue is not based on a debt collection action pursuant to Title 32 of the Maine Revised Statutes.

This subpoena requires you to attend a disclosure hearing for the purpose of determining your ability to pay the judgment debt. If you are unable to pay, the court will make an order requiring you to pay in installments or all at once depending upon your ability. The court may also order you to turn over a portion of your property to the judgment creditor. Some of your property or income may be exempt from a court order. You should attend the disclosure hearing to protect any exempt property or income. You will have the opportunity to testify about your ability to pay the debt. You are to bring the following documents to the hearing:
    See Exhibit A Attached

---

PLEASE NOTE: This subpoena requires you to attend the disclosure hearing. If you do not obey this subpoena by attending the hearing and bringing the documents listed above, you may be arrested. If you do not obey this subpoena, the court may order your employer to pay part of your wages to the judgment creditor and the court may also order your property turned over to the judgment creditor.

You must appear at the disclosure hearing on (mm/dd/yyyy)  04/23/2026          at 1:00    ☐ am ☒ pm
in the District Court located at 205 Newbury St, Portland          , Maine. (Courtroom 2)

If you think you need legal assistance at the disclosure hearing you should talk to a lawyer. The court clerks are not allowed to give you legal advice.

Date (mm/dd/yyyy): 03/12/2026          ▶ _Shelley Sawyer_
                                                                      Clerk

ADA Notice: The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
Language Services: For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

STATE OF MAINE
CUMBERLAND, SS.

DISTRICT COURT
Location: Portland
DOCKET NO.: PORDC-SA-2026-

SEVERIN M. BELIVEAU and
CYNTHIA M. BELIVEAU,        )
                           )
                           )        **EXHIBIT A**
        Judgment Creditors, )
                           )
v.                         )        **REQUEST FOR PRODUCTION**
                           )        **OF DOCUMENTS**
KEVIN J. MATTSON,          )
                           )
        Judgment Debtor.   )

As Judgment Debtor, you are to bring the following documents to the disclosure hearing scheduled for April 23, 2026 at 1:00 p.m. at the Maine District Court, 205 Newbury Steet, Portland (Courtroom 2), Maine, pursuant to Disclosure Subpoena, 14 M.R.S. § 3122.

For purposes of this request for production of documents, unless otherwise specifically set forth in an individual request, the relevant period for production shall be September 1, 2024 to the present.

1.      All monthly account statements for any checking accounts in which you personally have an interest in, or ownership of, with any financial institution, bank, credit union, or other lender.

2.      All monthly account statements for any savings accounts in which you personally have an interest in, or ownership of, with any financial institution, bank, credit union, or other lender.

3.      All monthly account statements for any investment accounts in which you personally have an interest in, or ownership of, with any financial institution, bank, credit union, or other lender.

4.      All monthly account statements for any note or loan obligations for which you personally are obligated, or for which you are a guarantor, to any financial institution, bank, credit union, or other lender.

5.      All insurance policies for which you are named as a beneficiary.

6.      All contracts or other agreements pursuant to which any person or entity is or shall be obligated to pay to you a commission, fee, amounts due, wages, or other remuneration of any kind in exchange for goods or services to be, or provided by, you of any kind whatsoever.

7. A listing of all entities that have: (i) made distributions or other transfers of funds to you or for your personal benefit, whether in the form of dividends, salary, wages, compensation, payment or any other remuneration whatsoever; (ii) the amounts of each such distribution or transfer; and (iii) the dates upon which such distributions or transfers were made.

8. Your personal state and federal tax returns, with all attendant schedules and filings, for the tax years 2021, 2022, 2023, and 2024.

9. State and federal tax returns for the tax years 2021, 2022, 2023, and 2024 for any entity in which you have a membership, shareholder interest, or other ownership interest, either directly or indirectly.

10. Monthly and annual profit and loss statements and balance sheets for Northeast Asset Management, LLC ("NAM").

11. Evidence of registration and/or title to any automobiles, trucks, mobile homes, boats, motorcycles, ATVs or airplanes on which your name appears as an owner.

12. A description of all real estate or other real property owned by you directly, or indirectly through any entity or company.

13. All employment or independent contractor contracts that you have been a party to with any person or entity.

14. All contracts or agreements that you have been a party to with any person or entity relating to any commission-based compensation or developer fee of any kind whatsoever.

15. All partnership agreements, operating agreements, articles of incorporation, bylaws, and any other business formation documents in which you are a member, manager, shareholder, officer, or agent.

16. All trust instruments for any trust in which you are the grantor, grantee, settlor, beneficiary or otherwise possesses a beneficial interest.

17. All stock certificates in any publicly traded or private corporation or company in which you possesses an ownership interest.

18. All records of any gifts or charitable contributions made by you in excess of $100.00, including any gifts or transfers made pursuant to the Maine Uniform Transfers to Minors Act, 33 M.R.S. §§ 1651 – 1674, as well as any gifts, loans, or capital investment received by you.

19. A list of all personally owned personal property.

20. A list of all personally owned real property.

21. Any and all records relating to your payroll and/or employment, including pay stubs, W-2 forms, 1099 forms, and the like. Any and all records relating to the application for, or receipt of, any and all unemployment benefits from any federal, state, or county.

22. Any and all records relating to any state or federal income tax refunds or credits received or expected to be received based on past tax years 2021, 2022, 2023, and 2024.

23. All Form 1099-MISCs received from any person or entity for any reason whatsoever.

EXHIBIT G

STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. PORSC-CV-2026-___

MONTRESOR LLC,                  )
                                )
                Plaintiff,      )
                                )        COMPLAINT
        v.                      )
                                )
KEVIN J. MATTSON,               )
                                )
                Defendant.      )

NOW COMES Plaintiff, Montresor LLC ("Plaintiff"), pursuant to Maine Rules of Civil

Procedure 3 and 8, and complains against Defendant, Kevin J. Mattson ("Defendant"), as follows:

### Parties

1.    Plaintiff is a Maine limited liability company with a place of business in the City

of Portland, Cumberland County, and State of Maine.

2.    Defendant Kevin J. Mattson is an individual residing at 10 Cranberry Ridge Road,

Freeport, County of Cumberland, State of Maine.

### Jurisdiction and Venue

3.    The Superior Court has jurisdiction over this action pursuant to 4 M.R.S. § 105.

4.    Venue is proper in this action pursuant to 14 M.R.S. §§ 501 and 505.

### Factual Allegations

5.    On August 11, 2022, Hailcore, LLC ("Hailcore"), delivered to SW Legacy, LLC

("Legacy") a certain Promissory Note in the original principal amount of $450,000 ("Original

Note"), a true copy of which is attached hereto as Exhibit A.

3, 2024, Defendant stipulated, *inter alia*, that he owed Legacy the amount of $512,336.26 under, *inter alia*, the Note and Guaranty.

13.    On February 11, 2025, upon motion of the United States Trustee ("UST"), the Bankruptcy Court issued its Order re-converting Defendant's Chapter 11 case to a case under Chapter 7 of the Code.

14.    On April 2, 2025, Plaintiff and Legacy entered into a certain Loan Sale Agreement, whereby Legacy assigned, transferred, and otherwise conveyed all its right, title, and interest in the "Loan Documents" to Plaintiff (inclusive of, *inter alia*, the Note and Guaranty).

15.    On May 5, 2025, Plaintiff commenced an Adversary Proceeding against Defendant in the Bankruptcy Court, entitled Montresor LLC v. Kevin J. Mattson, Adv. Proc. No. 25-2006 ("Adversary Proceeding"), seeking the denial of Defendant's discharge in the Bankruptcy Case under § 727(a) of the Code.

16.    On December 16, 2025, Defendant filed a Stipulation to Waiver of Discharge in the Bankruptcy Case, a true copy of which is attached hereto as Exhibit F, thereby affirmatively and knowingly waiving his discharge under § 727(a) of the Code.

17.    On December 17, 2025, the Bankruptcy Court issued its Order Approving Written Waiver of Discharge, thereby approving Defendant's waiver of his discharge under § 727 of the Code and affirmatively determining that no discharge would or shall enter in favor of Defendant in his Bankruptcy Case.[2]

18.    Since at least December 2023, Hailcore was, and has been, in default of the material terms of the Note by, *inter alia,* its failure to make all the required payments when due.

19.    The default rate of interest under the Note and Guaranty is 15% per annum.

---

[2] A true copy of the Bankruptcy Court's Order is attached hereto as Exhibit G.

WHEREFORE, Plaintiff, Montresor LLC, requests that the Court:

i.  Enter judgment in its favor and against Defendant, Kevin J. Mattson, with respect to Count I of its Complaint, in the principal amount of $387,612.95, plus all accruing pre- and post-judgment interest, expenses, and legal fees; and

ii.  Grant Plaintiff such other and further relief that this Court may determine to be just and equitable under the circumstances.

Dated at Portland, Maine this 9th day of March, 2026.

Randy J. Creswell, Esq., Bar No. 8962
Counsel for Plaintiff,
Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com

- 5 -

CONTAINS NONPUBLIC DIGITAL INFORMATION

*EXHIBIT H*

## MAINE JUDICIAL BRANCH

*"X" the court for filing:*
☐ Superior Court ☒ District Court
County: Cumberland
Location (Town): Portland
Docket No.: PORDC-SA-2026- 0224

**SUBPOENA FOR:** ☐ TRIAL ☐ HEARING ☐ DEPOSITION ☒ INSPECTION
M. R. Civ. P. 30(h), 45

To: **First National Bank** , of _____

In the matter: **Severin M. Beliveau v. Kevin J. Mattson, PORDC-SA-2026- 0224**

☐ YOU ARE COMMANDED in the name of the State of Maine, to appear for the purpose of testifying at the the ☐ District
☐ Superior Court located at (*Court name*)_____
at (*Court address*)_____ , Maine at (*time*)_____ ☐ am ☐ pm
on (*mm/dd/yyyy*) _____ and to remain until discharged for the purpose of testifying.

☐ YOU ARE COMMANDED in the name of the State of Maine to appear before _____
a _____ , at the offices of _____
at _____ , _____ , Maine at (*time*)
_____ ☐ am ☐ pm on (*mm/dd/yyyy*) _____ to testify and give evidence by deposition
pursuant to the Maine Rules of Civil Procedure, an application having been filed for this deposition in this court.

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following designated things or premises on
(*mm/dd/yyyy*) April 10, 2026 at 3:00 ☐ am ☒ pm at Creswell Law (Address/email below) .

☒ YOU ARE COMMANDED to permit inspection and copying of the following designated things or premises:

_____ See Attached Exhibit A _____

Time and place of inspection: April 10, 2026 by 3:00 p.m. - Creswell Law, PO Box 7340, Portland, ME 04112
rcreswell@creswelllaw.com          207-358-1010 .

This subpoena is issued on behalf of Severin M Beliveau _____ whose attorney is
Randy J Creswell, Creswell Law . If you object to the subpoena, you must file a
timely motion in court to quash or modify it. If you object to the inspection or copying of any of the materials or
premises designated above, you must serve notice of that objection in writing upon the party or attorney,
Randy J Creswell, Esq. before (*mm/dd/yyyy*) April 9, 2026 .

☐ This subpoena relates to action in non-Maine jurisdiction and must be signed by the clerk to be valid.

**WARNING AND NOTICE: Failure to comply with this subpoena may subject you to arrest and being held in contempt of court.**
**Court Rules governing subpoenas are found at www.courts.maine.gov.** See the reverse side of this subpoena for a statement of
your rights and duties pursuant to this subpoena as set out in Rules 45(c) and (d) of the Maine Rules of Civil Procedure.

Date (*mm/dd/yyyy*): 03/23/2026          ▶ Randy J. Creswell, Esq.
                                              ☐ Clerk ☒ Attorney at Law

_____ , ss

On (*mm/dd/yyyy*) 03/ /2026 , I subpoenaed the above-named First National Bank by
delivering a copy of this Subpoena. (At the same time I tendered and paid to _____ the sum of $ n/a
as fees for travel and one days attendance.)

Fees:   Travel      $ _____
        Service     $ _____          ▶ _____
        Copy        $ _____                    Signature
        Witness fee $ _____          _____
                                                 Agency

**ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable
accommodation, contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

CONTAINS NONPUBLIC DIGITAL INFORMATION
MAINE JUDICIAL BRANCH

**Rule 45(c): Protection of Persons Subject to Subpoenas.**

1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court for which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings, a reasonable attorney's fee, and other reasonable expenses incurred in seeking the sanction.

2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents, or tangible things, or inspection of premises, need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing, or trial.

   (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena a written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of any justice or judge of the court for which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

3) (A) On timely motion, the court for which a subpoena was issued shall quash or modify the subpoena if it:
   i. fails to allow a reasonable time for compliance;
   ii. requires a resident of this state who is not a party or an officer of a party to travel to attend a deposition outside the county wherein that person resides or is employed or transacts business in person or a distance of more than 100 miles one way, whichever is greater, unless the court otherwise orders; requires a nonresident of the state who is not a party or an officer of a party to attend outside the county wherein that person is served with a subpoena, or farther than 100 miles from the place of service, unless some other convenient place is fixed by an order of court;
   iii. requires disclosure of privileged or other protected matter and no exception or waiver applies; or
   iv. subjects a person to undue burden.

   (B) If a subpoena (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles one way to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot otherwise be met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**Rule 45(d) Duties in Responding to a Subpoena.**

1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

---

**ADA Notice:** The Maine Judicial Branch complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation, contact the Court Access Coordinator, accessibility@courts.maine.gov, or a court clerk.
**Language Services:** For language assistance and interpreters, contact a court clerk or interpreters@courts.maine.gov.

## EXHIBIT A TO SUBPOENA TO PRODUCE DOCUMENTS

Pursuant to 14 M.R.S. §§ 3122(2) and 3125(4) and Maine Rule of Civil Procedure 45,

Judgment Creditor, Severin M. Beliveau ("Judgment Creditor"), hereby requests that First

National Bank ("FNB" or "you" or "your") produce for inspection and copying the documents

requested below (collectively, "Requests") that are either in the possession, custody, or control of

FNB, or are known by it to exist, by April 10, 2026.

### Definitions and General Instruction

You must respond to each request for production of documents separately and fully, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer and response. If you object to a request for production of documents, you must nevertheless answer any portion thereof that is not objectionable. If you raise an objection with respect to a request for production of documents, identify in detail that portion of the request that you deem objectionable and the precise basis for the objection. In responding to each request:

A.    "Communications" or "communication" shall include any and all manner of oral, written or electronic exchanges, conveyances or means of transferring information to or among any persons (as defined herein), including emails and texts.

B.    "Document" or "documents" shall mean all objects, tangible or intangible, from which any information may be derived and shall include without limitation all electronically stored information – including without limitation all writings, emails, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained – translated, if necessary, by the respondent into reasonably usable form.

C.    "Person" shall mean any live human being, individual, association, professional association, corporation, partnership, limited partnership, limited liability partnership, joint venture, trust, company, limited liability company, sole proprietor, cooperative, business entity, or any public agency, department, or bureau, and is used to reflect both the singular and plural.

D.    "Relating to," "in relation to," or "relate to" shall mean concerning, referring to, alluding to, responding to, in connection with, commenting on, in response to, with respect to, about, regarding, announcing, evidencing, embodying, explaining, discussing, showing, depicting, describing, studying, reflecting, analyzing, or constituting.

E.    Pursuant to Maine Rule of Civil Procedure 45, you are required to produce all requested documents and tangible things in its possession, custody, and control, including, but not

limited to, those documents and tangible things in the possession, custody, and control of its current and/or former directors, accountants, legal counsel, employees and other agents.

F.      The documents and tangible things requested below are to be produced either as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in this request for production.

G.      "Relevant Period" shall mean, unless otherwise specifically stated in an individual request, the period of time from March 1, 2025 to the present.

H.      "Mattson" or "Judgment Debtor" shall mean Kevin J. Mattson (SSN xxx-xx-6673) (10 Cranberry Ridge Road, Freeport, ME 04032).

I.      "Jeanne" shall mean Jeanne M. Mattson (SSN xxx-xx-8867) (10 Cranberry Ridge Road, Freeport, ME 04032).

## Requests for Production of Documents

1.      All bank records, checks, deposits and deposit slips, debit records, monthly account statements, monthly loan statements, transfer records, wire transfer documents, and/or any payment receipts relating to any account of, loan to, or maintained by Judgment Debtor with FNB, whether checking, savings, credit card, mortgage, note, or otherwise.

2.      All forbearance, workout, or other loan agreements or documents between FNB and Judgment Debtor from January 1, 2020 to the present.

3.      All forbearance, workout, or other loan agreements or documents between FNB and Jeanne from January 1, 2020 to the present.

4.      All communications between Judgment Debtor and FNB relating to any loan, account, workout, or forbearance with FNB.

5.      All communications between Jeanne and FNB relating to any loan, account, workout, or forbearance with FNB.

6.      All personal financial statements provided by Jeanne and/or Judgment Debtor to FNB from June 1, 2019 to the present.

2

STATE OF MAINE                          DISTRICT COURT
CUMBERLAND, SS.                         Location:  Portland
                                        DOCKET NO.: PORDC-SA-2026-0224

SEVERIN M. BELIVEAU and             )
CYNTHIA M. BELIVEAU,                )
                                    )
                Judgment Creditors, )   **CERTIFICATE PURSUANT TO**
                                    )   **9-B M.R.S. § 163(1)**
                                    )
     v.                             )
                                    )
KEVIN J. MATTSON,                   )
                                    )
                Judgment Debtor.    )

I, Randy J. Creswell, Esq., counsel for Judgment Creditors, Severin M. Beliveau and Cynthia Beliveau, in the above-captioned special action, hereby certify that the enclosed Subpoena and Exhibit A has been served on Judgment Debtor Kevin J. Mattson, via email and U.S. mail, pursuant to Maine Rule of Civil Procedure 5, as follows:

    U.S. Mail:    10 Cranberry Ridge Road, Freeport, ME  04032
    Email:    kevin@dirigocapitaladvisors.com

I, Randy J. Creswell, Esq., counsel for Judgment Creditors, Severin M. Beliveau and Cynthia Beliveau, in the above-captioned special action, hereby certify that the enclosed Subpoena and Exhibit A has been served on Jeanne M. Mattson, via email to her counsel, Lee H. Bals, Esq., and U.S. mail, as follows:

    U.S. Mail:    10 Cranberry Ridge Road, Freeport, ME  04032
                   Marcus Clegg, 16 Middle Street, Suite 501, Portland, ME  04101
    Email:    lbals@marcusclegg.com

Dated at Portland, Maine this 23rd day of March, 2026.

                                              Randy J. Creswell, Esq., ME Bar No. 8962
                                            Counsel for Judgment Creditors,
                                              Severin M. Beliveau and Cynthia Beliveau

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com

EXHIBIT I

**3/23/2026**

Shelley Sawyer

Clerk of the Courts

Cumberland County District Court

205 Newbury Street

Portland, ME 04101

**Re: Severin Beliveau et. Al. v. Kevin J Mattson PORDC – SA – 2026-0224**

**Notice Regarding Automatic Stay / Request for Continuance**

Dear Ms. Sawyer:

I received a disclosure subpoena in the case referenced above which is attached. I am writing to notify the Court that I remain a debtor in an active Chapter 7 bankruptcy case (Case No. 24-20188) pending in the United States Bankruptcy Court for the District of Maine. Although I have waived my discharge voluntarily, the bankruptcy case has not been dismissed or closed. As a result, it is now my understanding that the automatic stay under 11 U.S.C. § 362 may still be in effect. I am not a lawyer, and am acting pro se, but my research shows a waiver of discharge is **not the same** as a discharge being "granted" or "denied" under § 362(c)(2)(C).

A recent court case In re Carlsson, No. 24-51952-mmp, 2024 WL 4647313 (Bankr. W.D. Tex. Nov. 1, 2024) clearly states that a voluntary waiver does not affect the automatic stay.

The creditor in this matter has recently initiated post-judgment disclosure proceedings. Because such actions may be prohibited by the automatic stay, I respectfully request that the Court take notice of the pending bankruptcy and refrain from acting on the disclosure subpoena unless and until the Bankruptcy Court determines that the stay has terminated.

If the Court concludes that the automatic stay is no longer in effect, I respectfully request a brief continuance to allow me time to address the disclosure issues appropriately. I am unavailable to appear on the date outlined in the subpoena and request a brief continuance.

Thank you for your attention to this matter. Please let me know if the Court requires any additional information.

Sincerely,

**Kevin J. Mattson**

P.O. Box 596 Gardiner, ME 04345

(207) 242-5250  - Kevinmattson2112@gmail.com



# MARCUS | CLEGG
ATTORNEYS & COUNSELORS

February 6, 2026

Shelley Sawyer, Clerk
Cumberland Superior Court
205 Newbury Street, Ground Floor
Portland, ME 04101

JENNIE L. CLEGG

LEE H. BALS

DANIEL L. ROSENTHAL

DAVID C. JOHNSON

K. BLAIR JOHNSON

BRENDAN T. BARRY

RE:   Joanna M. Gurley v. CMCC Lot 18 Management, LLC, et al.
      Docket No.: PORSC-CV-2024-109

Dear Clerk:

I enclose for filing a Motion to Withdraw as Counsel of Record for Defendant Kevin Mattson in relation to the above matter.

Thank you for your usual kind assistance. If you have any questions, please feel free to contact my office.

GEORGE J. MARCUS (Retired)

MYER M. MARCUS
(1914-2015)

Sincerely,

David C. Johnson

16 MIDDLE STREET, UNIT 501
PORTLAND, ME 04101-5166

T. 207.828.8000 / 800.806.9242
F. 207.773.3210 / 800.806.8678
FIRM@MARCUSCLEGG.COM

MARCUSCLEGG.COM

cc:   Randy Creswell, Esq. (via email)
      Andre Duchette, Esq. (via email)

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-24-109

JOANNA M. GURLEY

        Plaintiff,

v.

CMCC LOT 18 MANAGEMENT, LLC et al.

        Defendant

MOTION TO WITHDRAW AS
COUNSEL OF RECORD FOR
DEFENDANT KEVIN MATTSON

NOW COMES undersigned counsel and the law firm of Marcus | Clegg ("MC") and moves to withdraw as counsel of record for Defendant Kevin Mattson ("Mattson") in the above-captioned action stating as follows:

1. MC is counsel of record for Mattson.

2. An Order staying the case as to Mattson was entered by the Court on January 9, 2025, due to a chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the District of Maine, docket number 24-20188 (the "Chapter 7 Case").

3. Mattson has waived his right to a discharge of his debts in the Chapter 7 Case. It is not clear whether this waiver, in and of itself, results in a lifting of the automatic stay, as there is conflicting case law on the issue, none of which is binding on the Maine bankruptcy court.

4.      Regardless, MC seeks to withdraw from representation based upon the provisions of Maine Rule of Professional Conduct 1.16(b)(5), namely that he has, and will be going forward, be unable to fulfill his obligations to MC regarding MC's services.[1]

5.      Pursuant Maine Rule of Professional Conduct 1.16, Mattson has been advised of the foregoing and given reasonable warning that MC will withdraw unless obligations regarding payment for service is fulfilled.

6.      MC has been advised concerning the filing, consents to the relief requested and intends to proceed *pro se*, at least for the immediate future.

7.      Undersigned counsel is of the opinion that withdrawal can be accomplished without material adverse effect on Mattson's interests.

WHEREFORE, undersigned counsel prays for an Order allowing undersigned counsel and the law firm of Marcus | Clegg to withdraw as counsel of record for Defendant Kevin Mattson.

Dated February 5, 2026

/s/ David C. Johnson
David C. Johnson Bar No. 9447

COUNSEL FOR DEFENDANT
KEVIN J. MATTSON

MARCUS CLEGG
16 Middle Street, Unit 501
Portland, ME  04101
(207) 828-8000
dcj@marcusclegg.com

---

[1]    MC has also been granted leave to withdraw as Mattson's counsel in the Chapter 7 Case.

2