**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

In re:                                                    )
                                                              )         Chapter 7
KEVIN J. MATTSON,                            )         Case No. 24-20188 PGC
                                                              )
                            Debtor.                )

**CREDITOR MONTRESOR LLC'S OBJECTION TO MOTION TO
APPROVE COMPROMISE PURSUANT TO FED. R. BANKR. P. 9019(a)**

NOW COMES Montresor LLC ("Montresor"), a creditor in the above-captioned Chapter

7 case of Debtor, Kevin J. Mattson ("Debtor"), pursuant to Federal Rule of Bankruptcy Procedure

9019 and D. Me. LBR 9013-1, 9014-1, and 9019-1, and objects to the Motion to Approve

Compromise Pursuant to Fed. R. Bankr. P. 9019(a), dated March 16, 2026 ("9019 Motion") (D.E.

241), filed by Edmond J. Ford, Chapter 7 Trustee (the "Trustee"), seeking the Court's approval of

the Settlement Agreement by and among the Trustee, Marcus Clegg Bals & Rosenthal ("Marcus

Clegg"), Seton Unit 4, LLC ("Seton 4"), Terence Conklin ("Conklin"), and Debtor in relation to

the Trustee's Adversary Proceeding entitled, Edmond J. Ford, Trustee v. Terence Conklin, et al.,

Adv. Proc. No. 25-2009 ("Adversary Proceeding") and certain claims against Geoffrey Houghton

("Houghton") and Island Brewing, LLC ("Island Brewing") arising under Chapter 5 of the United

States Bankruptcy Code ("Code").

This second attempt at settling the Adversary Proceeding between the Trustee and Marcus

Clegg, Conklin, and Seton 4 suffers from the same defects that resulted in the Trustee's first

proposed settlement being rejected and denied by the Court at the hearing on February 25, 2026

(D.E. 235).

And further burdening this new compromise effort of the Adversary Proceeding is the

seemingly unrelated introduction of a proposed resolution of certain estate avoidance claims

against Houghton and Island Brewing through a Rube Goldberg machinesque payment routing system, whereby a $15,000 loan is originating from Houghton to Debtor who then, in turn, delivers all the settlement funds to the Trustee in satisfaction of the payment obligations of Houghton and Seton 4 to the Trustee under the new, proposed Settlement Agreement.

Why an avoidance claim settlement "with" Houghton and Island Brewing is being woven into a settlement of the Adversary Proceeding is unstated and unknown, as is the odd "necessity" of routing the settlement payments from Houghton, to Debtor, and then onto the Trustee, as opposed to having Houghton and Seton 4 simply make the payments directly to the estate.[1]

For these and the other reasons discussed below, the 9019 Motion should either be denied in its entity, or the proposed settlements among the parties approved with certain modifications, clarifications, and limitations.

In support of its Objection, Montresor states as follows.

### I.  Constitutional and Statutory Authority, Jurisdiction, and Venue

1.      This Court possesses Constitutional authority to issue final orders and judgments in this contested matter, it has jurisdiction pursuant to 28 U.S.C. § 1334(b), this is a statutorily-core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (F), and (O), and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.  Facts

2.      On August 7, 2025, the Trustee commenced the Adversary Proceeding against Marcus Clegg, Seton 4, and Conklin by the filing of his Complaint (Adv. Proc. D.E. 1).

3.      In his Complaint, the Trustee alleges three claims against those Defendants: (1) avoidance of the Pledge as a preferential transfer to Conklin under § 547 of the Code; (2) avoidance

---

[1] *Compare with* Application to Compromise a Controversy with Allison Tracy Talbot, dated March 16, 2026 (D.E. 239), whereby Trustee filed standalone application to compromise avoidance claims under Rule 9019.

of a grant of a security interest to Conklin under § 544 of the Code and applicable non-bankruptcy law; and (3) the Tax Credit (as defined in the Complaint) is property of the estate under § 541 of the Code against Seton 4 and Marcus Clegg. *See* Complaint.

4. On December 3, 2025, the Trustee filed his first Motion to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a) ("First 9019 Motion") (D.E. 178). In the First 9019 Motion, the Trustee sought the Court's approval a settlement agreement between and among the Trustee and Marcus Clegg, Seton 4, and Conklin resolving the Adversary Proceeding and the parties' respective entitlements to the "Refundable Credit" (as defined in the Settlement Agreement) or "Tax Credit" (as defined in the Complaint) together with certain other ancillary relief.

5. On December 26, 2025, Montresor filed its Objection to the Trustee's First 9019 Motion.[2]

6. Following a hearing on the First 9019 Motion on February 25, 2026, the Court denied the Trustee's First 9019 Motion for the reasons set forth on the record. D.E. 235.

7. Three weeks later, the Trustee filed the instant 9019 Motion again seeking (in part) a settlement of the Adversary Proceeding. In this iteration of the Settlement Agreement, the estate receives $5,000 (from Houghton *via* Debtor) in exchange for a retroactive abandonment of the estate's membership interest in Seton 4. *See* 9019 Motion and Exhibit A (Settlement Agreement, dated March 11, 2026, ¶ 2). The estate receives nothing from Conklin in exchange the estate's dismissal of Counts I and II against him, with prejudice, in the Adversary Proceeding Complaint. *Id.*

8. Also embedded within this new Settlement Agreement among the Trustee, Marcus Clegg, Seton 4, Conklin, and Debtor – but notably and strangely not Houghton or Island Brewing

---

[2] *See* Objection to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a) (D.E. 201) ("First Objection").

– is the Trustee's settlement of $37,600 in identified avoidance claims against Houghton and Island Brewing in exchange for $10,000.  *See* Settlement Agreement ¶ 1.  As with the $5,000 payment above, the $10,000 settlement payment is originating with Houghton as a loan to Debtor, who then is making a settlement payment to the Trustee.  *Id.*  In exchange for Debtor's $10,000 payment to the Trustee, the estate is releasing Houghton (but not Island Brewing, per the Settlement Agreement) from "any claims" of the estate "under Chapter 5 of the Bankruptcy Code."  *Id.* ¶¶ 1.4, 1.7.

### III.  Discussion

### A.      Business Judgment Standard

9.      "Compromises are generally approved if they meet the business judgment of the trustee."  *In re Indian Motocycle Co., Inc.*, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003).

> At the hearing on the settlement, the Bankruptcy Court weighed the appropriate factors for approval of a compromise.  Those factors include: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. *Desmond,* 70 F.3d at 185.

*Id.* at 283.

> The First Circuit observed, however, that "[t]he approval of a compromise is within the sound discretion of the bankruptcy judge ... and [an appellate] court will not overturn a decision to approve a compromise absent a clear showing that the bankruptcy judge abused her discretion." *Id.* "The cask which encases a judge's discretion, though commodious, can be shattered when a <u>reviewing tribunal is persuaded that the trial court misconceived or misapplied the law</u>, or misconstrued its own rules." *Id.* (quoting *Aggarwal v. Ponce Sch. of Med.,* 745 F.2d 723, 727 (1st Cir.1984)).

*Beacon Investments LLC v. MainePCS, LLC*, 468 B.R. 1, 14–15 (D. Me. 2012) (emphasis added).

10.     In further support of his arguments here, and by way of shorthand, the Trustee incorporates a number of his prior filings in Debtor's Chapter 7 case.[3]

**B.      Abandonment of Estate's Seton 4 Membership Interest Does Not Eliminate Estate's Entitlement to Tax Credit**

11.     Seemingly in an effort to eliminate entirely the estate's entitlement to the so-called "tax credit and its recovery[,]" – *i.e.*, the State of Maine refundable historic tax credits for the years 2023 and 2024 ("Tax Credit") – the Trustee proposes to "abandon as of the petition date" the "estate's interest in the membership interest in Seton Unit 4, LLC" in exchange for the $5,000 payment from Debtor.  *See* Settlement Agreement ¶ 2.4; 9019 Motion, p. 2.

12.     As has been argued and briefed before, abandonment of the estate's membership interest in Seton 4 will not – as a matter of law – cut off or have any effect whatsoever on the estate's entitlement to receive the Tax Credit in the event it is ever generated.  The estate, right now, is entitled to that Tax Credit (*i.e.*, pre-abandonment of the Seton 4 membership interest), and it will still be entitled to that Tax Credit post-abandonment of the membership interest.

13.     The Trustee's proposed path continues to reflect his lack of understanding of the Maine Uniform Limited Liability Company Act, 31 M.R.S. §§ 1501 – 1604, the distinction between member status and membership interests in LLCs, and what the holder of a membership interest in an LLC is entitled to or obligated for.

14.     Debtor is the sole member of Seton 4.  *See* 31 M.R.S. § 1502(18).  The estate is the sole holder of the "transferable interest" (colloquially, membership interest) in Seton 4.  *See* 31 M.R.S. § 1502(29), 1502(30), 1571; 11 U.S.C. § 541.

---

[3]  *See* Notice of Chalk, dated February 6, 2026 (D.E. 225); Trustee's Supplemental Memorandum on Certain Tax Issues Relating to Motion to Approve Compromise, dated January 31, 2026 (D.E. 219); Reply Memorandum in Support of Motion to Approve Compromise (dated January 19, 2026) (D.E. 211); First 9019 Motion (D.E. 178) (collectively, the "Trustee Filings").

15. The Trustee on behalf of the estate is entitled to any "distribution" that Seton 4 transfers to the Trustee as the holder and transferee of Debtor's transferrable interest in Seton 4. *See* 31 M.R.S. §§ 1502(9), 1502(14), 1502(29), 1502(30), and 1572(2).

16. But, and determinatively, under applicable bankruptcy and non-bankruptcy law, Seton 4 will never be entitled to the Tax Credit because on the filing date only Debtor, not Seton 4, was entitled to receive the Tax Credit in the event it ever monetized. *See, e.g., In re Woodside*, 538 B.R. 518, 523 (Bankr. C.D. Ill. 2015) ("A debtor's right to receive a refundable ACTC is correctly treated as a property interest that becomes property of the estate by operation of section 541 …."); *cf. In re Virani*, 574 B.R. 338, 355 (Bankr. N.D. Ga. 2017), aff'd sub nom. Modi v. Virani, 2019 WL 13414526 (N.D. Ga. Mar. 7, 2019).

17. Consequently, the only thing that abandoning the estate's membership interest in Seton 4 accomplishes is to prevent the estate from receiving any distribution that Seton 4 may make of its property to the estate (in favor of Debtor). Abandonment will have no effect on the estate's continuing entitlement to receive the Tax Credit in the event it ever monetizes because on the filing date only Debtor was entitled to receive it – a point Debtor himself has made now on multiple occasions (after Marcus Clegg ceased representing him, when his position was the opposite).

18. If the Trustee wants to accept $5,000 from Debtor in exchange for an abandonment of the estate's right to receive distributions of Seton 4's funds and assets, then maybe he can do that, and maybe it is a valid exercise of his business judgment. It does not make any sense to Montresor why the Trustee would ever do that, because the estate has no risk in continuing to hold the membership interest. But regardless, any such abandonment does not, and will not do, what the Trustee thinks it will do.

19.     Nor has the Trustee has offered or demonstrated any justification for a retroactive abandonment of the estate's membership interest in Seton 4 to the petition date.  Any permitted abandonment, therefore, should only be effective as of March 16, 2026, the date of the filing of the 9019 Motion.  *See In re Malden Mills Indus., Inc.*, 303 B.R. 688, 701 (B.A.P. 1st Cir. 2004) ("where abandonment has been challenged and thus is subject to review by the court, the date of any approved abandonment should be the date the notice or motion for abandonment was filed. However, in light of the decision in *Thinking Machines,* a bankruptcy court may, based upon specific findings and an appropriate record, order that such abandonment should have either retroactive or prospective effect.").

## C.     <u>What Was The Point of the Adversary Proceeding?</u>

20.     After spending 121 hours on matters relating to the Tax Credit and bringing the Adversary Proceeding against, *inter alia*, Marcus Clegg and Seton 4 (Count III) to determine who was entitled to receive the Tax Credit in the event it ever monetized, the Trustee now states that he "has concluded that the refundable tax credit will not be <u>legitimately</u> available to anyone." 9019 Motion ¶ 16 (emphasis added).  As such, it is his business judgment "that the Estate will not be able to benefit from the prosecution of [the] Adversary Proceeding…." *Id.* ¶ 17.

21.     What the Trustee's 121 hours of investigation into the bona fides of the Tax Credit really appears to reveal is that the Trustee believes that the Tax Credit will only be available to someone who claims them <u>illegitimately</u> – and the Trustee does not want to have any part of that. Fair enough.

22.     The Trustee, however, will not be the signatory on any tax returns filed with the Internal Revenue Service or Maine Revenue Services ("<u>MRS</u>") that could potentially generate or trigger the Tax Credit.  Only Debtor will sign those returns.

23.     And if MRS issues and pays the Tax Credit after it reviews Debtor's filed 2023 and 2024 tax returns, which it presumably will only do after reviewing the substance, content, and validity of those returns, then it does and that money will flow to the estate.  And if it does not, then it will not.  And if Debtor never files his tax returns, given that he has not done so since 2020 and counting, then he does not and all of this is entirely academic and hypothetical.

24.     Montresor does not believe that spending 121 hours delving into the bona fides of the Tax Credit was necessary.  And it would not have brought the Adversary Proceeding in the first place if it were in the Trustee's shoes.  The Tax Credit is property of the estate for the reasons discussed above, and whether Conklin, Marcus Clegg, Debtor, or anyone else has claims against Seton 4 is irrelevant to that reality.

25.     Inexplicably, though, now that the Trustee has in fact brought the Adversary Proceeding, and even though the purely legal issue of entitlement to the Tax Credit in Count III (estate or Seton 4) is and has been squarely before the Court and can be decided at any time on a stipulated record and briefs (which literally have already been filed), the Trustee does not seem to want to know the answer to the question.  He apparently prefers ambiguity on the point.  Why?

26.     Montresor asserts that that legal question should be resolved for the benefit of all parties involved.  Then, if it then turns out that the estate is entitled to the Tax Credit (because it is) and the Trustee wants to abandon that (still unscheduled) asset, then he can do that, and any parties in interest will have an opportunity to be heard on the issue.

26.     As for Counts I and II of the Complaint, even though Conklin has conceded and admitted the validity of the Trustee's avoidance claims against him, and the Trustee could just move for judgment against Conklin on that basis alone, the Trustee now just wants to dismiss the estate's claims against Conklin, with prejudice, and without any consideration in return.

8

27.     On its face, Montresor asserts that none of this is a proper exercise of the Trustee's business judgment.

**D.      Settlement of the Estate's Avoidance Claims Against Houghton and Island Brewing is an Abuse of the Trustee's Business Judgment**

28.     Even though Houghton and Island Brewing are not parties to Settlement Agreement for which the Trustee seeks the Court's approval, for some reason the Trustee wants to fold them into his proposed settlement of the Adversary Proceeding with Conklin, Marcus Clegg, and Seton 4 and resolve certain estate avoidance claims against them arising under Chapter 5 of the Code. *See* 9019 Motion ¶¶ 1 – 10.

29.     Specifically, the Trustee wants to settle Houghton's receipt of $15,600 in prepetition transfers from Debtor for $4,000.  He also wants to settle Island Brewing's receipt of $22,000 for $6,000.  The combined $10,000 payment is to originate as a loan from Houghton to Debtor, who then is to make a settlement payment to the Trustee in the total amount of $15,000 (inclusive of the Seton 4 payment of $5,000).  *Id.*

30.     Houghton is an "insider" of Debtor within the meaning of § 101(31)(A) of the Code. Island Brewing may also be an insider of Debtor by virtue of being an "affiliate" of Houghton, Debtor, or The ROTM Lofts, LLC.  *See* 11 U.S.C. § 101(2).  The preference period for insiders is one year prior to the filing date.  *See* 11 U.S.C. § 547(b)(4)(B).  The lookback period for fraudulent transfers under the Code is two years prior to the filing date.  *See* 11 U.S.C. § 548(1)(1).

31.     In the event that an adversary proceeding was commenced against them to recover the avoidable transfers under § 547(b) of the Code, then Houghton and Island Brewing would have the burden of proving the nonavoidability of the transfers under § 547(c), including any asserted ordinary course of business defense under § 547(c)(2) of the Code.

9

32.     In deciding to accept 27% ($10,000) from Debtor of the face value of total identified avoidance claims ($37,600) against Houghton and Island Brewing, the Trustee has accepted – on their bare say so – Houghton and Debtor's "assert[ion] that such loans were common between Mr. Houghton and the Debtor or entities controlled by the Debtor.  They each assert that the $15,600 was part of that ordinary course [sic] dealing between them."  9019 Motion ¶ 4, p.6. Same story with respect to Island Brewing.  *Id.* ¶ 9, p. 6.

33.     In other words, the Trustee is accepting Debtor's and Houghton's apparently document-free and entirely self-serving proffer of a defense of ordinary course of business and simple repayment of loans, notwithstanding that: (i) in the 9019 Motion itself, the Trustee identifies 3 checks in the total amount of $37,350 that were returned for non-sufficient funds, which is a Class B crime under Maine law (17-A M.R.S. § 708(1)(B)(2)); (ii) Debtor, to date, has never scheduled the Tax Credit on his Schedules even though they are potentially the estate's most valuable asset and Debtor, himself, has claimed personal entitlement to them in this case;[4] and (iii) the Trustee literally states in his own 9019 Motion that the Tax Credit – for which Debtor is and was entirely responsible in generating – "will not be <u>legitimately</u> available to anyone." (Emphasis added).

34.     So how is it that the Trustee is just going to take Debtor's word for it that the challenged payments were made in the ordinary course of business for purposes of § 547(c)(2) and not avoidable?  That would be unjustified under virtually all circumstances, but it is particularly

---

[4] *See* 18 U.S.C. § 157 (Bankruptcy Fraud); *see also United States v. Castellini*, 392 F.3d 35, 48 (1st Cir. 2004) ("Similarly, the first of multiple efforts to hide a series of assets from the bankruptcy court may create proceeds of illegal activity. *See Richard,* 234 F.3d at 770 (proceeds laundered in money laundering may result from "*a completed phase of an ongoing offense* ") (quoting *United States v. Conley,* 37 F.3d 970, 980 (3d Cir.1994)) (emphasis in *Richard* ); *United States v. Butler,* 211 F.3d 826, 830 (4th Cir.2000) (bankruptcy fraud committed and funds became "criminally derived property" when debtor gave check to innocent third party so that funds would be held on debtor's behalf and concealed from the bankruptcy court; money laundering occurred when funds were used to purchase cashier's checks a year later, even if these acts were also a further phase of bankruptcy fraud).").

10

true here.

35.     Montresor rejects that the Trustee and the Court can just take Debtor's and Houghton's word for it that they possess viable, or any, defenses to the estate's avoidance claims, particularly when they, as *pro se* parties, have the burden of proof of demonstrating any such entitlements.  11 U.S.C. § 547(g).

36.     Montresor asserts that the Court should not approve the Trustee's proposed compromise (or Settlement Agreement, even though Houghton and Island Brewing are strangely not parties to it) unless and until the Trustee, Debtor, and/or Houghton produce sufficient evidence in this contested matter to support their claimed defenses to the estate's avoidance claims.

**E.     Any Release of Houghton and Island Brewing Should be Limited to Transfers Identified in the 9019 Motion**

37.     The Trustee has made clear repeatedly in this case that he believes there will be very little, if any, dividend distribution to unsecured creditors.  He has made that assertion on multiple occasions because he believes the likelihood that the estate will obtain any recovery of the Tax Credit is virtually non-existent.

38.     Montresor does not share the Trustee's view in that regard.

39.     Montresor has no idea whether the Tax Credit will ever monetize once Debtor, if ever, files his tax returns for 2021 – present.  Maybe it will, maybe it will not.  But if it does, then it will be the estate's property and it will augment the recovery to the estate's claimants and creditors with allowed claims in some amount.

40.     But Debtor's case has always been an avoidance case.  In the years and months before the filing date in September 2024, Debtor made hundreds of thousands of dollars (perhaps more) of payments and transfers to his creditors, creditors of his entities, insiders, family members, controlled entities, and other persons and companies.  If there was ever to be a recovery for

11

unsecured creditors in this case, then those potential avoidance claims were always going to be the primary source.

41.    But rather than focusing his energies on pursuing those avoidance claims and cases, the Trustee has spent a massive amount of time running down the validity and viability of the Tax Credits, which, while an interesting exercise, was entirely unnecessary with regard to any potential recovery by the estate.  It either was going to monetize for reasons outside the Trustee's control, or it was not, also for reasons outside of the Trustee's control.

42.    Montresor respects and acknowledges that the pursuit of Chapter 5 claims under the Code is generally the province of the Trustee.  *See* 11 U.S.C. § 704.  But if the Trustee is unwilling or unable for any reason to pursue such claims for the benefit of the estate and all its creditors, then Montresor is prepared to seek the Trustee's and Court's approval to pursue all such claims on behalf of the estate on approved terms beneficial to the estate.  *See, e.g., In re LP & D, Inc.*, 622 B.R. 473, 486–87 (D. Mass. 2020) ("Here, the Bankruptcy Court based its approval of the CLA on a line of Second Circuit cases that have considered whether a creditor may prosecute claims on behalf of the estate with the Trustee's consent…. Those cases allow derivative creditor standing if 1) the creditor has consent from the trustee and 2) the bankruptcy court finds that the suit is a) in the best interest of the estate and b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings….. This court concurs that an agreement for derivative standing is permissible in such circumstances.").

43.    Given the foregoing and the volume of payments Debtor made to Houghton and Island Brewing over the years prior to the filing date, Montresor asserts that any release of those parties should be limited to the (cleared) transfers identified in the 9019 Motion.  There are undoubtedly more transfers unaccounted for that should not be released at this time.

44. Finally, for the avoidance of doubt, any release provided to Houghton or Island Brewing by or from the estate will not, and does not, release them from any direct avoidance claims possessed by Montresor or any other creditors of Debtor under the Maine Uniform Fraudulent Transfer Act, 14 M.R.S. §§ 3571 – 3582.

**F.     There is No Justification for the Dismissal, with Prejudice, of the Estate's Avoidance Claims in the Adversary Proceeding Against Conklin**

45. Conklin is providing no consideration to the estate in exchange for the estate's dismissal, with prejudice, of its avoidance claims against him in Counts I and II of the Adversary Proceeding. There is no justification whatsoever for such a dismissal with prejudice.

46. Conklin has already conceded and admitted on multiple occasions that only Seton 4 granted him a pledge in the Tax Credits. If that is true, then he can simply stipulate to judgment on Counts I and II of the Adversary Proceeding and nothing whatsoever changes from his perspective regarding his claimed entitlement to the Tax Credits.

47. Alternatively, the estate's claims against him can be dismissed, without prejudice.

48. Better yet, if the Trustee is unwilling or unable to take the final, straightforward, and easy step of proving the estate's avoidance claims against Conklin in the Adversary Proceeding, as indicated above, Montresor is ready and willing to finish the job for him.

49. As stated previously in other filings, Count I of the Complaint should just be dismissed anyway because it does not advance the ball for the estate, and proving Count II and retaining for the benefit of the estate any liens once possessed by Conklin is simple, as he admittedly failed to file a UCC-1 financing statement to perfect any such lien rights.

50. Given Conklin's schedule, it appears that the evidentiary hearing on Montresor's Objection to his Proof of Claim (as well as the Trustee's related application to compromise) will occur sometime in early to mid-June. In its Objection to Conklin's Proof of Claim, Montresor has

already asserted the same avoidance claims and grounds for the disallowance of Conklin's Claim

as are set forth in Counts I and II of the Complaint.  Consequently, if the Trustee is unwilling to

prove his case in the Adversary Proceeding, then Montresor asserts that it should be permitted to

proceed on all the grounds for its claim Objection at the evidentiary hearing, including those arising

under §§ 547, 550, and 551 of the Code.

### IV.  Conclusion

WHEREFORE, Creditor, Montresor LLC, requests that the Court deny the Trustee's 9019

Motion or, alternatively, establish a discovery schedule in this contested matter for a final

determination, as necessary, of the Trustee's 9019 Motion at an evidentiary hearing, and that it

grant it such other and further relief as may be just and equitable under the circumstances.

Dated at Portland, Maine this 6th day of April, 2026.

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditor,
Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com

### CERTIFICATE OF SERVICE

I hereby certify that today I served copies of the above Objection and this Certificate of
Service, upon each of the parties listed on the Notice of Electronic Filing via the Court's
Administrative Procedures Governing the Filing and Service by Electronic Means (unless
otherwise set forth below).

Dated at Portland, Maine this 6th day of April, 2026.

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditor,
Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com

## Service List

Kevin J. Mattson (via email only)
kevin@dirigocapitaladvisors.com

Seth W. Brewster, Esq. (via email only)

Terence Conklin (via email only)
82 South Bend Road
Rye Beach, NH 03871

John C. Orestis (via U.S. Mail)
PO Box 777
Lewiston, ME 04240