**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| KEVIN J. MATTSON, | ) | Case No. 24-20188 PGC |
| | ) | |
| Debtor. | ) | |

**MONTRESOR LLC'S OBJECTION TO MOTION**
**TO WITHDRAW PROOF OF CLAIM**

NOW COMES Creditor, Montresor LLC ("Montresor"), pursuant to 11 U.S.C. §§ 105, 501, and 502, Federal Rules of Bankruptcy Procedure 3006 and 9014, and D. Me. LBR 9013-1(c) and 9014-1(a), and hereby objects to the Motion to Withdraw Proof of Claim, dated April 30, 2026 (D.E. 313) ("Motion to Withdraw"), filed by filed by Terrence J. Conklin ("Conklin").

In support of its Objection, Montresor states as follows.

### I. Constitutional and Statutory Authority, Jurisdiction, and Venue

1.  The Court has Constitutional authority to enter final orders on this Objection and the Claim and it has jurisdiction over this case pursuant to 28 U.S.C. § 1334.  This is a statutorily core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O), and venue is proper pursuant to 28 U.S.C. § 1409(a).

### II. Facts

2.  A year ago, on May 20, 2025, Conklin filed his Proof of Claim (Claim No. 33-1) in Debtor Kevin J. Mattson's ("Debtor") Chapter 7 case in the total amount of $258,750 ("Claim"). Conklin's Claim asserts that he is owed $258,750 from Debtor for "Money Loaned."  *See* Claim.

3.  According to Conklin's "Kevin Mattson Loan Calculation" attached to the Claim, Conklin asserts that the Claim is comprised of the following amounts:  (i) "75,000" for "Original

Loan Amount"; (ii) "3,750" for "Financing Fee"; and (iii) "180,000" for "Total Late Fee." *See* Loan Calculation to Claim.

4. Five months ago, on December 8, 2025, Montresor filed its Objection to Proof of Claim of Terence J. Conklin (D.E. 182) ("Objection").

5. In its Objection, Montresor asserts that Conklin's Claim should be disallowed for primarily two reasons: (i) Conklin failed to provide consideration to 45 Church Street, LLC ("Church Street") for the Note underlying the Claim and, as such, Debtor's Guaranty is also unenforceable for lack of consideration; and (ii) the Note's "penalty" provision is an unenforceable penalty under applicable law and the $180,000 in claimed late fee penalties should be disallowed. *See generally* Objection.

6. Since the filing of the Objection, Conklin has filed or joined at least four objections, supplemental filings, motions, and other papers in support of his assertion that he should have an allowed Claim. *See* D.E. 202 (Answer to Montresor Objection); D.E. 230 (Trustee's Application to Compromise Conklin's Claim); D.E. 248 (Supplemental Filing in Support of Claim); D.E. 306 (Trustee's 3rd Application to Compromise with, *inter alia*, Conklin).

7. In that same time period, the Court has conducted three substantive hearings on or related to the Objection and the potential allowance of the Claim (April 15, 2026; March 31, 2026; February 25, 2026).

8. The parties also initially engaged in informal discovery in this contested matter to determine whether consideration was provided for the Note and Guaranty. But Conklin and Debtor refused to voluntarily turn over any requested discovery that did not support their positions, and so formal discovery in the form of document subpoenas to non-parties became necessary.

9.      On April 2, 2026, Montresor served document subpoenas upon Winthrop Area Federal Credit Union ("WAFCU"), Gardiner Federal Credit Union ("GFCU"), and Kennebec Savings Bank ("KSB") in relation to Conklin's Claim, the Objection, and the Trustee's Application to Compromise Conklin's Claim (D.E. 248).  All three subpoenas sought the production of documents by Apri 22.

10.      On April 4, at the Court's direction (on March 31), undersigned counsel communicated with Conklin as to his availability for an evidentiary hearing on Montresor's Objection to the Claim.  In response, Conklin indicated that he would not be available until June, two months later.

11.      Given Conklin's limited availability for an evidentiary hearing on the Objection, the Court set June 4 as the date of the hearing, with exhibits and witness lists due by May 28.  *See* Amended Pretrial Scheduling Order dated April 16, 2026 (D.E. 293).

12.      In early April after service of its subpoena, counsel for KSB requested that a confidentiality order be issued from the Bankruptcy Court with respect to the documents requested its subpoena.  Montresor therefore requested at that time that the parties interested in the Claim and Objection indicate their consent to the Court's entry of its form confidentiality order.

13.      Conklin never replied to Montresor's request for consent.

14.      Because of Conklin's refusal to consent to the issuance of a confidentiality order, on April 10, 2026, Montresor filed its Motion for Entry of a Confidentiality Order (D.E. 279), and was required to set it for hearing on May 15.  While the Motion for Confidentiality Order was pending, the subpoenaed lenders would not produce documents in response to the subpoenas, notwithstanding that their deadlines to do so had since passed.

15.     On April 14, 2026, Debtor filed a completely baseless Consolidated Motion to Quash all three subpoenas to WAFCU, KSB, and GFCU.  D.E. 288.  Two days later, on April 16, the Court denied Debtor's request to quash the subpoenas.  D.E. 295.

16.     Debtor's Consolidated Motion to Quash having been denied by the Court, Debtor then caused Sandra Krueger ("Krueger") to file her own Motion to Quash the subpoenas to KSB and WAFCU (dated April 16, 2026) (D.E. 294).

17.     On April 21, 2026, the Court issued its Order (D.E. 303) denying and granting, in part, Krueger's Motion to Quash.  The Court effectively rejected all Krueger's requested relief in lieu of protections to be provided to her under the requested Confidentiality Order once it issued after the April 30 objection deadline ran (likely without objection).

18.     The objection deadline on Montresor's Motion for issuance of the Confidentiality Order did come and go without any response on April 30.  But that is not all that happened on April 30.  On April 30, Conklin filed his Motion to Withdraw his Claim stating, in part:

> The Chapter 7 Trustee has recently indicated in various hearings and filings with the Court that no distribution is anticipated from the bankruptcy estate to unsecured creditors.  In reflection of these facts Conklin seeks to withdraw his Proof of Claim.

Motion to Withdraw, p.1.

19.     Conklin also wants to withdraw his Claim now without any consequences or prejudice whatsoever to his "rights, claims, or remedies . . . under applicable non-bankruptcy law" to pursue his "claim" later on outside of bankruptcy.  *Id.*

20.     In filing his Motion to Withdraw, Conklin failed to ask the AI program that drafted the motion to also prepare a notice of hearing, or for how to comply with the Court's Local Rule 9013-1(b), which facially applies to all represented and unrepresented parties equally.  *See* D. Me. LBR 9013-1(b) ("it is the responsibility of the movant to obtain and schedule a hearing date").

21.     For if he had complied with the Court's Local Rules, given how long he delayed to strategically file the Motion to Withdraw once it was certain that the Confidentiality Order would issue – thereby finally clearing the way for the resisted and delayed delivery of the subpoenaed bank records to Montresor – it would have been indisputably too late for Conklin to avoid the evidentiary hearing on Montresor's Objection.  The Court's next available hearing date would have been June 2, and the evidentiary hearing was scheduled for June 4, with exhibits and witnesses due on May 28.

22.     But then the Clerk saved Conklin from his own cynical gamesmanship and issued its own Notice of Hearing (D.E. 314) for May 12 on the Motion to Withdraw, with responses due on May 8.  Conklin did not even have to show any cause for such expedition and special treatment. *But see* D. Me. LBR 9013-4(a)(2)(B), 9013-4(a)(3), (4), 9013-4(b), 9013-4(d)(2).

### III.  Discussion

23.     Federal Rule of Bankruptcy Procedure 3006 provides in part as follows:

(a)     Notice of Withdrawal; Limitations.   A creditor may withdraw a proof of claim by filing a notice of withdrawal.  But unless the court orders otherwise after notice and a hearing, a creditor may not withdraw a proof of claim if:

> (1)     an objection to it has been filed;…; or
>
> (3)     the creditor has . . . participated significantly in the case.

24.     "In bankruptcy cases, courts have traditionally analogized a creditor's claim to a civil complaint, a trustee's objection to an answer and an adversarial proceeding to a counterclaim….  And similar to the purpose underlying FRCP 41(a), the purpose of Bankruptcy Rule 3006 is to allow a creditor to withdraw a proof of claim unless the effect of the filing 'initiates a contest that must be disposed of by the court.'  *See* Advisory Committee Note to Bankruptcy

- 5 -

Rule 3006, 8 Collier on Bankruptcy ¶ 3006.01[1], at 3006–2."). *In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) (citation omitted).

> [Rule 3006] is derived from Federal Rule of Civil Procedure 41(a) which governs voluntary dismissal of civil actions in federal courts…. Like Rule 41(a), the general purpose of Bankruptcy Rule 3006 is to facilitate voluntary withdrawal of claims, while also "fixing the point at which the court and the [other parties] are so committed" that withdrawal may "no longer be had as of right and judicial permission is required." *Id.; In re 20/20 Sport, Inc.,* 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("[T]he purpose of Bankruptcy Rule 3006 is to allow a creditor to withdraw a proof of claim unless the effect of filing 'initiates a contest that must be disposed of by the court.' ") (citing Advisory Committee Note to Bankruptcy Rule 3006) (additional citation omitted)."

*In re Owens*, 455 B.R. 640, 644–45 (Bankr. W.D. Mich. 2011).

25.    "The first sentence of FRCP 41(a)(1) has a dual purpose; it is intended to facilitate the plaintiff's ability to take a voluntary dismissal of an action while limiting abuse of the practice by restricting the right to the early stages of the action." *In re 20/20 Sport, Inc.*, 200 B.R. at 978.

> Consideration of a number of factors has been suggested when courts determine whether to permit the withdrawal of a claim:
>
> In determining whether a proof of claim can be withdrawn without prejudice, courts thus consider the following factors:  the plaintiff's diligence in bringing the motion; any "undue vexatiousness" on plaintiff's part; the extent to which suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss.  As with a Rule 41(a)(2) motion, a motion to withdraw a proof of claim is left to the court's discretion, which is "to be exercised with due regard to the legitimate interests of both [parties]."  In general, withdrawal should be granted unless the party opposing the motion can demonstrate that it would be legally prejudiced by the withdrawal.

*In re Varona*, 388 B.R. 705, 726–27 (Bankr. E.D. Va. 2008) (citations and quotations omitted).

"Rule 3006 vests discretion in the court to grant, deny, or condition the request of a creditor to withdraw." *Smith & Smith v. Bowsmith, Inc.*, 976 F.2d 737 (9th Cir. 1992) (citation omitted).

26. Here, Montresor has objected to Conklin's Claim and Conklin has participated significantly in Debtor's case, so Court approval is required for withdrawal of the Claim. *See* Fed. R. Bank. P. 3006(a)(1) and (3).

27. Under the applicable Rule 3006 standard, Conklin's Motion to Withdraw must be denied. None of the factors applicable for withdrawal by leave support Conklin's request.

28. One, the parties are five months into a 6-month contested matter on the issue of the allowance of Conklin's Claim. Montresor has engaged in both informal and formal discovery, and it is still waiting for formal discovery responses from 2 of the 3 subpoenaed lenders because of Conklin's, Debtor's, and Krueger's coordinated efforts to block and delay that discovery. WAFCU has indicated that it will not produce documents until May 12 as a result of the Court's 7-day waiting period in its Confidentiality Order from issuance. Regardless, Montresor is and will be ready to put on its case on June 4 and file whatever exhibits it needs by May 28.

29. It is indisputable that it is far too late for Conklin to withdraw his Claim at this late date. *See In re 20/20 Sport, Inc.*, 200 B.R. at 978 ("limiting abuse of the practice by restricting the right to the early stages of the action.").

30. Two, for the reasons discussed above, Conklin has done his level best to impede and delay discovery in this contested matter to his advantage and Montresor's detriment. And he has been aided by both Debtor and now Krueger in that effort. He never responded to Montresor's request to submit a consensual confidentiality order to protect the very same documents he now does not want Montresor to receive. If he had done just that alone, Montresor would already have the subpoenaed materials. Instead, he (and Debtor and Krueger) wants this contested matter to just go away before the subpoenaed documents are produced.

31. Three, Conklin's explanation for why he wants to withdraw the Claim is a lie.

32.     Conklin states in his Motion to Withdraw that because the Chapter 7 Trustee ("Trustee") has "recently indicated" that "no distribution" is anticipated in this case, upon "reflection," he seeks to withdraw the Claim.  Motion to Withdraw, p. 1.  But in the Trustee's bizarre and legally unsupportable Motion to Approve Compromise with Conklin and his Claim (D.E. 230) – filed 3 months ago on February 19 – the Trustee had this to say:

> At the moment, the Trustee does not have good reason to believe that there will be any recovery for unsecured creditors.  Every dollar or hour spent fighting about the allowance of an unsecured claim (even Mr. Conklin's) is therefore **wasted**.

Motion to Approve Compromise with Conklin, p. 3 (emphasis and really emphasis added).

33.     Twelve weeks ago Conklin knew, according to the Trustee, that to the extent he was seeking a distribution from the estate on his Claim, any such time and money spent in that endeavor was "wasted."  But now he says that that just occurred to him last week, conveniently coinciding with the realization that the subpoenaed bank records that he and Debtor have long sought to suppress will be delivered to Montresor.

34.     Montresor supposes that it is possible that Conklin does not want to have his Claim disallowed, in full or in part, at any evidentiary hearing before this Court in a month's time, so that he can later claim and assert entitlements to, maybe for example, unscheduled historic tax credits of the bankruptcy estate that just might monetize someday – outside of any court's visibility or knowledge.  *See, e.g.,* Trustee's Application to Compromise with Conklin, Marcus Clegg and Seton Unit 4, LLC, dated April 22, 2026 (D.E. 306).

35.     Maybe that is it?  Hard to know.

36.     But what Montresor does know is that Conklin's representation to the Court that he wants to withdraw the Claim now because there is no prospect of recovery from the estate is a lie. *See* Federal Rule of Bankruptcy Procedure 9011(b)(1), (2), (3), and (c)(3).

37.     Four, since December 2025, Montresor has incurred not insignificant legal fees and expenses in briefing motions and objections, presenting at hearings, advancing discovery, and otherwise litigating the allowance and bona fides of Conklin's Claim.  In the event it becomes necessary, Montresor is prepared to quantify and provide those amounts to the Court.  And while Conklin prefers to use AI as his counsel, Montresor's preference is and has been to retain competent counsel to advance its interests in Debtor's case.  That comes with a cost.  And that cost should be borne by Conklin if the Court permits the withdrawal of the Claim under these circumstances and at this late date.

38.     Finally, if Conklin's Claim is withdrawn without prejudice to Conklin's "rights, claims, or remedies . . . under applicable non-bankruptcy law" to pursue his "claim" later on outside of bankruptcy, then Montresor guarantees that all these same issues and litigated matters presented here in this contested matter will be litigated again against Conklin in another forum and before another Court.

39.     It is equally certain that this Court will again be asked in new contested matters concerning other creditors of Debtor's estate to rule on the same issues presented here in this contested matter for the allowance of those creditors' claims.  Debtor recycled and used the same "loan documents" underlying Conklin's Claim with multiple other creditors – so all those other claims are vulnerable to the same penalty provision and consideration arguments at issue here.

40.     If this contested matter goes forward and Montresor prevails, in whole or in part, then any future objections to claims will be far more streamlined.  If this contested matter is dismissed because Conklin's Claim is allowed to be withdrawn, then this entire process will start anew with other creditors.  Using the Trustee's words with Conklin's assent – that is and would be time, money, and judicial resources "wasted."

41.     A final observation.  When the parties get to the hearing on May 12 and Conklin

prefaces every statement made to the Court that he is, of course, proceeding *pro se* and therefore

implicitly entitled to a far bit of leeway under substantive law and procedural requirements – which

he is actively gaming – that should be dispelled and rejected.

> Ms. Joyce must be held to the same standards as represented litigants. *Philbrick v.
> Me. Dep't of Health and Human Servs.,* 616 F.Supp.2d 123, 126 n. 3 (D. Me.2009)
> ("*Pro se* litigants are not excused from complying with the Federal Rules of Civil
> Procedure or the Local Rules of this district"); *FDIC v. Anchor Props.,* 13 F.3d 27,
> 31 (1st Cir.1994). Otherwise, the playing field would not be level and the Court
> would run the risk of "becoming the lawyer for the unrepresented plaintiff or
> devoting an excessive portion of [its] time to such cases." *Clarke v. Blais,* 473
> F.Supp.2d 124, 129 (D. Me. 2007).

*Joyce v. Postmaster Gen., U.S. Postal Serv.*, 846 F. Supp. 2d 268, 278 (D. Me. 2012); *see also*

Federal Rule of Bankruptcy Procedure 9011(b).

42.     If Conklin had the $75,000 to deliver to Northeast Asset Management, LLC to fund

Debtor's lifestyle and personal obligations in 2023, then it is reasonable to believe that he has the

financial wherewithal to hire counsel to represent his interests in recovering some of that money

from someone.  By all accounts, Conklin is not proceeding *pro se* because he cannot afford a

lawyer, which for all too many individuals is unfortunately the case.

43.     Rather, he is proceeding *pro se* by choice because: (i) he is not adversarial with

Debtor, rather they are colluding; (ii) the Trustee and Marcus Clegg have represented and advanced

his interests on a *de facto* basis anyway; and (iii) why would he incur he legal fees and costs if he

does not have to because the Clerk and everyone else in the case is protecting his interests and

satisfying his litigation obligations for him.

## IV.  Conclusion

WHEREFORE, Creditor, Montresor LLC, requests that the Court deny Conklin's Motion to Withdraw, and that the Court grant Montresor such other and further relief as is just and appropriate under the circumstances.

Dated at Portland, Maine this 7th day of May, 2026.

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditor,
Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com

## CERTIFICATE OF SERVICE

I, Randy J. Creswell, Esq., hereby certify that I have served on this day copies of the above Objection and this Certificate of Service upon each of the parties listed on the Notice of Electronic Filing via the Court's Administrative Procedures Governing the Filing and Service by Electronic Means (unless otherwise indicated below).

Dated at Portland, Maine this 7th day of May, 2026.

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditor,
Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME  04112
207.358.1010
rcreswell@creswelllaw.com

## Service List

Kevin J. Mattson (via email only)
kevin@dirigocapitaladvisors.com

Seth W. Brewster, Esq. (via email only)

- 11 -

Terence Conklin (via email only)
82 South Bend Road
Rye Beach, NH 03871

John C. Orestis (via U.S. Mail)
PO Box 777
Lewiston, ME 04240