**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE (Portland)**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
In re:                                                              **Chapter 7**
**Kevin J. Mattson,**                                    **Case No. 24-20188-PGC**
          **Debtor**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TRUSTEE'S OBJECTION TO**
**MOTION TO COMPEL ABANDONMENT OF PROPERTY OF THE ESTATE**
**(D.E. 332)**

*NOW COMES* Edmond J. Ford, Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate

of Kevin J. Mattson (the "Estate"), by his attorneys Ford, McDonald &Borden, P.A., and Objects

to the Motion to Compel Abandonment of Property of the Estate and Request for Limitation of

Notice  [D.E. 332]  (the "Motion") and in support thereof says as follows:

**A.  The Business Rationale for the Trustee's Objection.**

Severin Beliveau and Montressor, LLC, ("Movants") ask that this Court require the

Trustee to abandon claims before he has completed his investigations.  In Mr. Beliveau's case, he

seeks an order that would avoid liability in the amount of possibly in excess of $150,000.  In

Montressor's case, it seeks an order that would limit liability of the husband (Randy Creswell)

of its manager's (Merion Capital, LLC) manager  (Gwen Allen Creswell) to the estate.

Delay to allow the Trustee to evaluate claims in the ordinary course will impose no

hardship or cost on Movants and will allow the Trustee the time to adequately investigate the

claims.  Both claims must be brought (if at all) four months from the hearing on this Motion:  on

or before October 9, 2026.  Movants articulate no reason that period should be shortened.

**B.  Response Pursuant to LBR 9013-1 (c)(2)**

2.        Admitted.

3.      Admitted, provided that any assertion that the judgment was final or in the amount asserted in Beliveau's proof of claim is denied; and provided that any implied assertion that Beliveau has an allowable claim, notwithstanding 11 U.S.C. §502(d) is denied.

4.      Admitted that the judgment is in the amount of $288,020; the trustee has insufficient information to form a belief as to the truth of the remaining allegations and therefore denies them.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     The record speaks for itself.   The examination was one of at least three each over an hour long and the Trustee does not remember it exactly as Movants recite.

11.     The allegations that Montressor became a mortgagee and creditor by assignment is admitted.  The exact date allegations are denied.

12.     The allegations in paragraph 12 are denied.  The allegation that the Trustee sent a draft complaint is admitted; the draft complaint did not allege fraud; the draft complaint did not allege a breach of contract to the benefit of the estate. Instead, the Draft Complaint sought a declaratory judgment and recovery under 11 U.S.C. §544 (a) (Hypothetical judgment or attaching creditor).  The email and complaint are attached as **Exhibit A**.

13.     Admitted.

14.     The allegations of paragraph 14 are admitted, except that as the Motion makes clear Atty. Creswell did not mean what he said and he meant, instead, its opposite - that the Trustee should not bring the complaint.

15.     The allegations of paragraph 15 are denied. Each lawyer that responded did so with no more than a simple blanket unsupported statement that their clients' had no obligation to the estate – the email equivalent of a common law general denial. In response to the general denials the Trustee requested specific identification of the errors of fact or law and received no response. The email responses and requests for further comment are attached as **Exhibit B.** Neither Movants, nor any other person has identified any specific factual or legal error in the Draft Complaint.

16.     Admitted; saying further, the Trustee has amended his working draft.

### C. The Harpers Development Claims in the Draft Complaint Appear to Have Value

The Harpers Development Draft Complaint addresses a fact pattern that is both complicated and (apparently) uncontested.  The core of the fact pattern is that Beliveau received the benefit of an unperfected promise of a transfer of rights of the Debtor worth in excess of $150,000.

None of the parties involved in the transaction (including Movants) have disputed any of the specific facts alleged in the complaint. None of the parties involved in the transaction (including Movants) have articulated any challenge to the legal theories articulated in the complaint.

Movants do not today, in the Motion, contest any of the facts or legal theories articulated in the Draft Complaint.  One may infer that Movants do not contest the facts of the Draft Complaint because they cannot.  Even if one is not inclined to engage in that inference,

3

substantially all the factual allegations in the Draft Complaint are evidenced by documents provided either by the Debtor or Movants.  The Draft Complaint has value.

The Bankruptcy Code permits the Trustee to bring the Complaint until the passage of the statute of limitations under 11 U.S.C. §546 (a)(1)(A) (two years from the entry of the order for relief).  That deadline is October 9, 2026. Movants articulate no reason that period should be shortened by four months.

**D.  The Harpers Development "Fraud" and "Breach of Contract" Claims are Undefined, and the Estate is Ill Served by Abandoning Undefined Claims.**

Movants mistakenly conflate the "Claims against Severin Beliveau for breach of contract and fraud" listed as item Number 33 in the Debtor's amended Schedule A/B [D.E. 94] with the matters in the Draft Complaint.  The Draft Complaint does not allege either breach of contract or fraud.

If the Movants are asking that the Trustee abandon claims that are not in the Draft Complaint, the Trustee does not know what claims Movants expect the Trustee to abandon (to the Debtor).  Not knowing what claims Movants are referring to, neither the Trustee nor the Court can determine whether the claims are a burden or of inconsequential value to the estate.

**E.  The Slander Claim May Require Further Investigation before Abandonment.**

Movants do not claim that Attorney Creswell has never made a defamatory comment to a third party about Mr. Mattson.   The undersigned expects that Attorney Creswell will, most likely, admit that he has described Mr. Mattson to others as a "sociopath" and/or a "liar."

The defamation claim has many other problems which may or may not be dispositive but may need investigation:

a.  When did the statements occur?  If they occurred before October 31, 2023, then the defamation claim may have been released by the Settlement

Agreement and Mutual General Release dated October 31, 2023, where Mr. Mattson released all claims against Mr. Beliveau and his "attorneys" of all claims, known and unknown. *See,* **Exhibit C - Settlement Agreement and Mutual General Release**, ¶6.  If the comments were made after September 12, 2024, and during a Chapter 7 phase of this case, then the cause of action may be post-petition property of the debtor and not property of the estate.

b. Were the statements privileged? Statements may not be defamatory if they are privileged.  Restat 2d of Torts, §§ 593,  594.

c. Were the statements slanderous *per se*, or did the statements cause damage? Restat 2d of Torts, §§ 573 (slander *per se*),  621 (proved actual damage).

Investigation of the defamation claim is not something the Trustee is anxious to do, but, Movants give no reason for the court or the Trustee to believe that such investigation will be fruitless.

The law gives about four more months to the Trustee to investigate and decide. One ordinarily thinks of the statute of limitations as being six years. ME. REV. STAT. tit. 14, § 752. However, for slander and libel it is two years. ME. REV. STAT. tit. 14, § 753.  The actionable statements must have occurred after September 12, 2022.  The statute applicable to the Trustee will therefore expire at midnight October 9, 2026.  11 U.S.C. §108 (a). Movants articulate no reason that period should be shortened.

Nevertheless, if the Movants wish to shorten the period of the Trustee's investigation, then the Trustee suggests the Court allow such shortening, only on the following terms (the "Abandonment Terms"):

5

1. Atty. Creswell affirm under oath (or under the sanctions of Rule 11) that he has not, since September 12, 2022, described Mr. Mattson to any other person (other than Mr. Mattson) in an out of court statement or writing as a "liar", "fraudster", "sociopath", "psychopath" or with other words of similar meaning. ("Derogatory Descriptive Statements" and the "Affirmation"). If Atty. Creswell makes the Affirmation, the Trustee will agree to abandon the Slander claim.

2. If Atty. Creswell is incapable of making the Affirmation then the Trustee is still willing to abandon the Slander claim if Atty. Creswell can articulate (under the sanctions of Rule 11) a good faith statement of a privilege to make each acknowledged Derogatory Descriptive Statement.

## CONCLUSION

Movants ask this Court to require the Trustee to make decisions before October 9, 2026, for no reason.   This Court should deny Movants' request.

In the case of the Slander Claims, the Trustee is willing to stipulate to an order of their abandonment if Atty. Creswell conforms to the Abandonment Terms.

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court order and decree as follows:

A. That the Motion be Denied;

B. Or, that the Motion be Denied as to the Harpers Development Claims and, if the Abandonment Terms described above are satisfied, granted as to the Slander Claim; and

C. For such other and further relief as is just and equitable.

6

Respectfully submitted,
Edmond J. Ford, Ch. 7 Trustee

By his Attorneys,
FORD, McDONALD & BORDEN, P.A.

Date: May 29, 2026                            By: */s/ Edmond J. Ford*
Edmond J. Ford  Bar # 010174
815 Elm Street, Suite 5 B
Manchester, NH 03101
(603) 373-1737 (Telephone)
(603) 242-1381 (Facsimile)
eford@fordlaw.com


Certificate of Service

On May 29, 2026, I electronically filed the foregoing document through the Court's CM/ECF systems which will send a notice of electronic filing to the parties on the Court's electronic service list.

On May 29, 2026, I forwarded a copy of the foregoing by email to Terrence Conklin at tjconks@gmail.com  and to Kevin Mattson at kevin@dirigocapitaladvisors.com.

*/s/ Edmond J. Ford*
Edmond J. Ford  (Bar # 010174)


https://fordmcpartlin.sharepoint.com/Shared Documents/WPDATA/Ed/TRUSTEE/24-20188 - Mattson Me/pleadings/drafts/Objection to m compel abandonment.docx

7

**EXHIBIT A**
**EMAIL AND COMPLAINT**

**Subject:**    Draft complaint - Harpers Development, LLC

**Date:**    Monday, March 16, 2026 at 9:20:01 PM Eastern Daylight Time

**From:**    Edmond J. Ford

**To:**    JOrestis@ncaltc.com, cmh@swr.us.com, meisenstein@brannlaw.com, rcreswell@perkinsthompson.com, Shawn Doil, ehart@brannlaw.com, sstitham@brannlaw.com

**CC:**    David J. Perkins, David Johnson, Kevin Mattson, Steve Notinger

**Category:**    Filed to Clio

**Attachments:** Complaint.pdf

Mr. Orestis, Hart, Eisentein, Mattson, and Attorneys Creswell, Hart, Perkins, Stitham and Doil,

It is my understanding that you are each involved  matters relating to the claimed satisfaction of certain debt owed by Central Maine Commerce Center, LP to Harpers Development, LLC.

I am the Chapter 7 Trustee of the bankruptcy estate of Kevin Mattson. I attach a draft form of complaint describing certain claims that I believe arose out of the manner of the treatment of the debt to Harpers Development, LLC.

I forward this to you for your comment to give you an opportunity to convince me (if it matters to you) that all or any portion of the attached is in error.

Thank you for your consideration and I look forward to receipt of your thoughts or comments.

Ed Ford

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

*********************************

In re:                                                    **Chapter 7**
**Kevin J. Mattson**                                      **Case No. 24-20188-PGC**
              **Debtor**
*********************************                         **Adv. P. No. 26-_____**

**Edmond J. Ford, Trustee,**

        **v.**

**Central Maine Commerce Center, LLP,**
**Severin M. Beliveau,**
**John C. Orestis**
**And**
**Spicewood Family Partners, LLP**

*********************************

## COMPLAINT

### PARTIES

1.     Plaintiff (the "Trustee") is an individual with a business address at 815 Elm Street, Suite 5 B, Manchester, NH 03101.

2.     Defendant, Central Maine Commerce Center, LP  ("CMCC") is an administratively dissolved Maine Limited Liability Partnership with a current or former mailing address at c/o Martin I. Eisenstein 113 Lisbon Street, PO Box 3070, Lewiston, ME 04243-3070.

3.     The Defendant, Severin M. Beliveau, is an individual with an address at 135 Sheridan Street, Unit 405, Portland, ME 04101 and a mailing address in this proceeding at c/o Randy J. Creswell, Esq., PO Box 7340, Portland, ME 04112.

4.     The Defendant John C. Orestis, is an individual with an address at PO Box 777 Lewiston, ME 04240.

1

5.      The Defendant Spicewood Family Partners, Ltd, has a mailing address at c/o Wayne Collie, 10100 Reunion Place, Suite 750, San Antonio, TX 78216.

**JURISDICTION AND VENUE**

6.      This bankruptcy proceeding was commenced by involuntary petition filed September 12, 2024.

7.      Plaintiff was appointed the Chapter 7 trustee in this matter by order entered February 14, 2025.  [D.E. 88].

8.      The District Court for the State of Maine has jurisdiction over this proceeding because it involves matters which arise under Title 11 or arise in or relate to a case under Title 11.  28 U.S.C. §1334(b).

9.      Venue is appropriate in the State of Maine because this proceeding arises in or relates to a case under Title 11 which is pending in this District. 28 U.S.C. §1409(a).

10.     The District Court for the District of Maine has referred this proceeding to this Bankruptcy Court by LR 16.8(a).

11.     This proceeding is a core proceeding under 28 U.S.C. §157(b)(2)(B), (F), (K) & (O) involving the allowance or disallowance of claims against the estate, the avoidance of a preference, the avoidance of lien claims, the determination of the validity, extent and priority of certain liens and is otherwise a  proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor.  As a core proceeding this Bankruptcy Court is empowered to enter final orders and rulings. 28 U.S.C. §157(b)(1).

12.     Trustee consents to the entry of final judgments or orders by this Court.

**INTRODUCTION**

13.     The general partner of Central Maine Commerce Center, LP, was Commerce Center Management, LLC.

14.     The members of Commerce Center Management, LLC were: Severin M. Beliveau, John C. Orestis, Spicewood Family Partners, LTD, and the Debtor, Kevin Mattson. Each member owned a ¼ interest in Commerce Center Management, LLC.

15.     CMCC owned land and buildings and other property in Augusta, Maine, known as the Central Maine Commerce Center.

16.     Harpers Development, LLC, was a Maine Limited Liability Company f/k/a Harpers Construction, LLC, and formed by certificate of formation filed with the Secretary of State for the State of Maine on April 12, 2001.

17.     CMCC borrowed $322,020.00 from Harpers Development, LLC, sometime before December 31, 2016.

18.     CMCC did not repay Harpers Development, LLC.

19.     The members of Harpers Development, LLC, were: Severin M. Beliveau, John C. Orestis, Spicewood Family Partners, LTD, and the Debtor, Kevin Mattson.  Each member owned a ¼ interest in Harpers Development, LLC.

20.     Harpers Development, LLC, filed a certificate of cancellation with the Secretary of State for the State of Maine on May 31, 2018.  The certificate of cancellation indicates that it is to be effective as of the date of filing.

21.     6 ECS, LLC, is a Maine limited liability company with an agent and address at Dalameterfarris, LLC, 6 Central Maine Crossing, Gardiner, Maine, 04345.

22. Certain lenders sued Mr. Belliveau and the Debtor in Maine State Court in Ronald Robert Berube, Jr. etal. v. Verus Capital, LLC, eta., Docket PORSC-CV-2019-00440, and, upon transfer to the Business and Consumer Court, Docket No. BCD-CV-2019-0060.

23. The Debtor and Beliveau and the plaintiffs settled and the plaintiffs assigned their rights in that settlement agreement to 6 ECS, LLC (the "2020 6ECS Settlement").

24. As part of that settlement, on or about October 20, 2020, Belliveau, the Debtor and 6 ECS, LLC entered into an agreement captioned "Transfer of Membership Interest and Debt Agreement." (the "Transfer Agreement").

25. In the Transfer Agreement, the Parties Recited that "the Parties believe that Mattson transferred his 25% membership interest in Harpers Development. LLC ("Harpers Development") to Assignor [Beliveau] (the "Mattson Interest")."

26. In the Transfer Agreement, the Parties stipulated that the amount due to Harpers Development, LLC, from CMCC was between $322,000 and $500,000.

27. In the Transfer Agreement, the Debtor did not assign any interest in Harpers Development, LLC, held by him but, instead,

> In the event that Mattson continues to hold any interest in the Mattson Interest and/or the Harpers Development Receivable. Mattson shall assign and convey such interests as directed by Assignee [6 ECS, LLC], which assignment and conveyance shall be subject to and in accordance with the terms of this Agreement.

28. The Debtor has not since assigned to any person any interest in the Harpers Development Receivable as defined in the Transfer Agreement.

29. The Debtor has not since assigned or otherwise transferred his membership interest in Harpers Development, LLC to any person.

4

30.    The Debtor had not at any time prior to the execution of the Transfer Agreement assigned, transferred or conveyed to any person the Harpers Development Receivable (as defined in the Transfer Agreement) or his interest in Harpers Development, LLC.

31.    In 2021, a form of assignment was prepared to assign the Debtor's interest in the Harpers Development Receivable and in Harpers Development, LLC to Beliveau (the "Draft Assignment").

32.    The Draft Assignment valued the Harpers Development Receivable at $700,000.00.

33.    Beliveau signed the Draft Assignment.

34.    The Debtor did not sign the Draft Assignment.

35.    On or about February 14, 2023, CMCC sold substantially all its assets, including the Central Maine Commerce Center to Milton 45 Commerce Drive, LLC, by deed recorded in the Kennebec County Registry of Deeds at Book 14696 pages 262-266.

36.    Published reports indicate that the sale price was $18,500,000.00.[1]

37.    On information and belief, funds existed from the sale to pay the amounts due to Harpers Development, LLC from CMCC, but no payment was made on account of that debt.

38.    Severin Beliveau ("Beliveau") and the Debtor were parties in the matter Severn Beliveau et. al. v. Kevin Mattson, et. al. Docket No. PORSC-CV-2023-057.  (the "2023 Action")

39.    Beliveau and the Debtor resolved by Settlement Agreement and Mutual General Release dated on or about October 31, 2023.  (The "2023 Settlement Agreement").

40.    As part of the 2023 Settlement Agreement, the Debtor gave Beliveau a general release of all claims "from the beginning of time to the date of the effectiveness of this Release."

---

[1] https://mainebiz.biz/article/185m-commercial-transaction-largest-in-recent-augusta-history/

41. The 2023 Settlement Agreement did not assign, transfer or convey the Harpers Receivable nor did it assign transfer or convey any interest of Mattson in Harpers Development, LLC to any person.

42. In 2024 6 ECS, LLC and others sued Beliveau, John Orestis, CMCC and Central Maine Management, LLC, for amounts due under the 2020 6ECS Settlement. (the "2024 ECS Litigation")

43. On or about September 12, 2024, an involuntary petition was filed commencing this bankruptcy case.

44. All Debtor's right title and interest in or to Harpers Development, LLC, in or to any assets of or formerly of Harpers Development, LLC, or in or to any membership interest in Harpers Development, LLC, are property of this Bankruptcy Estate. 11 U.S.C. §541.

45. 6 ECS, LLC amended its complaint on or about March 17, 2025 (the "Amended Complaint")

46. In the Amended Complaint 6 ECS, LLC, asserts that the Harpers Receivable represents a loan of $300,000 with accruing interest of 10% per annum.

47. The Amended Complaint asserts that the Harpers Receivable had not then been paid.

48. The 2024 ECS Litigation was settled in the second half of calendar year 2025.

49. No portion of the Harpers Receivable has been paid to the bankruptcy estate of Kevin Mattson.

### COUNT I – DECLARATORY JUDGMENT

50. Each of the foregoing allegations are hereby realleged and incorporated.

51. The Harper's Receivable remains property of Harpers Development, LLC.

6

52. Upon the cancellation of the Harpers Development, LLC, certificate of formation all former officers, managers, agents or members of Harpers Development, LLC, were no longer authorized to deal in, manage, transfer, accept payment of, discharge, assign or in any fashion deal with the Harper's Receivable.

53. No payment on account of the Harper's Receivable was made by any person before May 31, 2018.

54. No payment after May 31, 2018, made on account of the Harper's Receivable whether made to any former officer, manager, agent or member, or otherwise,  could discharge the Harpers Receivable.

55. The Harpers Receivable remains due and owing.

56. The bankruptcy estate holds a right to seek relief under Me. Rev. Stat. tit. 31, § 1604.

57. The Debtor holds a right to seek relief under Me. Rev. Stat. tit. 31, § 1604, which right is now property of the bankruptcy estate under 11 U.S.C. §541. (the "Debtor's Relief Right")

58. Upon the granting of relief under Me. Rev. Stat. tit. 31, § 1604 Harpers Development, LLC may collect the Harpers Receivable from CMCC.

59. Upon the granting of relief under Me. Rev. Stat. tit. 31, § 1604 Harpers Development LLC may collect from any person, member, manager, agent or attorney who may have purported to have converted, received payment of, or otherwise dealt with, the Harpers Receivable all amounts due as a result of such action.

60. Upon such recovery by Harpers Development, LLC, and after the satisfaction of any unpaid debts of Harpers Development, LLC, Harpers Development may or shall, pursuant to

7

Me. Rev. Stat. tit. 31, § 1601 make appropriate payments to its members, including the bankruptcy estate (the "Estate Recovery").

WHEREFORE, the Trustee respectfully requests that this honorable Court order, decree and declare:

A. That the Harpers Receivable remains property of Harpers Development, LLC;

B. That the Harpers Receivable remains due and owing in full together with all interest costs and attorneys' fees allowable thereunder;

C. That the Bankruptcy Estate of Kevin Mattson has a right to seek relief under Me. Rev. Stat. tit. 31, § 1604;

D. Upon the revocation of the certificate of cancellation, Harpers Development may collect the Harpers Receivable.

E. Upon revocation of the certificate of cancellation, Harpers Development LLC may collect from any person, member, manager, agent or attorney who may have purported to have converted, received payment of, or otherwise dealt with, the Harpers Receivable all amounts due as a result of such action;

F. Upon such recovery by Harpers Development, LLC, and after the satisfaction of any unpaid debts of Harpers Development, LLC, Harpers Development may or shall, pursuant to Me. Rev. Stat. tit. 31, § 1601 make appropriate payments to its members, including the bankruptcy estate; and

G. That Trustee be allowed such other and further relief as may be just and equitable.

**COUNT II – DECLARATORY JUDGMENT
NO SECURITY INTEREST
11 USC 552(a)**

8

61. Each of the foregoing allegations are hereby realleged and incorporated.

62. The Estate Recovery, if it arises, will be property acquired by the estate after the commencement of this bankruptcy proceeding.

63. To the extent that any of the defendants claim a security interest in or right to the Estate Recovery by virtue of an agreement of the Debtor made before the petition date, such security interest or right is void pursuant to 11 U.S.C. §552(a).

WHEREFORE, the Trustee respectfully requests that this honorable Court order, decree and declare:

A. That no agreement done or made before the petition date conveyed any right in or to the Estate Recovery; and

B. That Trustee be allowed such other and further relief as may be just and equitable.

## COUNT III – STRONG ARM POWERS
## 11 USC 544

64. Each of the foregoing allegations are hereby realleged and incorporated.

65. If the Debtor's Relief Right is property of the Debtor, it is a general intangible.

66. If the Estate Recovery is property of the Debtor, it is a general intangible.

67. On information and belief, CMCC did not assent to the assignment of the Estate Recovery to any of the Defendants.

68. Without the assent of CMCC, no assignment of the Estate Recovery could be effective. Getchell v. Maney, 69 Me. 442, 444 (1879)

69. None of the defendants have perfected their interest in any general intangible by filing an appropriate UCC-1 Financing Statement in the Maine Secretary of State's office.

9

70. The bankruptcy estate holds the power to avoid transfers avoidable by a hypothetical attaching lien, or judgment creditor as of the date of the petition. 11 U.S.C. §544(a).

71. A hypothetical judgment creditor could perfect an attachment on general intangibles of the Debtor pursuant to Me. Rev. Stat. tit. 14, § 4151 (second paragraph).

72. The hypothetical judgment creditor would take priority over an unperfected security interest in either the Debtor's Relief Right or the Estate Recovery. Me. Rev. Stat. tit. 11, § 9-1317 (1).

73. As described above, Belliveau is the initial transferee of a purported transfer of the Debtor's interest in Harpers Development, LLC, and the Harpers Receivable. To the extent that such a transfer conveyed to Belliveau the Estate Recovery or the Debtor's Relief Right, the Trustee is entitled to a money judgment equal to value of the rights transferred.

WHEREFORE, the Trustee respectfully requests that this honorable Court order, decree, avoid and declare:

A. That all claims of any of the Defendants to the Estate Recovery or Debtor's Relief Right are avoided pursuant to 11 U.S.C. §544(a);

B. That all rights of the Defendants or any of them in or to the Estate Recovery or the Debtor's Relief Right are preserved for the benefit of the estate pursuant to 11 U.S.C. §551;

C. That judgment enter avoiding any transfer of the Estate Recovery or the Debtor's Relief Right; and

10

D.  To the extent equitable, that the Court enter judgment against Beliveau as initial

transferee equal to the value of any rights transferred pursuant to 11 U.S.C.

§550(a)(1); and

E.  That Trustee be allowed such other and further relief as may be just and equitable.


Respectfully submitted,
Edmond J. Ford, Ch. 7 Trustee


Date:   March 16, 2026

/s/ Edmond J. Ford
815 Elm Street, Suite 5B
Manchester, NH 03101-2129
(603) 373-1737
eford@fordlaw.com

11

**EXHIBIT B**
**EMAIL RESPONSES AND REQUEST FOR FURTHER COMMENT**

| | |
|---|---|
| **Subject:** | RE: Draft complaint - Harpers Development, LLC |
| **Date:** | Thursday, March 19, 2026 at 1:58:30 PM Eastern Daylight Time |
| **From:** | David Perkins |
| **To:** | Edmond J. Ford |
| **Attachments:** | image001.png |

Hi

.

I represent Spicewood, which was a passive investor in these projects. There is no reason to include Spicewood in the litigation. So I ask that it be left out as a party. That will save us from dealing with a motion to dismiss.

Thanks!! Dave

**From:** Edmond J. Ford <eford@fordlaw.com>
**Sent:** Monday, March 16, 2026 9:20 PM
**To:** JOrestis@ncaltc.com; cmh@swr.us.com; meisenstein@brannlaw.com; rcreswell@perkinsthompson.com <rcreswell@creswelllaw.com>; Shawn Doil <sdoil@verrill-law.com>; ehart@brannlaw.com; sstitham@brannlaw.com
**Cc:** David Perkins <dperkins@curtisthaxter.com>; David Johnson <dcj@marcusclegg.com>; Kevin Mattson <kevin@dirigocapitaladvisors.com>; Steve Notinger <snotinger@fordlaw.com>
**Subject:** Draft complaint - Harpers Development, LLC

Mr. Orestis, Hart, Eisentein, Mattson, and Attorneys Creswell, Hart, Perkins, Stitham and Doil,

It is my understanding that you are each involved  matters relating to the claimed satisfaction of certain debt owed by Central Maine Commerce Center, LP to Harpers Development, LLC.

I am the Chapter 7 Trustee of the bankruptcy estate of Kevin Mattson. I attach a draft form of complaint describing certain claims that I believe arose out of the manner of the treatment of the debt to Harpers Development, LLC.

I forward this to you for your comment to give you an opportunity to convince me (if it matters to you) that all or any portion of the attached is in error.

Thank you for your consideration and I look forward to receipt of your thoughts or comments.

Ed Ford



**Edmond J. Ford, Esq.**
Ford, McDonald & Borden, P.A.

**Direct** (603) 373-1737   |   **Office** (603) 373-1600

**Email** eford@fordlaw.com   |   **Website** fordlaw.com

**Address** 815 Elm Street, Unit 5B, Manchester, NH 03101

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment). PRIVILEGED AND CONFIDENTIAL: This electronic message and any attachments are confidential property of the sender. The information is intended only for the use of the person to whom it was addressed. Any other interception, copying, accessing, or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward this message without permission. [ppab_v1.0]

**Subject:**    RE: Draft complaint - Harpers Development, LLC

**Date:**    Thursday, March 19, 2026 at 11:01:54 AM Eastern Daylight Time

**From:**    Stacy O. Stitham

**To:**    Edmond J. Ford, JOrestis@ncaltc.com, cmh@swr.us.com, Martin I. Eisenstein, rcreswell@perkinsthompson.com, Shawn Doil, Eamonn Hart

**CC:**    David J. Perkins, David Johnson, Kevin Mattson, Steve Notinger

**Attachments:** image001.png, image002.png

Attorney Ford:

We do not believe there is any good faith basis for this complaint or the allegations within it.

Best,
Stacy



**Stacy Stitham | Brann & Isaacson**
sstitham@brannlaw.com | 207.689.9740
brannlaw.com

---

**From:** Edmond J. Ford <eford@fordlaw.com>
**Sent:** Monday, March 16, 2026 9:20 PM
**To:** JOrestis@ncaltc.com; cmh@swr.us.com; Martin I. Eisenstein <MEisenstein@brannlaw.com>; rcreswell@perkinsthompson.com <rcreswell@creswelllaw.com>; Shawn Doil <sdoil@verrill-law.com>; Eamonn Hart <EHart@brannlaw.com>; Stacy O. Stitham <sstitham@brannlaw.com>
**Cc:** David J. Perkins <dperkins@curtisthaxter.com>; David Johnson <dcj@marcusclegg.com>; Kevin Mattson <kevin@dirigocapitaladvisors.com>; Steve Notinger <snotinger@fordlaw.com>
**Subject:** Draft complaint - Harpers Development, LLC

Mr. Orestis, Hart, Eisentein, Mattson, and Attorneys Creswell, Hart, Perkins, Stitham and Doil,
It is my understanding that you are each involved  matters relating to the claimed satisfaction of certain debt owed by Central Maine Commerce Center, LP to Harpers Development, LLC.
I am the Chapter 7 Trustee of the bankruptcy estate of Kevin Mattson. I attach a draft form of complaint describing certain claims that I believe arose out of the manner of the treatment of the debt to Harpers Development, LLC.
I forward this to you for your comment to give you an opportunity to convince me (if it matters to you) that all or any portion of the attached is in error.
Thank you for your consideration and I look forward to receipt of your thoughts or

comments.
Ed Ford



**Edmond J. Ford, Esq.**
Ford, McDonald & Borden, P.A.

---

**Direct** (603) 373-1737 | **Office** (603) 373-1600
**Email** eford@fordlaw.com | **Website** fordlaw.com
**Address** 815 Elm Street, Unit 5B, Manchester, NH 03101

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment). PRIVILEGED AND CONFIDENTIAL: This electronic message and any attachments are confidential property of the sender. The information is intended only for the use of the person to whom it was addressed. Any other interception, copying, accessing, or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward this message without permission. [ppab_v1.0]

**Subject:**   Re: Draft complaint - Harpers Development, LLC
**Date:**   Thursday, March 19, 2026 at 11:18:16 AM Eastern Daylight Time
**From:**   Edmond J. Ford
**To:**   Stacy O. Stitham, JOrestis@ncaltc.com, cmh@swr.us.com, Martin I. Eisenstein, rcreswell@perkinsthompson.com, Shawn Doil, Eamonn Hart
**CC:**   David J. Perkins, David Johnson, Kevin Mattson, Steve Notinger
**Attachments:** image001.png, image002.png

Dear Atty. Stitham,

Is there a dispute as to the facts?  Or does your comment come from a legal analysis?

If as to the facts, which facts are wrong/

Thanks,
Ed

---

**From:** Stacy O. Stitham <sstitham@brannlaw.com>
**Date:** Thursday, March 19, 2026 at 11:01 AM
**To:** Edmond J. Ford <eford@fordlaw.com>, JOrestis@ncaltc.com <JOrestis@ncaltc.com>, cmh@swr.us.com <cmh@swr.us.com>, Martin I. Eisenstein <MEisenstein@brannlaw.com>, rcreswell@perkinsthompson.com <rcreswell@creswelllaw.com>, Shawn Doil <sdoil@verrill-law.com>, Eamonn Hart <EHart@brannlaw.com>
**Cc:** David J. Perkins <dperkins@curtisthaxter.com>, David Johnson <dcj@marcusclegg.com>, Kevin Mattson <kevin@dirigocapitaladvisors.com>, Steve Notinger <snotinger@fordlaw.com>
**Subject:** RE: Draft complaint - Harpers Development, LLC

Attorney Ford:

We do not believe there is any good faith basis for this complaint or the allegations within it.

Best,
Stacy

**Stacy Stitham | Brann & Isaacson**
sstitham@brannlaw.com | 207.689.9740
brannlaw.com



**From:** Edmond J. Ford <eford@fordlaw.com>
**Sent:** Monday, March 16, 2026 9:20 PM
**To:** JOrestis@ncaltc.com; cmh@swr.us.com; Martin I. Eisenstein <MEisenstein@brannlaw.com>; rcreswell@perkinsthompson.com <rcreswell@creswelllaw.com>; Shawn Doil <sdoil@verrill-law.com>; Eamonn Hart <EHart@brannlaw.com>; Stacy O. Stitham <sstitham@brannlaw.com>
**Cc:** David J. Perkins <dperkins@curtisthaxter.com>; David Johnson <dcj@marcusclegg.com>; Kevin Mattson <kevin@dirigocapitaladvisors.com>; Steve Notinger <snotinger@fordlaw.com>
**Subject:** Draft complaint - Harpers Development, LLC

Mr. Orestis, Hart, Eisentein, Mattson, and Attorneys Creswell, Hart, Perkins, Stitham and Doil,

It is my understanding that you are each involved  matters relating to the claimed satisfaction of certain debt owed by Central Maine Commerce Center, LP to Harpers Development, LLC.

I am the Chapter 7 Trustee of the bankruptcy estate of Kevin Mattson. I attach a draft form of complaint describing certain claims that I believe arose out of the manner of the treatment of the debt to Harpers Development, LLC.

I forward this to you for your comment to give you an opportunity to convince me (if it matters to you) that all or any portion of the attached is in error.

Thank you for your consideration and I look forward to receipt of your thoughts or comments.

Ed Ford



**Edmond J. Ford, Esq.**
Ford, McDonald & Borden, P.A.

**Direct** (603) 373-1737  |  **Office** (603) 373-1600
**Email** eford@fordlaw.com  |  **Website** fordlaw.com
**Address** 815 Elm Street, Unit 5B, Manchester, NH 03101

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment). PRIVILEGED AND CONFIDENTIAL: This electronic message and any attachments are confidential property of the sender. The information is intended only for the use of the person to whom it was addressed. Any other interception, copying, accessing, or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward this message without permission. [ppab_v1.0]

**Subject:**    Re: Draft complaint - Harpers Development, LLC
**Date:**    Thursday, March 19, 2026 at 12:28:44 PM Eastern Daylight Time
**From:**    Edmond J. Ford
**To:**    Randy Creswell, Stacy O. Stitham, JOrestis@ncaltc.com, cmh@swr.us.com, Martin I. Eisenstein, Shawn Doil, Eamonn Hart
**CC:**    David J. Perkins, David Johnson, Kevin Mattson, Steve Notinger
**Attachments:** image002.png, image003.png

I hope someone to tell me why the complaint is wrong if it is.

Ed

---

**From:** Randy Creswell <rcreswell@creswelllaw.com>
**Date:** Thursday, March 19, 2026 at 12:06 PM
**To:** Edmond J. Ford <eford@fordlaw.com>, Stacy O. Stitham <sstitham@brannlaw.com>, JOrestis@ncaltc.com <JOrestis@ncaltc.com>, cmh@swr.us.com <cmh@swr.us.com>, Martin I. Eisenstein <MEisenstein@brannlaw.com>, Shawn Doil <sdoil@verrill-law.com>, Eamonn Hart <EHart@brannlaw.com>
**Cc:** David J. Perkins <dperkins@curtisthaxter.com>, David Johnson <dcj@marcusclegg.com>, Kevin Mattson <kevin@dirigocapitaladvisors.com>, Steve Notinger <snotinger@fordlaw.com>
**Subject:** RE: Draft complaint - Harpers Development, LLC

More fun!  We're still doing this?

Just file the Complaint, Ed, and we'll see how it turns out.

RJ

Randy J. Creswell
CRESWELLLAW
PO Box 7340
Portland, Maine 04112
(207) 358-1010 (o)
(207) 749-8982 (c)
www.creswelllaw.com

**Confidentiality notice:** If you are not the person intended to receive this email, please notify us and please do not make use of this email for any purpose. Thank you.

---

**From:** Edmond J. Ford <eford@fordlaw.com>

**Sent:** Thursday, March 19, 2026 11:18 AM
**To:** Stacy O. Stitham <sstitham@brannlaw.com>; JOrestis@ncaltc.com; cmh@swr.us.com; Martin I. Eisenstein <MEisenstein@brannlaw.com>; Randy Creswell <rcreswell@creswelllaw.com>; Shawn Doil <sdoil@verrill-law.com>; Eamonn Hart <EHart@brannlaw.com>
**Cc:** David J. Perkins <dperkins@curtisthaxter.com>; David Johnson <dcj@marcusclegg.com>; Kevin Mattson <kevin@dirigocapitaladvisors.com>; Steve Notinger <snotinger@fordlaw.com>
**Subject:** Re: Draft complaint - Harpers Development, LLC

Dear Atty. Stitham,

Is there a dispute as to the facts?  Or does your comment come from a legal analysis?

If as to the facts, which facts are wrong/

Thanks,
Ed



**Edmond J. Ford, Esq.**
Ford, McDonald & Borden, P.A.

**Direct** (603) 373-1737  |  **Office** (603) 373-1600
**Email** eford@fordlaw.com  |  **Website** fordlaw.com
**Address** 815 Elm Street, Unit 5B, Manchester, NH 03101

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment). PRIVILEGED AND CONFIDENTIAL: This electronic message and any attachments are confidential property of the sender. The information is intended only for the use of the person to whom it was addressed. Any other interception, copying, accessing, or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward this message without permission. [ppab_v1.0]

**From:** Stacy O. Stitham <sstitham@brannlaw.com>
**Date:** Thursday, March 19, 2026 at 11:01 AM
**To:** Edmond J. Ford <eford@fordlaw.com>, JOrestis@ncaltc.com <JOrestis@ncaltc.com>, cmh@swr.us.com <cmh@swr.us.com>, Martin I. Eisenstein <MEisenstein@brannlaw.com>, rcreswell@perkinsthompson.com <rcreswell@creswelllaw.com>, Shawn Doil <sdoil@verrill-law.com>, Eamonn Hart <EHart@brannlaw.com>
**Cc:** David J. Perkins <dperkins@curtisthaxter.com>, David Johnson <dcj@marcusclegg.com>, Kevin Mattson <kevin@dirigocapitaladvisors.com>, Steve Notinger <snotinger@fordlaw.com>
**Subject:** RE: Draft complaint - Harpers Development, LLC

Attorney Ford:

We do not believe there is any good faith basis for this complaint or the allegations within it.


Best,
Stacy



**Stacy Stitham | Brann & Isaacson**
sstitham@brannlaw.com | 207.689.9740
brannlaw.com

---

**From:** Edmond J. Ford <eford@fordlaw.com>
**Sent:** Monday, March 16, 2026 9:20 PM
**To:** JOrestis@ncaltc.com; cmh@swr.us.com; Martin I. Eisenstein <MEisenstein@brannlaw.com>; rcreswell@perkinsthompson.com <rcreswell@creswelllaw.com>; Shawn Doil <sdoil@verrill-law.com>; Eamonn Hart <EHart@brannlaw.com>; Stacy O. Stitham <sstitham@brannlaw.com>
**Cc:** David J. Perkins <dperkins@curtisthaxter.com>; David Johnson <dcj@marcusclegg.com>; Kevin Mattson <kevin@dirigocapitaladvisors.com>; Steve Notinger <snotinger@fordlaw.com>
**Subject:** Draft complaint - Harpers Development, LLC


Mr. Orestis, Hart, Eisentein, Mattson, and Attorneys Creswell, Hart, Perkins, Stitham and Doil,
It is my understanding that you are each involved  matters relating to the claimed satisfaction of certain debt owed by Central Maine Commerce Center, LP to Harpers Development, LLC.
I am the Chapter 7 Trustee of the bankruptcy estate of Kevin Mattson. I attach a draft form of complaint describing certain claims that I believe arose out of the manner of the treatment of the debt to Harpers Development, LLC.
I forward this to you for your comment to give you an opportunity to convince me (if it matters to you) that all or any portion of the attached is in error.
Thank you for your consideration and I look forward to receipt of your thoughts or comments.
Ed Ford



**Edmond J. Ford, Esq.**
Ford, McDonald & Borden, P.A.

---

**Direct** (603) 373-1737   |   **Office** (603) 373-1600
**Email** eford@fordlaw.com   |   **Website** fordlaw.com
**Address** 815 Elm Street, Unit 5B, Manchester, NH 03101

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment). PRIVILEGED AND CONFIDENTIAL: This electronic message and any attachments are confidential property of the sender. The information is intended only for the use of the person to whom it was addressed. Any other interception, copying, accessing, or disclosure of this message is prohibited. The sender takes no responsibility for any unauthorized reliance on this message. If you have received this message in error, please immediately notify the sender and purge the message you received. Do not forward this message without permission. [ppab_v1.0]

**EXHIBIT C**
**SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE**

**SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE**

THIS SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE ("Agreement") is made and entered into as of October ___, 2023, by and between Severin M. Beliveau, Esq. ("Beliveau"), Cynthia Murray Beliveau ("Cynthia") (Cynthia and Beliveau, together, the "Beliveaus"), Kevin J. Mattson ("Mattson"), Jeanne M. Mattson ("Jeanne") (Mattson and Jeanne, together, the "Mattsons"), and Hailcore, LLC ("Hailcore") (Beliveaus, Mattsons, and Hailcore, collectively, the "Parties").  The Parties have agreed to settle certain claims, issues, and matters in accordance with the terms of this Agreement.

WHEREAS, on or about August 22, 2017, Beliveau and Mattson entered into a certain Agreement, pursuant to which they sought to terminate their various business arrangements;

WHEREAS, the Agreement was amended on several occasions, including pursuant to a certain Beliveau/Mattson Closing Agreement, dated September 13, 2017, and a certain Supplementation of Closing, dated October 20, 2017 (the Agreement, the Beliveau/Mattson Closing Agreement, and the Supplementation of Closing, collectively, the "Exit Agreement");

WHEREAS, the Exit Agreement provides, among other things and upon certain terms and conditions, that Beliveau will transfer and assign his interests in the NECH Companies to Mattson (as defined herein);

WHEREAS, the Exit Agreement provides and sets forth, among other things and upon certain terms and conditions, the various obligations, rights, claims, and interests of Beliveau and Mattson in those certain limited liability companies, Newcastle Ventures, LLC and NPH, LLC (collectively, the "Newcastle Claims and Interests");

WHEREAS, the Exit Agreement provides, among other things and upon certain terms and conditions, that Beliveau shall ratify his transfer of 9% percent of the equity interests in Central Maine Commerce Center, Inc. ("CMCC") to Mattson;

WHEREAS, by virtue of certain accounting entries and corporate records entered from time to time, Beliveau asserts that he lent funds in various amounts to CMCC, which amounts now due from CMCC to Beliveau, with accrued interest, costs, and expenses, total approximately $500,000;

WHEREAS, on or about September 23, 2009, the Beliveaus provided a loan to Hallowell House, LLC ("Hallowell House") in the principal amount of $1,200,000, and which loan is personally guaranteed by Mattson to the Beliveaus (the "Rangeley Loan Guaranty"), and, further, to obtain the funds to make the loan from the Beliveaus to Hallowell House, the Beliveaus obtained a mortgage loan from Kennebec Savings Bank secured by a first mortgage against certain real property located at 24 Dorset Road, Rangeley, Maine;

WHEREAS, in February 2023, the Beliveaus commenced a civil action against the Mattsons, Hailcore, and Hallowell House in Maine Superior Court entitled, Severin M. Beliveau, Esq., et al. v. Kevin J. Mattson, et al., Docket No. PORSC-CV-2023-057, which action was

subsequently transferred to the Business and Consumer Court (the "Business Court") and assigned Docket No. BCD-CV-2023-0031 (the "Civil Action"), seeking recovery for alleged amounts due and other relief (collectively, the "Beliveau Claims");

**WHEREAS**, in August 2023, Mattson asserted numerous Counterclaims (as amended) against Beliveau in the Civil Action also seeking recovery for alleged amounts due and other relief against and from Beliveau (collectively, the "Mattson Claims");

**WHEREAS**, on October 12 and 19, 2023, the Parties (and their counsel) participated in a Judicial Settlement Conference ("JSC") in the Civil Action with The Honorable Andrew M. Horton, Associate Justice ("Justice Horton") of The Supreme Judicial Court, State of Maine, of all the issues raised in and with respect to any and all matters arising out of or relating to, *inter alia*, the Civil Action, the Exit Agreement, the Rangeley Loan Guaranty, CMCC, the Newcastle Claims and Interests, the NECH Companies, the Beliveau Claims, the Mattson Claims, and all other obligations of the Parties to one another (collectively, the "Claims and Interests");

**WHEREAS**, at that JSC, the Parties reached a global agreement and settlement of all their various and competing interests, disputes, and matters, with respect to the Claims and Interests and otherwise, and the terms and conditions of that global agreement and settlement were set forth on the record in the Civil Action before Justice Horton on October 19, 2023;

**WHEREAS**, the Parties desire to document and further memorialize their settlement and resolution of the disputes between them, including, but specifically not limited to, *inter alia*, the Claims and Interests;

**NOW, THEREFORE**, in consideration of the foregoing recitals, each of which is true and correct and each of which is incorporated into and made an integral part of this Agreement, the Parties hereby agree as follows:

1. The Effective Date. The "Effective Date" of the Agreement shall be October 19, 2023.

2. Settlement Consideration and Payments (Mattson). On or before November ___, 2023, Mattson shall:

   a. Execute and deliver to the Beliveaus a Promissory Note (the "Note") in the principal amount of $920,000. The Note shall contain the following terms:

      i. No interest shall accrue or be paid under the Note;
      ii. The Note shall require monthly payments in the amount of $5,000 each, with the first such monthly payment being due and payable on the first day of the month following the month in which the Note shall have been executed, with the sole exception of the monthly payment due on November 1, 2023, which Mattson shall be entitled to pay, without penalty or default, at any time during the month of November 2023;

iii. All subsequent monthly payments under the Note shall be due on the first day of each succeeding month;

iv. The Note shall have a term of 10 years, with a balloon payment due at the end of month 120 of the Note. The Note shall mature at the end of month 120 of the Note, and shall be due and payable at that time in the amount of $320,000, and upon such payment the Note shall be marked "paid in full" and returned to Mattson;

v. Notwithstanding the stated total-principal amount due under the Note in ¶ 2(a) herein, Mattson shall have the right to prepay the Note, in full and without penalty, and to discharge all obligations thereunder, by delivering collected funds to the holder of the Note, such that the total amount paid under the Note (inclusive of any and all monthly payments previously received) shall be as follows:

   a. **$358,000** (12.5% discount rate) provided that full payment (inclusive of monthly payments) is received by the Beliveaus on or **by the end of month 24** of the Note term (*i.e.*, by November 30, 2025);

   b. **$519,000** (10% discount rate) provided that full payment (inclusive of monthly payments) is received by the Beliveaus on or **by the end of month 48** of the Note term (*i.e.*, by November 30, 2027);

   c. **$628,378** (10% discount rate) provided that full payment (inclusive of monthly payments) is received by the Beliveaus on or **by the end of month 72** of the Note term (*i.e.*, by November 30, 2029); and

   d. **$760,000** (10% discount rate) provided that full payment (inclusive of monthly payments) is received by the Beliveaus on or **by the end of month 96** of the Note term (*i.e.*, by November 30, 2031).

vi. Mattson shall have the right to cure any defaults, after written notice, for a period of 5 days after written notice is received by Mattson with respect to defaults occurring, during the entirety of the term of the Note; and

vii. The Note shall be unsecured and in the form attached hereto as **Exhibit A**, which is incorporated herein by reference.

b. Execute and deliver to the Beliveaus a Stipulated Judgment (the "Stipulated Judgment") with respect to the Note. The Stipulated Judgment shall contain the following terms:

i. The Stipulated Judgment shall be in the full amount due under the Note (*i.e.*, $920,000), less any payments made by Mattson under the Note prior to the entry of such Stipulated Judgment by the Court; and further reduced by the amount of the Note that exceeds the present discounted value of future payments due under the Note, using a discount rate of 12.5% per annum, at the time of filing of the Stipulated Judgment with the Court;

ii. The Stipulated Judgment shall be held in escrow, and it may be released from escrow to the Beliveaus upon any uncured event of default under the Note;

iii. The Stipulated Judgment shall provide for the accrual of post-judgment interest at the applicable state-statutory rate, plus costs (but specifically not

including legal fees), all accruing from and after the date of release of the Stipulated Judgment from escrow; and

    iv.    The Stipulated Judgment shall be in the form attached hereto as **Exhibit B**, which is incorporated herein by reference; and

c.    Release, assign, endorse, and/or transfer to Beliveau or his designee any and all rights, claims, pledges, or interests, held personally by Mattson and/or by any one or more of Mattson Development, LLC, Mattson Holdings, LLC, Mattson Development Company, LLC, Dirigo Capital Advisors, LLC, Dirigo Capital Strategies, LLC, and/or any other entity in which Mattson is a member, manager, shareholder, and/or officer (collectively, the "Mattson Companies"), in and to Newcastle Ventures, LLC, NPH LLC, Central Maine Commerce Center, L.P., Commerce Center Management, LLC, Brann & Isaacson in its capacity as Escrow Agent, and Harper's II, LLC (collectively, the "Beliveau Companies"), and to the extent that any such rights, claims, or interests exist or may exist as of the Effective Date. Any and all such transfers, assignments, releases, or ratifications shall be **WITHOUT** any warranty or representation whatsoever on the part of Mattson. The assignments shall be in the form attached hereto as **Exhibit C**, which is incorporated herein by reference.

3.    Settlement Consideration (Beliveau). Upon the execution and delivery of the Promissory Note, Beliveau shall:

a.    Irrevocably and permanently transfer, assign, and release to Mattson or his designee, and ratify any prior transfer, assignment and release, with respect to any right, title, claim, pledge, or interest of any kind or nature that Beliveau, or any representative or affiliate of Belliveau has in any membership interest or units in Waterville Redevelopment Company I, LLC, Waterville Redevelopment Company II, LLC, Waterville Redevelopment Company III, LLC, Waterville Redevelopment Company IV, LLC, New England Capital Holdings, LLC, Seton Holdings, LLC (collectively, the "NECH Companies"), and the Mattson Companies. Any and all such transfers, assignments, releases, or ratifications shall be **WITHOUT** any warranty or representation whatsoever on the part of Beliveau. The assignments/ratification shall be in the form attached hereto as **Exhibit D**, which is incorporated herein by reference.

b.    Ratify his transfer of 9% percent of the equity interests in CMCC to Mattson, and Beliveau shall otherwise transfer, assign, and release to Mattson any interest therein (but specifically not any debt claim that Beliveau may possess or assert against CMCC). The ratification and assignments shall be in the form attached hereto as **Exhibit E**, which is incorporated herein by reference.

4.    Mattson (Individual) Ratification of Beliveau Claim against CMCC. Solely in his individual capacity and that as an officer and shareholder of CMCC, Mattson shall ratify and acknowledge that, by virtue of certain accounting entries and corporate records entered from time to time, Beliveau lent funds in various amounts to CMCC, which amounts are now due from CMCC to Beliveau, with accrued interest, costs, and expenses, totaling approximately $500,000. The ratification and acknowledgment shall be in the form attached hereto as **Exhibit E**, which is

incorporated herein by reference.

5.    <u>Outstanding Guaranty Obligations of Beliveau and Mattson</u>.  In the event that Beliveau can secure the full release of Mattson from Mattson's personal guaranty liability to:

(a)    Andrew Gurley or his Probate Estate for a total payment of $150,000 or less, then Mattson shall make a payment to Beliveau in an amount that is 50% of the final settlement amount paid by Beliveau to Andrew Gurley or his Probate Estate in full and final settlement and satisfaction of all its claims against Beliveau and Mattson;

(b)    CP Lending II, LLC and/or Robert McGoldrick for a total payment of $200,000 or less, then Mattson shall make a payment to Beliveau in an amount that is 50% of the final settlement amount paid by Beliveau to CP Lending II, LLC and/or Robert McGoldrick in full and final settlement and satisfaction of all its claims against Beliveau and Mattson;

(c)    All such contribution payments by Mattson to Beliveau under ¶ 5(a) or (b) shall be due and payable, in full, within 6 months of Mattson's receipt of written notice of Beliveau's payment(s) to the releasor(s) of the guaranty claims against Mattson/Beliveau (as the case may be);

(d)    Within 14 days of Mattson's receipt of written notice of Beliveau's payment(s) to a releasor(s) of guaranty claims against Mattson/Beliveau, Mattson shall execute a Stipulated Judgment in favor of Beliveau for the requisite contribution amount on the same terms and conditions (including for release) set forth herein in ¶ 2(b) above; and

(e)    None of the Stipulated Judgments executed (or to be executed by Mattson) in accordance with this Section 5 or by other terms of this Agreement shall be cross defaulted for any reason or upon any terms, and shall all be standalone Stipulated Judgment(s) to be enforced separately and apart from any other potential or actual defaults of any other obligations of Mattson to Beliveau(s) under this Agreement.

5.    <u>Mattson, Jeanne, and Hailcore Release of the Beliveaus</u>.  Except for the obligations to be performed as provided in this Agreement which shall not be released and which shall be preserved until fulfilled, upon the Effective Date, Mattson, Jeanne, and Hailcore and their respective successors and assigns, agents, heirs, legal representatives, insurers, past, present, and future officers, directors, stockholders, attorneys, subsidiaries, affiliates, partners, predecessors and successors in interest and all other persons, limited partnerships, firms, companies, or corporations (collectively, the "<u>Mattson Releasors</u>") hereby release and forever discharge Beliveau and Cynthia and their respective successors and assigns, agents, heirs, legal representatives, insurers, past, present, and future officers, directors, stockholders, attorneys, subsidiaries, affiliates, partners, predecessors and successors in interest and all other persons, limited partnerships, firms, companies, or corporations (collectively, the "<u>Beliveau Releasees</u>"), of and from any and all manner of action or actions, suits, debts, covenants, warranties, contracts, torts, claims, demands, and any and all other liabilities whatsoever, in law or equity, including but not limited to those claims claimed or at issue in the Claims and Interests, of any kind, nature or type, whether known or unknown, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, that the Mattson Releasors have, may have, or ever had against the Beliveau Releasees from the beginning of time to the date of the effectiveness of this release.

-5-

6.      Beliveaus Release of Mattson Parties.  Except for the obligations to be performed as provided in this Agreement which shall not be released and which shall be preserved until fulfilled, upon the Effective Date, Cynthia and Beliveau and their respective successors and assigns, agents, heirs, legal representatives, insurers, past, present, and future officers, directors, stockholders, attorneys, subsidiaries, affiliates, partners, predecessors and successors in interest and all other persons, limited partnerships, firms, companies, or corporations (collectively, the "Beliveau Releasors") hereby release and forever discharge Mattson, Jeanne, and Hailcore and their respective successors and assigns, agents, heirs, legal representatives, insurers, past, present, and future officers, directors, stockholders, attorneys, subsidiaries, affiliates, partners, predecessors and successors in interest and all other persons, limited partnerships, firms, companies, or corporations (collectively, the "Mattson Releasees"), of and from any and all manner of action or actions, suits, debts, covenants, warranties, contracts, torts, claims, demands, and any and all other liabilities whatsoever, in law or equity, including but not limited to those claims claimed or at issue in the Claims and Interests, of any kind, nature or type, whether known or unknown, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, that the Beliveau Releasors have, may have, or ever had against the Mattson Releasees from the beginning of time to the date of the effectiveness of this release.

7.      Note Payments Via ACH or Wire Transfer.  The monthly Note payments from Mattson to the Beliveaus required and contemplated by ¶ 2(a)(ii) and (iii) herein shall be delivered via wire transfer or ACH instructions to be provided by the Beliveaus to Mattson.

8.      Applicable Law.  This Agreement shall be governed, construed, interpreted, and enforced in accordance with the laws of the State of Maine.

9.      Warranties.  The Parties, as applicable, each warrant that they are duly authorized to execute and enter into this Agreement and to perform the duties imposed by this Agreement on said Party and any affiliate owned or controlled by each such Party, and this Agreement constitutes the legal, valid, and binding obligation of each of the Parties in accordance with its terms.  Each individual signing this Agreement on behalf of each of the Parties represents and warrants that he/she has full authority to do so.  Unless as otherwise set forth herein, each of the Parties hereby mutually represents and warrants that there has been no assignment, sale or other transfer or disposition of any interest in any and every claim and cause of action proposed to be released under this Agreement.

10.      Parties Bound.  The Parties acknowledge that each and every covenant, warranty, release, and agreement contained herein shall inure to the benefit of, and be binding upon, the agents, subsidiaries, employees, officers, directors, assigns, and successors in interest, including family members and including any third-party purchasers, of each of the Parties.

11.      Entirety of Agreement/Modification.  The Parties acknowledge that this Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, all prior agreements, negotiations, and understandings with respect to the subject matter hereof are canceled and superseded by this Agreement, and no other agreement, statement or promise made by any Party hereto, or any employee, officer, attorney, agent or other representative of any of the

-6-

Parties shall be valid or binding, except to the extent preserved by the express terms hereof.  The Parties agree that this Agreement may not be modified or varied in its terms or provisions by an oral agreement or representation or otherwise, except by an instrument in writing of subsequent date hereof executed by the Parties and then such modification shall be effective only in the specific instance or for the purpose for which given.

12.     Severability.  Should any provision of this Agreement be held by any court of competent jurisdiction to be illegal, invalid, or unenforceable for any reason, then the remaining portions of this Agreement will nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the Parties.

13.     Construction.  The Parties represent and warrant that they each have had an opportunity to fully review the provisions of this Agreement with attorneys of their own choice as a result of which the Parties acknowledge and agree that: (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Agreement; and (b) they have signed and entered into this Agreement knowingly, voluntarily, and of their own free will.

14.     No Waiver.  The Parties agree that no provision hereof can be waived or modified, and no breach of this Agreement can be waived, except by written agreement duly executed and delivered by the Parties.  The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any other provision hereof.

15.     Execution.  The Parties agree that this Agreement may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same Agreement.  Electronically transmitted signatures shall be deemed to have the same effect as original signatures.

16.     Additional Documents and Acts.  The Parties expressly acknowledge and agree that this Agreement is intended to effectuate a full and complete resolution of the claims and causes of action between them as set forth herein.  To that end, the Parties agree to execute or procure and deliver to the other Party such additional documents and perform such acts as shall reasonably be necessary to evidence or effectuate the terms and intent of this Agreement.  The Parties further expressly acknowledge and agree to use their collective best efforts to obtain, within a reasonable period of time, from any and all third-parties or other entities with respect to the transactions, claims, and interests at issue herein, such other and necessary approvals and consents to the transfers, assignments, pledges, or other corporate formalities to effectuate the terms and conditions of this Agreement and the Parties' settlement.

17.     Satisfaction of Obligations under this Agreement.  Upon Mattson's satisfaction of the payment and delivery obligations to Beliveau as set forth in ¶ 2(a), (b), and (c) herein, the Note and the Stipulated Judgment shall be deemed fully satisfied.

18.     Notices.  In the event that any notice is required to or may be given under this Agreement, it shall be deemed given: (i) upon hand delivery or electronic mail to the recipient and

their attorney; or (ii) upon two business days after deposit in the United States Mail, first class, postage prepaid, addressed to recipient as follows:

If to Severin M. Beliveau, Esq.:   Severin M. Beliveau, Esq.
And/or Cynthia Beliveau/   Preti Flaherty
And/Orr any affiliate   1 City Center
   Portland, ME  04101
   sbeliveau@preti.com

With a copy to:   Randy J. Creswell, Esq.
   Creswell Law
   PO Box 7340
   Portland, ME  04112
   rcreswell@creswelllaw.com

If to Kevin J. Mattson:   Kevin J. Mattson
And/or Jeanne Beliveau   Dirigo Capital Advisors, LLC
And/or any affiliate   2 Main Street
   Topsham, ME  04086
   kevin@dirigocapitaladvisors.com

With a copy to:   George J. Marcus, Esq.
   Marcus Clegg
   16 Middle Street, 5th Floor
   Portland, ME  04101
   gjm@marcusclegg.com

19.   No Third-Party Rights.  Nothing herein shall constitute a release or modification of any rights of any of the Parties against any person or entity not a party to this Agreement.  The Parties hereby expressly maintains and preserves all of their rights against such other parties.

20.   Costs.  Unless otherwise set forth herein, the Parties shall bear their own costs relating to this Agreement, including any attorney fees and expenses.

21.   No Admission of Liability.  This Agreement is a compromise of disputed claims and shall never in any way or manner be construed as an admission of any allegation, fact, liability or any wrongdoing or any responsibility for any purpose by any of the Parties.

22.   Confidentiality.   The Parties hereby agree that they will keep the terms and conditions of this Agreement confidential and that the contents and terms and conditions of this Agreement shall not be discussed or revealed except to the Parties' attorneys, accountants, insurers, tax or business advisors, or other third parties if and to the extent required by law.

23.   Nondisparagement.  The Parties hereby agree to refrain from making statements to any person, whether orally or in writing, expected or intended or reasonably likely to disparage a Party, or cast a negative light on a Party; provided, however, that nothing herein shall preclude a

party from making statements that are required by law to be made, or that would disclose matters permitted to be disclosed under the Confidentiality provisions of this Agreement.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

IN WITNESS WHEREOF, the Parties have executed or caused to be executed this Agreement below.

**AGREED TO BY:**

_____          Date:  October ___, 2023
Severin M. Beliveau, Esq.


_____          Date:  October ___, 2023
Cynthia Murray Beliveau


_____          Date:  October 31, 2023
Kevin J. Mattson


_____          Date:  October 31, 2023
Jeanne Mattson


Hailcore, LLC                              Date:  October 31, 2023


_____
By:  Kevin J. Mattson
Its:  Manager

IN WITNESS WHEREOF, the Parties have executed or caused to be executed this Agreement below.

**AGREED TO BY:**

_____
Severin M. Beliveau, Esq.

Date: October 31 , 2023

_____
Cynthia Murray-Beliveau

Date: October 31 , 2023

_____
Kevin J. Mattson

Date: October ____, 2023

_____
Jeanne Mattson

Date: October ____, 2023

Hailcore, LLC

Date: October ____, 2023

_____
By:  Kevin J. Mattson
Its:  Manager

-10-

**EXHIBIT A**

**PROMISSORY NOTE**

US $920,000.00

Portland, Maine
October 31, 2023

FOR VALUE RECEIVED, **KEVIN J. MATTSON**, an individual with a mailing address of Dirigo Capital Advisors, LLC, 2 Main Street, Topsham, ME 04086 ("Borrower" or "Maker"), promises to pay to **SEVERIN M. BELIVEAU** and **CYNTHIA MURRAY BELIVEAU**, individuals with a mailing address of 135 Sheridan Street, Unit 404, Portland, ME 04101, his successors, heirs, or assigns (together, "Holder"), or order, the principal sum of up to **NINE HUNDRED TWENTY THOUSAND AND 00/100 DOLLARS ($920,000.00)**, or so much thereof as shall remain unpaid during the term of this Promissory Note (the "Note")), with 0% interest per annum on the unpaid balance of such principal sum from the date of this Note until 2033 (the "Maturity Date"), provided that the Note is paid, in full, without uncured default on or before the Maturity Date, and also subject to the prepayment rights of Maker set forth below.

The term of this Note is one-hundred twenty months from and including November 1, 2023 (*i.e.*, the Maturity Date in 2033) (the "Note Term").  Borrower shall make one-hundred twenty (120) principal-only payments to Holder of $5,000 per month, due on the first day of each month during the Note Term, beginning on November 1, 2023, and monthly thereafter on the first day of each succeeding month; provided however that Borrower may make the first payment due under this Note on any day in November, 2023, and this Note shall not be in default if the initial payment of $5,000 is made at any time after November 1, 2023, but prior to November 30, 2023.  The entirety of all principal (and costs and expenses, if any) due under this Note is, and shall be, due and payable no later than the Maturity Date.

Maker may prepay this Note at any time, in whole or in part, without premium or penalty, and without any prior notice to Holder.  Further, Maker shall have the right to prepay the Note, in full and without penalty, by delivering collected funds to the holder of the Note, such that the total amount paid under the Note (inclusive of any and all monthly payments and such prepayment amount) shall be as follows:

      a. **$358,000** (12.5% discount rate) provided that full payment (inclusive of monthly payments) is received by the Beliveaus on or **by the end of month 24** of the Note term (*i.e.*, by November 30, 2025)

      b. **$519,000** (10% discount rate) provided that full payment (inclusive of monthly payments) is received by the Beliveaus on or **by the end of month 48** of the Note term (*i.e.*, November 30, 2027)

      c. **$628,378** (10% discount rate) provided that full payment (inclusive of monthly payments) is received by the Beliveaus on or **by the end of month 72** of the Note term (*i.e.*, by November 30, 2029)

    d. **$760,000** (10% discount rate) provided that full payment (inclusive of monthly payments) is received by the Beliveaus on or **by the end of month 96** of the Note term (*i.e.*, by November 30, 2031)

Except as otherwise provided herein with respect to the payment due in November, 2023, if any payment under this Note is not made when due, and such failure to make payment constitutes a Default as defined herein, and subject to Maker's right to cure such Default, Holder may assess a late charge of five percent (5%) of any payment more than ten (10) days in arrears which is not made in accordance with Maker's right to cure. Payments under this Note will be applied first to any late charge assessed under the preceding sentence, second to legal expenses and costs (if any), and third to the remaining principal balance. Acceptance by Holder of any late payment shall not waive Holder's right to receive subsequent payments on the due date specified in this Note. Any partial prepayment shall be applied against charges owing hereunder (if any), and then shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent payment required hereunder, unless the Holder shall otherwise agree in writing.

In the event that Borrower fails to pay any amount when due hereunder, Borrower shall have the opportunity to cure such failure to pay within five (5) business days after receipt of written notice from Holder of such failure. Holder shall be required to provide Borrower with written notices of any failure to pay an amount due hereunder and opportunities to cure each such failure. Upon any failure of Borrower to timely cure a failure to make payment when due hereunder, after receipt of written notice and opportunity to cure from Holder, Borrower shall be in default of this Note (a "Default"). Upon the occurrence of a Default, the Holder may demand payment of the then present discounted value of the unpaid indebtedness under this Note, utilizing a discount rate of 12.5% per annum, and calculating the present discounted present value of the unpaid balance of this Note based upon the amount of this Note remaining unpaid as of the date of Default, and the payment of such amount on the maturity date of this Note, plus late charges, expenses and other amounts due and payable hereunder, may seek enforcement thereof by any means available at law, including, but not limited to, the release from escrow of the Stipulated Judgment in accordance with the parties' Settlement Agreement and Mutual General Release dated October 31, 2023.

Borrower and all other parties liable hereon in whatever capacity, whether as endorser, guarantor, or otherwise (collectively, "parties liable hereon"), hereby, jointly and severally, waive demand, protest, presentment, and notice of every kind, and waive recourse to suretyship and guarantorship defenses generally, including, but not limited to: (a) extensions of time; (b) delays; (c) releases of or failure to protect, to realize upon or to take any action with respect to any collateral security; (d) modifications, renewals or amendments of the terms of this Note or of any of the collateral security documents securing, guaranteeing or otherwise relating to it; (e) omission to act by or on behalf of Holder; (f) failure to record, perfect or to take possession of any collateral security, collateral security documents, or security interests; (g) releases of rights; (h) failure to proceed against any of the parties liable hereon; and (i) any indulgences including releases of any of the parties liable hereon, which may be granted from time to time by Holder to any of the parties liable hereon, all of which actions Holder may take at its sole discretion without notice to or further assent from, and without affecting the liability of, any of the parties liable hereon.

If any payment of principal shall be deemed by a final order of a court of competent jurisdiction to have been a voidable preference or fraudulent conveyance, and such order obligates the Holder to return such payment to any party, the obligation of Borrower shall, to the extent thereof, survive as an obligation due hereunder and shall not be discharged by said payment, notwithstanding the return by the Holder to the Borrower of the original Note, and any security interest, lien or mortgage discharged as a result shall be reinstated and shall secure such reinstated liabilities or indebtedness.

This Note shall be construed in all respects in accordance with, and governed by, the internal laws of the State of Maine. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provisions of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

This Note evidences a loan for business and commercial purposes, and not for personal, family, or household purposes, and such loan is unsecured.

This Note shall be the joint and several obligation of all makers, sureties, guarantors, and endorsers, and shall be binding upon them and their heirs, successors and assigns. If now or hereafter Borrower or any of the parties liable hereon shall be or become insolvent and this Note shall not at all times until paid be fully secured by collateral pledged by Borrower or any parties liable hereon, Borrower and all parties liable hereon hereby forever waive and relinquish in favor of Holder and its respective successors, any claim or right to payment now or hereafter arising against Borrower or any other party liable hereon, by subrogation or otherwise, so that at no time will Borrower or any party liable hereon become creditors among themselves within the meaning of 11 U.S.C. § 547(b) or any successor provision of the Federal bankruptcy laws. This Note shall be governed by and construed in accordance with the internal laws of the State of Maine, exclusive of its conflicts of law rules.

In the event that any notice is required to or may be given under this Note, it shall be deemed given: (i) upon hand delivery or electronic mail to the recipient and their attorney; or (ii) upon two business days after deposit in the United States Mail, first class, postage prepaid, addressed to recipient as follows:

| | |
|---|---|
| If to Kevin J. Mattson: | Kevin J. Mattson<br>Dirigo Capital Advisors, LLC<br>2 Main Street<br>Topsham, ME  04086<br>kevin@dirigocapitaladvisors.com |
| With a copy to: | George J. Marcus, Esq.<br>Marcus Clegg<br>16 Middle Street, 5th Floor<br>Portland, ME  04101<br>gjm@marcusclegg.com |

**NO ORAL AGREEMENT:**  **This Note and that certain Settlement Agreement and Mutual General Release, dated on or about October 2023 (the "Settlement Agreement"), fully and accurately document the understandings between Borrower and Holder.  To the extent not inconsistent with the terms of this Note, the rights and obligations  of the Parties pursuant to the Settlement Agreement shall, at all times, govern.  There are no implicit or oral understandings or agreements not fully and accurately set forth herein or therein.  It is understood and agreed that no officer or employee of Holder has any authority to modify, alter or amend this Note orally.  Any and all changes to this Note must be in writing and must be approved of, in writing, by Holder.  It is further understood and agreed that at no time will any oral agreement at odds with the terms of the Note and that certain Settlement Agreement and Mutual General Release be enforceable against Holder.  UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FORBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000.00 MAY BE ENFORCED IN COURT AGAINST NOTE HOLDER UNLESS THE PROMISE, CONTRACT OR AGREEMENT IS IN WRITING AND SIGNED BY NOTE HOLDER.  ACCORDINGLY, BORROWER CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN LOAN DOCUMENTS SIGNED BY NOTE HOLDER, NOR CAN ANY CHANGE, FORBEARANCE, OR OTHER ACCOMMODATION RELATING TO THE OBLIGATIONS, THIS NOTE OR THE SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE BE ENFORCED, UNLESS IT IS IN WRITING AND SIGNED BY NOTE HOLDER.  BORROWER ALSO UNDERSTANDS AND AGREES THAT ALL FUTURE PROMISES, CONTRACTS OR AGREEMENTS OF NOTE HOLDER RELATING TO ANY OTHER TRANSACTION BETWEEN BORROWER AND NOTE HOLDER CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY NOTE HOLDER.  BY EXECUTION OF THIS NOTE, BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT THE REQUIREMENT OF A WRITING DESCRIBED IN THIS PARAGRAPH SHALL APPLY TO THIS NOTE, THE OBLIGATIONS, THE SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE, ANY EXTENSION, MODIFICATION, RENEWAL, FORBEARANCE OR OTHER ACCOMMODATION RELATING HERETO OR THERETO AND TO ANY OTHER CREDIT RELATIONSHIP BETWEEN BORROWER AND NOTE HOLDER (WHETHER NOW EXISTING OR CREATED IN THE FUTURE), WHETHER OR NOT THE AMOUNT INVOLVED EXCEEDS $250,000.00.**

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**EXHIBIT B**

| | |
|---|---|
| STATE OF MAINE<br>CUMBERLAND, ss. | SUPERIOR COURT<br>Civil Action<br>DOCKET NO. CV-20____-_____ |

| | | |
|---|---|---|
| SEVERIN M. BELIVEAU and<br>CYNTHIA MURRAY BELIVEAU, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **STIPULATED** |
| v. | ) | **JUDGMENT** |
| | ) | |
| KEVIN J. MATTSON, | ) | |
| | ) | |
| Defendant. | ) | |

Upon consideration of the Complaint, dated _____ (the "Complaint"), filed by Plaintiffs, Severin M. Beliveau and Cynthia Murray Beliveau (together, "Plaintiffs"), after proper acknowledgment of service of the Complaint and Summons, pursuant to Maine Rule of Civil Procedure 4, upon Defendant, Kevin J. Mattson ("Defendant") (Plaintiffs and Defendant, collectively, the "Parties"), the Parties having agreed and consenting to the entry of this Stipulated Judgment on the terms and conditions set forth more fully herein, the Court possessing proper subject matter and personal jurisdiction in this action and over the Parties, the Court hereby **FINDS, ORDERS, ADJUDGES, AND DECREES** as follows:

1.      Defendant hereby consents to the entry of final Judgment on Count I of the Complaint with respect to the Promissory Note, dated on or about October 31, 2023 (the "Note");

2.      Defendant hereby voluntarily and irrevocably waives and expressly agrees that any applicable appeal period with respect to the Stipulated Judgment is and shall be waived;

3.      Defendant hereby stipulates and consents to judgment, in the total principal amount of $_____, being the original principal amount of the Note, $920,000.00, less any and all principal payments paid under the Note prior to uncured default and acceleration thereon, less the agreed upon discount in the balance due under the Note as of the date hereof, in accordance with the Settlement Agreement and Mutual General Release, dated as of about October 31, 2023 (all as set forth in the Affidavit of Plaintiff filed together with the Complaint), plus all allowable interest as provided in the Note, costs, legal fees, and other expenses in favor of Plaintiff and against Defendant on Count I the Complaint.  In addition, Plaintiff shall be allowed post-judgment interest from the date of this Judgment, pursuant to 14 M.R.S. § 1602-C(1)(B); and

4.      In accordance with Maine Rule of Civil Procedure 79(a), at the specific direction of the Court, the Clerk shall incorporate by reference this Stipulated Judgment by proper notation on the docket.

SO ORDERED at _____, Maine, this _____ day of _____, 20_____.


_____
Justice, Maine Superior Court

**SEEN AND AGREED TO**


_____
Randy J. Creswell, Esq., Bar No. 8962
Attorney for Plaintiffs,
Severin M. Beliveau and
Cynthia Murray Beliveau

CRESWELLLAW
PO Box 7340
Portland, ME 04112
(207) 358-1010
rcreswell@creswelllaw.com


_____
George J. Marcus, Esq., Bar No. 1273
Counsel for Defendant,
Kevin J. Mattson

Marcus Clegg
16 Middle Street, 5th Floor
Portland, ME  04101
gjm@marcusclegg.com
207-828-8000


_____
Kevin J. Mattson, Defendant

2

## EXHIBIT C

## ASSIGNMENT OF PAYMENT RIGHTS, DISTRIBUTIONS, AND ENTITLEMENTS AGREEMENT

This ASSIGNMENT OF PAYMENT RIGHTS, DISTRIBUTIONS, AND ENTITLEMENTS AGREEMENT ("Agreement") is made and entered into as of _____, 2023, by and between Severin M. Beliveau ("Assignee") and Kevin J. Mattson ("Mattson"), Mattson Development, LLC, Mattson Holdings, LLC, Mattson Development Company, LLC, Dirigo Capital Advisors, LLC, and Dirigo Capital Strategies, LLC (collectively, "Assignor") (Assignee and Assignor, together, the "Parties").

WHEREAS, on or about August 22, 2017, Mattson and Assignee entered into a certain Agreement, pursuant to which they sought to terminate their various business arrangements;

WHEREAS, the Agreement was amended on several occasions, including pursuant to a certain Beliveau/Mattson Closing Agreement, dated September 13, 2017, and a certain Supplementation of Closing, dated October 20, 2017 (the Agreement, the Beliveau/Mattson Closing Agreement, and the Supplementation of Closing, collectively, the "Exit Agreement");

WHEREAS, the Exit Agreement provides and sets forth, among other things and upon certain terms and conditions, the various obligations, rights, claims, and interests of Assignee and Assignor in those certain limited liability companies, Newcastle Ventures, LLC and NPH, LLC;

WHEREAS, on October 12 and 19, 2023, the Parties (and their counsel) participated in a Judicial Settlement Conference ("JSC") in the Civil Action with The Honorable Andrew M. Horton, Associate Justice ("Justice Horton") of The Supreme Judicial Court, State of Maine, of all the issues raised in and with respect to any and all matters arising out of or relating to, *inter alia*, the Civil Action, the Exit Agreement, the Rangeley Loan Guaranty, CMCC, the Newcastle Claims and Interests, the NECH Companies, the Beliveau Claims, the Mattson Claims, and all other obligations of the Parties to one another (collectively, the "Claims and Interests");

WHEREAS, at that JSC, the Parties reached a global agreement and settlement of all their various and competing interests, disputes, and matters, with respect to the Claims and Interests and otherwise, and the terms and conditions of that global agreement and settlement were set forth on the record in the Civil Action before Justice Horton on October 19, 2023;

WHEREAS, for the consideration set forth therein and otherwise agreed to between the Parties at the JSC, Assignor has agreed to assign, endorse, and/or transfer to Assignee or his designee any and all rights, claims, or interests, held personally by Assignor and/or by any one or more of Mattson Development, LLC, Mattson Holdings, LLC, Mattson Development Company, LLC, Dirigo Capital Advisors, LLC, and Dirigo Capital Strategies, LLC, and/or any other entity in which Assignor is a member, manager, shareholder, and/or officer (collectively, the "Mattson Companies"), in and to Newcastle Ventures, LLC, NPH LLC, Central Maine Commerce Center, L.P., Commerce Center Management, LLC, Brann & Isaacson in its capacity as Escrow Agent, and Harper's II, LLC (collectively, the "Beliveau Companies"), and to the extent that any such rights, claims, or interests exist or may exist as of the Effective Date of the Settlement Agreement (collectively, the "Assignment and Payment Rights");

**NOW, THEREFORE**, in consideration of the foregoing recitals, each of which is true and correct to the best knowledge, understanding, and information and belief of the Parties (unless otherwise specifically set forth herein), and each of which is incorporated into and made an integral part of this Agreement, the Parties hereby agree as follows:

1.      Assignment.  Assignor hereby assigns, endorses, and/or transfers to Assignee or his designee any and all rights, claims, or interests, held personally by Assignor and/or by any one or more of the entities that comprise Assignor, in and to the Beliveau Companies, and to the extent that any such rights, claims, or interests exist or may exist as of the Effective Date of the Settlement Agreement (*i.e.*, the Assignment and Payment Rights).

2.      Cooperation.  The Parties covenant that they will do, execute, and deliver or cause to be done, executed, and delivered all such further acts, documents, or things, including without limitation, transfers, assignments, conveyances, and assurances for better assuring, conveying, and confirming unto Assignee the entire right, title, and interest of Assignor in, to, and under the Assignment and Payment Rights.

3.      Attorney-in-Fact.  Solely with respect to the Assignment and Payment Rights, and for no other purpose whatsoever, Assignor hereby constitutes and appoints Assignee the true and lawful attorney for Assignor and in his name and stead or otherwise, by and on behalf and for the benefit of Assignee to demand, collect, and receive from time to time any and all of the rights, interests, and benefits to be derived from the Assignment and Payment Rights.

4.      No Assumption of Liabilities.  Assignee assumes no liabilities or obligations of Assignor arising from the Assignment and Payment Rights and any and all activities performed (or not performed), no matter when or how such liabilities may arise or be asserted in the future; it being understood and agreed that Assignee assumes no liabilities of Assignor (no matter when or how arising or asserted) relating to the Assignment and Payment Rights, which liabilities shall remain with and be the sole obligation of Assignor  and/or the Beliveau Companies.

5.      Applicable Law.  This Agreement shall be governed, construed, interpreted, and enforced in accordance with the laws of the State of Maine.

6.      Warranties.  The Parties hereto each warrant that this Agreement constitutes the legal, valid, and binding obligation of each of the Parties in accordance with its terms.  Each individual signing this Agreement on behalf of each of the Parties represents and warrants that he/she has full authority to do so.  Except for the representations and warranties expressly set forth herein, the Parties make no representations or warranties whatsoever with respect to or concerning the Beliveau Companies, the Assignment and Payment Rights, and/or otherwise, including either of the Parties' claims, interests or entitlements with respect to the Beliveau Companies.  Without limiting the generality of the foregoing, Assignor makes no warranty or representation that any Assignor has any claim, right, title or interest in or to the Beliveau Companies or the Assignment and Payment Rights or the Beliveau Companies.

7.      Modification.  The Parties agree that this Agreement may not be modified or varied in its terms or provisions by an oral agreement or representation or otherwise, except by an instrument in writing of subsequent date hereof executed by the Parties and then such modification shall be effective only in the specific instance or for the purpose for which given.

8.    <u>Severability</u>.  Should any provision of this Agreement be held by any court of competent jurisdiction to be illegal, invalid, or unenforceable for any reason, then the remaining portions of this Agreement will nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the Parties.

9.    <u>Construction</u>.  The Parties represent and warrant that they each have had an opportunity to fully review the provisions of this Agreement with attorneys of their own choice as a result of which the Parties acknowledge and agree that: (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Agreement; and (b) they have signed and entered into this Agreement knowingly, voluntarily, and of their own free will.

10.    <u>No Waiver</u>.  The Parties agree that no breach of any provision hereof can be waived except in writing.  The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any other provision hereof.

11.    <u>Execution</u>.  The Parties agree that this Agreement may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same Agreement. Electronically transmitted signatures shall be deemed to have the same effect as original signatures.

*[signature page to follow; intentionally left blank]*

## EXHIBIT D

## CONFIRMATION OF ASSIGNMENT OF MEMBERSHIP INTERESTS AND CLAIMS IN WATERVILLE ENTITIES

This CONFIRMATION OF ASSIGNMENT OF MEMBERSHIP INTERESTS AND CLAIMS IN WATERVILLE ENTITIES ( this "Confirmation") is made and entered into as of October 31, 2023, by and between Severin M. Beliveau ("Beliveau") and Kevin J. Mattson ("Mattson") (Mattson together with Beliveau, the "Parties").

WHEREAS, on October 12 and 19, 2023, the Parties (and their counsel) participated in a Judicial Settlement Conference ("JSC") in the Civil Action with The Honorable Andrew M. Horton, Associate Justice ("Justice Horton") of The Supreme Judicial Court, State of Maine, of all the issues raised in and with respect to any and all matters arising out of or relating to, *inter alia*, the Civil Action, the Exit Agreement, the Rangeley Loan Guaranty, CMCC, the Newcastle Claims and Interests, the NECH Companies (also defined as Waterville Entities herein), the Beliveau Claims, the Mattson Claims, and all other obligations of the Parties to one another (collectively, the "Claims and Interests");

WHEREAS, at that JSC, the Parties reached a global agreement and settlement of all their various and competing interests, disputes, and matters, with respect to the Claims and Interests and otherwise, and the terms and conditions of that global agreement and settlement were set forth on the record in the Civil Action before Justice Horton on October 19, 2023;

WHEREAS, The Parties have agreed to set forth the terms of the global agreement and settlement reached at JSC in a written Settlement Agreement, which shall include, among other things, confirmation of certain transfers made by Beliveau to Mattson or this affiliates;

NOW, THEREFORE, in consideration of the foregoing recitals, each of which is true and correct to the best knowledge, understanding, and information and belief of the Parties (unless otherwise specifically set forth herein), and each of which is incorporated into and made an integral part of this Confirmation, the Parties hereby agree as follows:

1.      Confirmation.  Beliveau ratifies and confirms his prior assignment and transfer to Mattson or Mattson's nominee, of all of Beliveau's right, title and interest, including all membership interests in and all claims against, each of the following entities: Waterville Development Company I, LLC, Waterville Development Company II, LLC Waterville Development Company III, LLC Waterville Development Company IV, LLC, Seton Holdings, LLC and New England Capital Holdings, LLC (together, the "Waterville Entities"), and hereby further confirms that he releases and maintains no right, title or interest in or with respect to any of the foregoing Waterville Entities, or the membership interests therein.

2.      Cooperation.  The Parties covenant that they will do, execute, and deliver or cause to be done, executed, and delivered all such further acts, documents, or things, including without limitation, transfers, assignments, conveyances, and assurances for better assuring, conveying, and confirming unto Mattson, the prior assignment and transfer related to the Waterville Entities and referred to in paragraph 1 above.

3.      Applicable Law.  This Confirmation shall be governed, construed, interpreted, and enforced in accordance with the laws of the State of Maine.

4.      Warranties.  The Parties hereto each warrant that this Confirmation constitutes the legal, valid, and binding obligation of each of the Parties in accordance with its terms.  Each individual signing this Confirmation on behalf of each of the Parties represents and warrants that he/she has full authority to do so.  Except for the representations and warranties expressly set forth herein, the Parties make no representations or warranties whatsoever with respect to or concerning the Waterville Entities.

5.      Modification.  The Parties agree that this Confirmation may not be modified or varied in its terms or provisions by an oral agreement or representation or otherwise, except by an instrument in writing of subsequent date hereof executed by the Parties and then such modification shall be effective only in the specific instance or for the purpose for which given.

6.      Severability.  Should any provision of this Confirmation be held by any court of competent jurisdiction to be illegal, invalid, or unenforceable for any reason, then the remaining portions of this Confirmation will nonetheless remain in full force and effect, unless such portion of the Confirmation is so material that its deletion would violate the obvious purpose and intent of the Parties.

7.      Construction.  The Parties represent and warrant that they each have had an opportunity to fully review the provisions of this Confirmation with attorneys of their own choice as a result of which the Parties acknowledge and agree that: (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Confirmation; and (b) they have signed and entered into this Confirmation knowingly, voluntarily, and of their own free will.

8.      No Waiver.  The Parties agree that no breach of any provision hereof can be waived except in writing.  The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any other provision hereof.

9.      Execution.  The Parties agree that this Confirmation may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same Confirmation.  Electronically transmitted signatures shall be deemed to have the same effect as original signatures.

*[signature page to follow; intentionally left blank]*

## EXHIBIT E

## CONFIRMATION OF TRANSFER
## OF SHARES OF COMMON STOCK ISSUED BY CMCC, INC

This CONFIRMATION OF ASSIGNMENT OF SHARES OF STOCK ISSUED BY CMCC, INC ( this "Confirmation") is made and entered into as of October 31, 2023, by and between Severin M. Beliveau ("Beliveau") and Kevin J. Mattson ("Mattson", and together with Beliveau, the "Parties").

WHEREAS, on October 12 and 19, 2023, the Parties (and their counsel) participated in a Judicial Settlement Conference ("JSC") in the Civil Action with The Honorable Andrew M. Horton, Associate Justice ("Justice Horton") of The Supreme Judicial Court, State of Maine, of all the issues raised in and with respect to any and all matters arising out of or relating to, *inter alia*, the Civil Action, the Exit Agreement, the Rangeley Loan Guaranty, CMCC, the Newcastle Claims and Interests, the NECH Companies, the Beliveau Claims, the Mattson Claims, and all other obligations of the Parties to one another (collectively, the "Claims and Interests");

WHEREAS, at that JSC, the Parties reached a global agreement and settlement of all their various and competing interests, disputes, and matters, with respect to the Claims and Interests and otherwise, and the terms and conditions of that global agreement and settlement were set forth on the record in the Civil Action before Justice Horton on October 19, 2023;

WHEREAS, the Parties have agreed to set forth the terms of the global agreement and settlement reached at JSC in a written Settlement Agreement, which shall include, among other things, confirmation of certain transfers previously made by Beliveau to Mattson or his affiliates;

NOW, THEREFORE, in consideration of the foregoing recitals, each of which is true and correct to the best knowledge, understanding, and information and belief of the Parties (unless otherwise specifically set forth herein), and each of which is incorporated into and made an integral part of this Confirmation, the Parties hereby agree as follows:

1.      Confirmation.  Beliveau ratifies and confirms his prior transfer to Mattson of all shares of stock and any other equity interest held by Beliveau and issued by Central Maine Commerce Center, Inc. ("CMCC"), and hereby further confirms that he retains no shares of stock or other claim for any indebtedness, or any right, title or equity interest in or with respect to CMCC; provided, however, that nothing herein shall constitute a release or transfer of any indebtedness of CMCC to Beliveau for $500,000.

2.      Cooperation.  The Parties covenant that they will do, execute, and deliver or cause to be done, executed, and delivered all such further acts, documents, or things, including without limitation, transfers, assignments, conveyances, and assurances for better assuring, conveying, and confirming unto Mattson, the transfer referred to in paragraph 1 above..

3.      Applicable Law.  This Confirmation shall be governed, construed, interpreted, and enforced in accordance with the laws of the State of Maine.

4.      Warranties.  The Parties hereto each warrant that this Confirmation constitutes the legal, valid, and binding obligation of each of the Parties in accordance with its terms.  Each

individual signing this Confirmation on behalf of each of the Parties represents and warrants that he/she has full authority to do so.  Except for the representations and warranties expressly set forth herein, the Parties make no representations or warranties whatsoever with respect to or concerning CMCC.

5.	Modification.  The Parties agree that this Confirmation may not be modified or varied in its terms or provisions by an oral agreement or representation or otherwise, except by an instrument in writing of subsequent date hereof executed by the Parties and then such modification shall be effective only in the specific instance or for the purpose for which given.

6.	Severability.  Should any provision of this Confirmation be held by any court of competent jurisdiction to be illegal, invalid, or unenforceable for any reason, then the remaining portions of this Confirmation will nonetheless remain in full force and effect, unless such portion of the Confirmation is so material that its deletion would violate the obvious purpose and intent of the Parties.

7.	Construction.  The Parties represent and warrant that they each have had an opportunity to fully review the provisions of this Confirmation with attorneys of their own choice as a result of which the Parties acknowledge and agree that: (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Confirmation; and (b) they have signed and entered into this Confirmation knowingly, voluntarily, and of their own free will.

8.	No Waiver.  The Parties agree that no breach of any provision hereof can be waived except in writing.  The waiver of a breach of any provision hereof shall not be deemed a waiver of any other breach of any other provision hereof.

9.	Execution.  The Parties agree that this Confirmation may be executed in one or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same Confirmation.  Electronically transmitted signatures shall be deemed to have the same effect as original signatures.

*[signature page to follow; intentionally left blank]*