## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MAINE

In re:

**KEVIN J. MATTSON,** Debtor. Chapter 7

Case No. 24-20188

**RECEIVED**

*By USBC Portland at 2:53 pm, 08/14/2026*

### OBJECTION TO PROOF OF CLAIM NO. 24 FILED BY MONTRESOR LLC

Kevin J. Mattson ("Mr. Mattson"), *Pro Se* debtor in the above-captioned involuntary Chapter 7 case, hereby objects to Proof of Claim No. 24 filed by Montresor LLC ("Montresor") pursuant to 11 U.S.C. §§ 502(b) and Fed. R. Bankr. P. 3007, and states as follows:

### OBJECTION

1.      Montresor filed Claim No. 24 asserting an unsecured claim of $512,336.26, including $12,858.76 in attorneys' fees as of October 2024, and expressly reserving the right to add "any and all additional and/or unbilled costs, attorney fees, accruing interest, and/or other expenses" related to this bankruptcy case, the foreclosure action, and "applicable non-bankruptcy law." A true copy is attached as Exhibit A.

2.      Since filing that claim, Montresor has amended its proof of claim and now asserts that it is owed approximately $140,000 in legal fees and collection costs. In doing so, Montressor has availed itself of this Court as a forum for adjudication.

3.      However, at the same time, Montressor has initiated an action against Mr. Mattson in state court to collect the same fees that it seeks to have this Court allow.

4.      Mr. Mattson filed an opposition to Montressor's motion for summary judgment with regard to the fees. Mr. Mattson objects to the claim before this Court for many of the same reasons he opposed summary judgment. Chief among them are that the fees are not "collection

1

costs" within the meaning of applicable loan documents and that Mr. Creswell's invoices fail to provide adequate detail to understand how much time was spent on any one specific task.

5.      Mr. Mattson has attached as Exhibit A the state court opposition referenced above. Mr. Mattson incorporates the arguments in that filing here in objection to the claim.

## CONCLUSION

Montresor's claim is overstated, unsupported, unreasonable, and legally unenforceable. It must be disallowed.

Respectfully submitted,

**Kevin J. Mattson, Debtor Pro Se**

## CERTIFICATE OF SERVICE

I, Kevin J. Mattson, hereby certify that on the 14th day of August 2026, a true and correct copy of the foregoing Motion, together with all exhibits, was served electronically through the Court's CM/ECF system.

Kevin J. Mattson, Pro Se

P.O. Box 596

Gardiner, ME 04345

2

# NOTICE OF HEARING

## UNITED STATES BANKRUPTCY COURT DISTRICT OF MAINE

In re: **KEVIN J. MATTSON,**

Debtor Chapter 7 Case No. 24-20188

### NOTICE OF HEARING ON OBJECTION TO PROOF OF CLAIM NO. 24 FILED BY MONTRESOR LLC

PLEASE TAKE NOTICE that on August 14, 2026, the Debtor, **Kevin J. Mattson,** filed an **Objection to Proof of Claim No. 24 filed by Montresor LLC** (the "Objection").

PLEASE TAKE FURTHER NOTICE that a **hearing on the Objection** will be held as follows:

**Date:** December 15, 2026  **Time:** 9 AM  **Location:** U.S. Bankruptcy Court 537 Congress Street Portland, ME 04101 Courtroom No. 2 (or as otherwise designated by the Clerk)

The hearing will be conducted **in person,** unless the Court orders otherwise. Parties wishing to participate telephonically must comply with the Court's telephonic-appearance procedures.

If you oppose the Objection, you are expected to appear at the hearing and present your position. If you do not appear, the Court may grant the relief requested in the Objection **without further notice or hearing.**

Dated: August 14, 2026

Respectfully submitted,

**Kevin J. Mattson, Pro Se**

P.O. Box 596

Gardiner, ME 04345

STATE OF MAINE
CUMBERLAND, SS

SUPERIOR COURT
CIVIL ACTION
Docket No. PORSC-CV-2026-102

MONTRESOR LLC,

    Plaintiff,

v.

KEVIN J. MATTSON,

    Defendant.

**DEFENDANT KEVIN J. MATTSON'S
RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Kevin J. Mattson ("Mr. Mattson"), the defendant in the above-captioned proceeding (the "Civil Action"), hereby submits his response and incorporated memorandum of law (this "Response") in opposition to *Plaintiff Montresor LLC's Motion for Summary Judgment, and Incorporated Memorandum of Law* (the "Motion"), filed by Montresor LLC (the "Plaintiff" or "Montresor"). In support of the Response, Mr. Mattson respectfully states as follows:

## PRELIMINARY STATEMENT

In the Motion, Montresor asks this Court to award $138,282.45 in attorneys' fees and costs generated almost exclusively in Mr. Mattson's chapter 7 bankruptcy case, styled as *In re Kevin J. Mattson*, Case No. 24-20188 (the "Bankruptcy Case"), and an adversary proceeding Montresor filed to deny Mr. Mattson a discharge of all debts, *Montresor LLC v. Kevin J. Mattson*, Adv. Proc. No. 25-2006 (the "Adversary Proceeding"). These fees did not arise from legitimate debt collection. They arose from a pattern of aggressive, economically irrational litigation conduct by an entity that the bankruptcy trustee described as "likely formed as revenge" against Mr. Mattson. [*Additional Statement of Undisputed Material Facts in Opposition to Motion for Summary Judgment* (the "Defendant's SUMF") ¶ 64, filed herewith.] Further, in its *Judgment of Foreclosure*

*and Sale* dated February 25, 2026 (the "Foreclosure Judgment"), the Superior Court already ruled that these very bankruptcy-related fees should be resolved in bankruptcy court. [Defendant's SUMF ¶¶ 73–75.] This Court should deny the Motion for the same reasons: the fees are not recoverable in state court, they are not "collection costs" under the Guaranty (defined below), and given the volume of unnecessary and contentious filings revealed in Montresor's own invoices, it is not possible to determine what fees are legitimate collection costs or whether those fees are reasonable.

## BACKGROUND

The facts underlying this dispute involve multiple related proceedings with overlapping parties and common counsel. Randy J. Creswell ("Mr. Creswell") serves as counsel for Montresor in each of these proceedings while simultaneously serving as Montresor's manager. The law firm Marcus Clegg represented Mr. Mattson in the Bankruptcy Case and the Adversary Proceeding and also represented Mr. Mattson's spouse, Jeanne Mattson ("Mrs. Mattson"), in the Foreclosure Action (defined below). As described below, Montresor's counsel has engaged in a pattern of unnecessary and contentious filings across multiple proceedings, which make it impossible to determine from the invoices produced what fees are permitted collection costs under the Guaranty and what are not.

I.  **Mr. Mattson and a member of Montresor had a longstanding business relationship, which eventually ended and led to that member initiating an involuntary bankruptcy case against Mr. Mattson.**

Mr. Mattson and Severin Beliveau ("Mr. Beliveau") had a longstanding business relationship spanning numerous real estate projects through their ownership interests in various corporations and other legal entities. [Defendant's SUMF ¶ 42.] The law firm they used even referred to them collectively as "Kevrin." [*Id.*] Among other ventures, Mr. Mattson and Mr.

2

Beliveau each held a one-quarter interest in Commerce Center Management, LLC, the general partner of Central Maine Commerce Center, L.P. ("CMCC"), which owned land, buildings, and other property in Augusta, Maine, known as the Central Maine Commerce Center. [*Id.*] At one point, acting collectively as "Kevrin" but through different business entities, they were the largest third-party landlord to the Maine state government. [*Id.*]

On or about August 22, 2017, Mr. Mattson and Mr. Beliveau entered into an agreement pursuant to which they sought to terminate their various business arrangements (as amended from time to time, the "Exit Agreement"). [Defendant's SUMF ¶ 43.] In February 2023, Mr. Beliveau commenced a civil action against Mr. Mattson alleging that Mr. Mattson had failed to satisfy his obligations under the Exit Agreement and a $1,200,000.00 loan guaranty (the "Rangeley Loan Guaranty"). That action was styled *Severin M. Beliveau, Esq., et al. v. Kevin J. Mattson, et al.*, Docket No. PORSC-CV-2023-057, and subsequently transferred to the Business and Consumer Court, Docket No. BCD-CV-2023-0031 (the "Beliveau Action"). [*Id.*] That same month, CMCC sold substantially all of its assets for $18,500,000.00. [*Id.*] The parties resolved their disputes by Settlement Agreement and Mutual General Release dated on or about October 31, 2023 (the "2023 Settlement Agreement"), pursuant to which Mr. Mattson executed a promissory note in the amount of $920,000.00 in favor of Mr. Beliveau (the "2023 Note"). [*Id.*] Mr. Mattson subsequently defaulted under the 2023 Settlement Agreement. [*Id.*]

Following Mr. Mattson's default, Mr. Creswell, on behalf of Mr. Beliveau, filed a motion (the "Motion to Enforce") to enforce the 2023 Settlement Agreement and enter a stipulated judgment. The Motion to Enforce calculated the principal amount at $835,172.38, which was nearly three times the correct amount of $288,020.00, as determined by the formula in the 2023 Note. On August 16, 2024, Mr. Mattson's counsel filed a Rule 60(b) motion challenging the

3

calculation.  On September 9, 2024, the Business and Consumer Court granted Mr. Mattson's motion and corrected the judgment to $288,020.00.

Three days later, on September 12, 2024, four petitioning creditors, led by Mr. Beliveau, a member and manager of Montresor, filed an involuntary chapter 7 petition against Mr. Mattson, commencing the Bankruptcy Case.  Mr. Creswell filed the involuntary petition on Mr. Beliveau's behalf.  [Defendant's SUMF ¶ 44.]  One of the other petitioning creditors, Accelerated Capital Partners, LLC, is a current or former client of Mr. Creswell's with respect to claims against a business entity owned by and formerly managed by Mr. Mattson as well as claims guaranteed by Mr. Mattson.  [Defendant's SUMF ¶ 45.]

## II.     Montresor purchased a note and guarantee and filed an adversary proceeding in Mr. Mattson's bankruptcy case seeking to deny him a bankruptcy discharge.

Prior to the Bankruptcy Case, on August 11, 2022, Hailcore, LLC ("Hailcore") executed and delivered a promissory note in the amount of $450,000.00 (the "Note") to lender SW Legacy, LLC ("Legacy"), secured in part by a second mortgage on the residence owned solely by Mrs. Mattson, located at 10 Cranberry Ridge Road, Freeport, Maine (the "Property").  [Defendant's SUMF ¶ 46.]  On the same date, Mr. Mattson executed a personal guaranty of the Note (the "Guaranty").  [Id.]

The Note defines "attorneys' fees" as "reasonable charges and expenses for legal services rendered to or on behalf of Lender in connection with the collection of the indebtedness evidenced by this Note at any time whether prior to the commencement of judicial proceedings and/or thereafter at the trial and/or appellate level and/or in pre and post judgment or bankruptcy proceedings." [Defendant's SUMF ¶ 48.] The Guaranty provides that Mr. Mattson shall pay "all the reasonable costs, expenses and fees, including, without limitation, all reasonable attorneys' fees, incurred by [Lender] in enforcing or attempting to enforce the Guaranty, whether the same is

enforced by suit or otherwise." [Defendant's SUMF ¶ 49.] Thus, both instruments limit recovery to fees that are (1) reasonable and (2) incurred in connection with collection of the indebtedness or enforcement of the Guaranty.

On March 31, 2025, Montresor LLC[1] was formed. [Defendant's SUMF ¶ 50.] On April 1, 2025, one day later, Montresor purchased the Note, Guaranty, and related loan documents from Legacy (collectively, the "Loan Documents") for $249,925.56. [*Id.*] This purchase of the Loan Documents gave Montresor a claim in the Bankruptcy Case. [Defendant's SUMF ¶ 56.]

Montresor's actual ownership, as disclosed by Mr. Creswell in an email to Chad Daley at Camden National Bank on April 1, 2025, is as follows: Gwen Creswell (50%), who holds her interest through her solely owned entity, Marion Capital Group, LLC; Severin Beliveau (25%); and Conor Beliveau (25%). [Defendant's SUMF ¶¶ 51–52.] Ms. Gwen Creswell is Mr. Creswell's wife. [Defendant's SUMF ¶ 53.] Mr. Creswell stated in that email: "I am only a manager of Marion Capital Group, LLC and Montresor LLC." [*Id.*] Mr. Creswell is also Montresor's litigation counsel in this matter, billing at $450 per hour and generating $138,282.45 in fees to date. [*Id.*] On May 5, 2025, Montresor used Mr. Mattson's Guaranty to commence the Adversary Proceeding seeking denial of Mr. Mattson's bankruptcy discharge. [Defendant's SUMF ¶ 56.] No other creditor, including the chapter 7 trustee (the "Trustee"), filed such an action by the applicable deadline. [*Id.*] Montresor could have chosen to bring an action seeking only to have Montresor's claim excepted from discharge under section 523 of the Bankruptcy Code.[2] *See* 11 U.S.C. § 523. If successful, it would have meant that Montresor could have pursued Mr. Mattson after

---

[1]    The name "Montresor" is a reference to the narrator of Edgar Allan Poe's short story "The Cask of Amontillado," in which a nobleman seeks revenge and murders his fellow nobleman by burying him alive. The Chapter 7 Trustee noted this reference, observing that Montresor LLC's "principals chose the name 'Montresor' for a reason. The name communicates the reason – revenge." [Defendant's SUMF ¶ 64.]

[2]    All citations to the "Bankruptcy Code" reference title 11 of the United States Code.

bankruptcy when Mr. Mattson had fewer creditors because no other creditor obtained similar relief. *See* 11 U.S.C. §§ 523, 727. Instead, Montresor sought to deny Mr. Mattson a discharge entirely under section 727 of the Bankruptcy Code, which means that Montresor is but one of many claimants entitled to seek recovery from Mr. Mattson. [Defendant's SUMF ¶¶ 56–57.]

On December 16, 2025, the Bankruptcy Court authorized Marcus Clegg to withdraw as counsel for Mr. Mattson in the Bankruptcy Case and the Adversary Proceeding. [Defendant's SUMF ¶ 63.] Mr. Mattson consented to the withdrawal because he could not afford to continue paying for legal representation in the face of Montresor's escalating litigation. [*Id.*]

On December 16, 2025, Mr. Mattson filed a voluntary waiver of discharge in the Bankruptcy Case because the Adversary Proceeding and escalating legal fees threatened Mrs. Mattson's home and made it impossible to resolve the Foreclosure Action (defined below). The Bankruptcy Court approved the discharge waiver on December 17, 2025. [Defendant's SUMF ¶¶ 79–81.]

### III.  Montresor obtained the Foreclosure Judgment against the Mattson residence while it pursued the Bankruptcy Case.

In March 2024, prior to the Bankruptcy Case, Legacy commenced a foreclosure action against Mrs. Mattson and Mr. Mattson, styled *SW Legacy LLC v. Kevin J. Mattson and Jeanne M. Mattson*, Docket No. PORSC-RE-2024-00037 (the "Foreclosure Action"). [Defendant's SUMF ¶ 68.] On June 6, 2025, after Montresor acquired the Loan Documents, the Superior Court substituted Montresor as plaintiff in the Foreclosure Action. [Defendant's SUMF ¶ 68.]

On October 3, 2025, Montresor voluntarily dismissed Mr. Mattson from the Foreclosure Action without prejudice due to the automatic stay in Bankruptcy Case. [Defendant's SUMF ¶ 69.]

On February 25, 2026, the Cumberland County Superior Court issued the Foreclosure

Judgment, holding that Montresor was entitled only to "reasonable attorney fees and costs incurred solely in this proceeding" and setting the recoverable amount at $285,402.37, excluding all bankruptcy-related fees. [Defendant's SUMF ¶¶ 73–75.]

On May 29, 2026, once the Foreclosure Judgment became final, Mrs. Mattson promptly paid the amount ordered by the Court. [Defendant's SUMF ¶ 77.] Despite the Court's explicit limitation to fees "incurred solely in this proceeding," Montresor added $22,944 in additional legal fees to the payoff amount at the time of redemption, attributing those fees to the appeal of the Foreclosure Judgment that Montresor had filed on March 9, 2026, and then voluntarily withdrawn on May 11, 2026. [Defendant's SUMF ¶ 78.]

## IV.    Montresor's Pattern of Aggressive and Unnecessary Litigation Renders Its Fee Claim Indeterminate.

Montresor's litigation conduct has been characterized by the Bankruptcy Court as "antithetical to constructive and appropriate advocacy," with "pleadings contain[ing] flippant, unprofessional, and irrelevant asides which are unacceptable." [Defendant's SUMF ¶ 91.] The Court noted that counsel "was warned about such conduct in court less than one week ago in a different matter and, in response to the Court's question of whether he could litigate in a civil and responsible manner, he answered affirmatively." [*Id.*] This pattern of conduct, together with the volume and nature of the filings described below, makes it impossible to determine from the invoices produced what portion, if any, of the fees Montresor seeks constitutes legitimate collection costs.

Mr. Creswell's invoices, produced in support of the Motion, reflect extensive activity in the Bankruptcy Case and the Adversary Proceeding. Many of the docket entries and corresponding time entries involve matters that do not appear to relate to collection of the Guaranty. Examples include: three separate objections to the Trustee's applications to compromise disputes (involving

7

third-party tax credits and avoidance claims against unrelated entities) in the Bankruptcy Case; an objection to another creditor's proof of claim in the Bankruptcy Case; research into tax credits belonging to the estate in the Bankruptcy Case; discovery subpoenas served at Mrs. Mattson's workplace and the school where the Mattsons' children were students in the Adversary Proceeding; and the filing and subsequent voluntary withdrawal of an appeal of the Foreclosure Judgment in the Foreclosure Action.  [Defendant's SUMF ¶¶ 59–61, 76.]

Other examples of Montresor's pattern of unnecessary and contentious litigation includes the *Motion to Compel Abandonment of Property of Estate and Request for Limitation of Notice* (the "Motion to Abandon") filed in the Bankruptcy Case on May 17, 2026, which  sought to force the Trustee to abandon estate claims against Mr. Beliveau and Mr. Creswell, including a slander and defamation claim against Mr. Creswell that Mr. Mattson listed in his bankruptcy schedules. [Defendant's SUMF ¶ 65.]  The Trustee filed an objection, noting that Mr. Creswell has likely "described Mr. Mattson to others as a 'sociopath' and/or a 'liar'" and that the defamation claim warranted further investigation.  The Trustee further noted in the objection that Montresor was "likely formed as revenge" against Mr. Mattson and that Montresor "wastes the court's time." [Defendant's SUMF ¶¶ 64, 66.]  The Bankruptcy Court denied the Motion to Abandon on June 16, 2026.  [Defendant's SUMF ¶ 67.]

Similarly, in the Foreclosure Action, after the Foreclosure Judgment issued, Montresor filed an appeal on March 9, 2026, and then voluntarily withdrew it on May 11, 2026, generating additional fees.  [Defendant's SUMF ¶¶ 76, 83.]  When counsel for Mrs. Mattson asked Mr. Creswell what his position was on when the 90-day redemption period expired—a straightforward statutory question complicated by the appeal and withdrawal—Mr. Creswell responded: "I'm not going to give you my position on when it expires" and "[t]here is no benefit to me or the client in

identifying the date." [Defendant's SUMF ¶ 84.] Mrs. Mattson was compelled to file a motion for relief from the Foreclosure Judgment under Rule 60(b) to obtain clarity on the redemption deadline (the "Rule 60(b) Motion"). [Defendant's SUMF ¶ 85.]

Rather than simply stating his position on the redemption deadline, Mr. Creswell filed an opposition to the Rule 60(b) Motion in the Foreclosure Action (the "Rule 60(b) Opposition"), arguing that Maine courts do not "render advisory opinions" and that "[i]f Defendant's counsel does not know when equity of redemption expires under applicable law when an appeal of a foreclosure judgment is dismissed, then Defendant should consult with new counsel that does." [Defendant's SUMF ¶ 86.] In that same filing, Montresor accused the Superior Court of having "ignore[d] the admitted evidence," "credit[ed] inadmissible papers and irrelevant hearsay," "ignore[d] directly applicable and controlling Maine law," and "interpret[ed] the phrase 'reasonable legal fees' in an utterly atypical manner in order to reach its preferred result." [Defendant's SUMF ¶ 100.] These attacks on the Foreclosure Judgment bear directly on Montresor's credibility in this Civil Action, where Montresor simultaneously invokes that same judgment for preclusive effect.

The Bankruptcy Court's criticism of Mr. Creswell's litigation strategy against Marcus Clegg clients extends beyond the Bankruptcy Case. On November 7, 2025, in an unrelated bankruptcy case, *In re Pettegrow*, Case No. 25-10186, the Bankruptcy Court conditioned Mr. Creswell's retention as special counsel on his ability to "advocate for his clients in a professional manner," noting that it had directed statements at Mr. Creswell "at least several times" over "several years" due to the "history between Creswell Law and the Marcus Clegg firm." [Defendant's SUMF ¶ 89.] The Court warned: "If I see things that look like the resurrection of an old battle, I'm gonna take it off on the fees." [*Id.*]

9

Subsequently, on November 20, 2025, the Bankruptcy Court entered an order (the "November 20 Order") denying Montresor's motion to determine certain legal fees incurred by Marcus Clegg were excessive and found that Montresor's counsel's pleadings contained "flippant, unprofessional, and irrelevant asides" and that counsel's conduct was "antithetical to constructive and appropriate advocacy." [Defendant's SUMF ¶¶ 90-91.] The next day, on November 21, 2025, Mr. Creswell filed an application for payment in the Pettegrow matter and sought to withdraw as special counsel, stating that his continued representation was "untenable" and characterizing the November 20 Order as a sanction. [Defendant's SUMF ¶ 90.] When Mrs. Mattson brought the November 20 Order to the Superior Court's attention in the Foreclosure Action, Mr. Creswell submitted a letter to that court and said the November 20 Order was "directed solely and specifically at me, as counsel to Montresor LLC, for getting out of line professionally" and that he and Marcus Clegg "have never enjoyed a positive professional relationship.]" [Defendant's SUMF ¶ 92.]

Throughout the time when Montressor made these filings, it was oversecured by the value in Mrs. Mattson's Property, by Montressor's own admission in a court filing. [Defendant's SUMF ¶ 101.]

Given the breadth of these filings, the invoice entries described above, and the Bankruptcy Court's observations regarding counsel's conduct, it is not possible to determine from the record what portion, if any, of the fees Montresor seeks relates to collection of the Guaranty as opposed to these other activities and whether Mr. Creswell's personal history with Marcus Clegg unnecessarily contributed to legal fees he now seeks to recovery. Thus, there is no basis for concluding that the fees claimed are reasonable or related to Guaranty enforcement.

**V. Montresor now seeks to collect from Mr. Mattson a substantial amount of fees it incurred in the Bankruptcy Case, in violation of the Foreclosure Judgment.**

Montresor now seeks to collect from Mr. Mattson $128,081.52 in fees it characterizes as incurred "in relation to its attempt to enforce the claims relating to the Guaranty in the Bankruptcy Case"—a description that encompasses both the Adversary Proceeding and the extensive contested matters in the main Bankruptcy Case—and $10,200.93 in fees incurred in this Civil Action, for a total of $138,282.45. [*Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment* ("Plaintiff's SUMF") ¶¶ 37–38; Creswell Aff. ¶¶ 1–2.] As noted above, the invoices Mr. Creswell produced reveal that a significant portion of the billed time was devoted to matters unrelated to collection of the Guaranty, including objections to the Trustee's applications to compromise, contested matters involving third-party claims, research into tax credits, and communications with parties having no connection to the underlying debt, and disputes with Marcus Clegg. [Creswell Aff. Exs. A, B.] Given the volume of unnecessary and contentious filings across all proceedings, it is not possible to determine from these invoices what fees are legitimate collection costs or whether those fees are reasonable.

Montresor now seeks to recover the same bankruptcy-related fees directly from Mr. Mattson through this separate guaranty action, despite the Foreclosure Judgment's explicit limitation, despite the absence of any bankruptcy-court fee adjudication, and despite the fact that the invoices produced do not permit the Court to allocate fees between legitimate collection activity and the extensive non-collection litigation described above.

**LEGAL STANDARD**

Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Me. R. Civ. P. 56(c); *Associated Builders, Inc. v. Coggins*, 1999 ME 12, ¶ 3, 722 A.2d 1278, 1280. A material fact is one having the potential to affect the outcome of the suit, and "a genuine issue exists when sufficient evidence

11

supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. The Court must view the evidence in the light most favorable to the nonmoving party. *Driscoll v. Mains*, 2005 ME 52, ¶ 6, 870 A.2d 124, 126. Under Me. R. Civ. P. 56(h), the nonmoving party must respond to each numbered statement of material fact, admitting, denying, or stating lack of sufficient information, with citations to the record. Where the nonmoving party lacks facts essential to its opposition because discovery is incomplete, Me. R. Civ. P. 56(d) permits the Court to defer ruling and allow limited discovery.

## ARGUMENT

I.   **The Motion should be denied because the Superior Court already determined that the Bankruptcy Court should determine the reasonableness of bankruptcy-related fees.**

Montresor's Motion fails at the threshold because the Superior Court has already determined that bankruptcy-related fees must be adjudicated in bankruptcy court and that this is the wrong forum for that dispute. The Foreclosure Judgment expressly held that Montresor is entitled only to "reasonable attorney fees and costs incurred solely in this proceeding" and excluded all bankruptcy fees from the foreclosure payoff. [Defendant's SUMF ¶¶ 73–75.] That ruling constitutes a determination that bankruptcy-related fees are not recoverable in state court and must instead be submitted to the Bankruptcy Court for review and allowance under 28 U.S.C. § 157(b). Montresor cannot circumvent this determination by initiating a new state-court action seeking the same fees that the Superior Court said should be determined elsewhere. *See Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131, 138–39 (setting forth elements of issue preclusion).

II.   **The Attorneys' Fees Are Not "Collection Costs" Under the Guaranty and Are Not Properly Chargeable to Mr. Mattson.**

12

Even if this Court could determine the reasonableness of the fees, the fees it seeks are not "collection costs" within the meaning of the Guaranty. They are litigation expenses that bear no rational connection to the enforcement of the underlying debt.

The Loan Documents limit the scope of recoverable fees to reasonable collection costs. The Note limits "attorneys' fees" to "reasonable charges and expenses for legal services rendered to or on behalf of Lender in connection with the collection of the indebtedness." [Defendant's SUMF ¶ 48.] The Guaranty similarly limits recovery to "reasonable costs, expenses and fees . . . incurred by [Lender] in enforcing or attempting to enforce the Guaranty." [Defendant's SUMF ¶ 49.] These contractual definitions do not encompass fees incurred in objecting to third-party claims, opposing Trustee settlements, researching tax credits belonging to the estate, or pursuing motions to abandon claims against Montresor's own counsel. Yet Mr. Creswell's invoices reveal that substantial time was billed for precisely those activities—none of which constitutes "collection of the indebtedness" or "enforcing the Guaranty" within the meaning of the loan documents.

Montresor paid $249,925.56 to acquire the debt and subsequently collected $285,402.37 from Mrs. Mattson's payoff of the Foreclosure Judgment, a net return of approximately $35,477 on its investment, while retaining its Guaranty claim against Mr. Mattson. [Defendant's SUMF ¶ 98.] Yet Montresor now seeks $138,282.45 in additional legal fees, nearly four times the net profit it earned on the investment. An oversecured creditor does not need to incur more than $130,000 in legal fees to prevent a debtor from obtaining a discharge or to engage in contentious motion practice that the Bankruptcy Court found "antithetical to constructive and appropriate advocacy." These expenditures are not rationally related to collection of a secured debt; they are rationally related to generating fees for Mr. Creswell, whose wife owns 50% of Montresor, and who is

13

Montresor's sole counsel. [Defendant's SUMF ¶ 98.]

Montresor pursued denial of discharge under section 727 of the Bankruptcy Code rather than merely excepting its own claim from the discharge under section 523 of the Bankruptcy Code, a strategy that potentially benefits all creditors and potentially harms Montresor by comparison because it effectively increases the number of creditors who could enforce claims against Mr. Mattson, diluting its own recovery. [Defendant's SUMF ¶¶ 56–57.] That is not a collection cost.

The financial disparity further supports the inference that these fees were incurred for unnecessary and contentious litigation, not for collection. Montresor's legal fees are nearly four times the net profit on the investment, nearly as much as it collected from the payoff itself, and more than half of what it paid for the entire debt. [Defendant's SUMF ¶ 98; Creswell Aff. ¶ 4.] It seems unreasonable for a creditor to incur $138,282.45 in fees to collect on an oversecured claim, unless the purpose of the litigation is something other than collection. [Defendant's SUMF ¶ 101.]

Mr. Creswell has a documented history of contentious dealings with the law firm Marcus Clegg. [Defendant's SUMF ¶¶ 88-92.] This has led to him withdrawing from an unrelated matter, having a motion denied for being unprofessional in the Bankruptcy Case, and his acknowledgment in the Foreclosure Action that he acted unprofessionally. [*Id.*] These circumstances support an inference that a portion of the fees incurred in Mr. Mattson's Bankruptcy Case were driven by Mr. Creswell's adversarial relationship with opposing counsel rather than by legitimate collection objectives.

After the Foreclosure Judgment, Montresor appealed and then withdrew the appeal, and Mr. Creswell refused to state his position on the redemption deadline, compelling Mrs. Mattson to file the Rule 60(b) Motion. [Defendant's SUMF ¶¶ 83–85.] The legal fees incurred in connection with this dispute, which arose solely because Mr. Creswell refused to state his position on the

14

redemption deadline, illustrate the type of unnecessary and unreasonable litigation conduct that inflated the fees Montresor now seeks to recover. The stress of that conduct caused Mr. Mattson to suffer a medical emergency resulting in hospitalization. [Defendant's SUMF ¶ 87.]

Montresor and Mr. Beliveau filed the Motion to Abandon seeking to force the Trustee to abandon estate claims against Mr. Creswell, including a defamation claim. The Bankruptcy Court denied the motion. [Defendant's SUMF ¶¶ 65–67.] The legal fees incurred in pursuing the Motion to Abandon, an effort to eliminate a defamation claim against Montresor's own counsel, are plainly not costs incurred to "collect" on the Guaranty.

Given the volume of unnecessary and contentious filings across all proceedings, it is not possible to determine from the invoices produced what fees are collection costs or whether those fees are reasonable. Mr. Mattson and the Court require further discovery to evaluate this issue.

### III.   Montresor's Res Judicata and Collateral Estoppel Arguments in Support of Its Motion Fail as a Matter of Law.

Montresor's Motion rests heavily on the assertion that the Foreclosure Judgment precludes Mr. Mattson from challenging liability or fees in this action. That argument fails for two independent reasons.

First, Montresor voluntarily dismissed Mr. Mattson from the Foreclosure Action on October 3, 2025. Because Mr. Mattson was not a party to the Foreclosure Judgment, there is no prior final judgment against him personally on fees or liability, and preclusion doctrines cannot apply against him. Maine law requires actual participation and an opportunity to litigate before preclusion can attach. *See Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131, 138–39 (requiring that the party estopped had "a fair opportunity and incentive to litigate the issue in a prior proceeding").

Second, even setting aside the party issue, Montresor's selective invocation of the

15

Foreclosure Judgment defeats its own preclusion argument. The Foreclosure Judgment expressly held that Montresor is entitled only to "reasonable attorney fees and costs incurred solely in this proceeding" and excluded all bankruptcy-related fees from the foreclosure payoff. [Defendant's SUMF ¶¶ 73–75.] Montresor cannot cherry-pick from a judgment it asks this Court to treat as preclusive by invoking it to establish liability while ignoring its explicit limitation on fees. If the Foreclosure Judgment binds Mr. Mattson on liability, then its fee limitation equally binds Montresor. And if the Foreclosure Judgment is not entitled to preclusive effect, then Montresor's reliance on it collapses entirely. In contrast, Montresor had the opportunity to litigate whether the bankruptcy-related legal fees could be awarded in the Superior Court, and the Superior Court ruled against it.

## IV.   Mr. Mattson Believes Some or all of the Fees Were Incurred to Harm Him, Not to Collect the Debt.

The totality of the circumstances demonstrates that some or all of Montresor's fees were not incurred to enforce the Guaranty but to pursue objectives unrelated to, and antithetical to, debt collection—especially for an oversecured claim. [Defendant's SUMF ¶ 101]. The Trustee stated that Montresor was "likely formed as revenge" [Defendant's SUMF ¶ 64]; the Bankruptcy Court found counsel's conduct "antithetical to constructive and appropriate advocacy" [Defendant's SUMF ¶ 91]; Montresor was formed one day before purchasing the loan documents and is 50% owned by Mr. Creswell's wife [Defendant's SUMF ¶¶ 50–52]; Montresor was oversecured, making the expenditure of more than $130,000 in fees economically irrational [Defendant's SUMF ¶¶ 98, 101; Creswell Aff. ¶ 4]; Montresor challenged discharge as to all claims [Defendant's SUMF ¶¶ 56–57]; and Montresor appealed its own Foreclosure Judgment and then voluntarily dismissed the appeal, generating $22,944 in additional fees [Defendant's SUMF ¶¶ 76, 78]. Indeed, Mr. Creswell himself admitted in a November 21, 2025 letter to the Cumberland County Superior

16

Court that his Reply to the Objection in Mr. Mattson's Chapter 7 case was "admittedly not my usual work. No case citations. No defined terms. No effort to apply the law as it exists to the facts as I know them to be" and that he "just threw in the towel." [Defendant's SUMF ¶ 92.] If Mr. Creswell himself acknowledges that his work product was substandard and that he abandoned any effort to apply the law, how can the fees he billed for that work constitute "reasonable" collection costs under the Guaranty? At minimum, these facts create triable issues of fact precluding summary judgment.

Montresor's own filings further confirm that it views the Foreclosure Judgment not as a legitimate ruling to be respected but as an obstacle to be overcome. In its Motion, Montresor described the Foreclosure Judgment as having been decided in an "utterly unusual way." [Motion at 8.] In its Rule 60(b) Opposition in the Foreclosure Action, Montresor went further, accusing the Superior Court of ignoring admitted evidence and controlling Maine law, and interpreting "reasonable legal fees" in an "utterly atypical manner in order to reach its preferred result." [Defendant's SUMF ¶ 100.] Montresor's willingness to attack the very judgment it now invokes reveals that this litigation is not a good-faith collection effort. A party acting in good faith does not ask one court to treat a judgment as binding while telling another court that the same judgment was the product of judicial error. This conduct is consistent with the Trustee's observation that Montresor was "likely formed as revenge" [Defendant's SUMF ¶ 64] and demonstrates that Montresor's litigation strategy is driven by objectives other than debt collection.

## V.      Montresor Has Not Established the Reasonableness of Its Fees as a Matter of Law.

The Guaranty permits recovery only of reasonable attorneys' fees. Reasonableness is a fact-intensive inquiry requiring evidence of, among other things, hours worked, rates charged, necessity of tasks, and allocation of work. *See Sweet v. Breivogel*, 2019 ME 18, ¶ 25 n.4. Although

17

Mr. Creswell has produced invoices, those invoices reveal such extensive non-collection activity—including objections to Trustee compromises, the Motion to Abandon, research into tax credits, and contentious motion practice that the Bankruptcy Court found "antithetical to constructive and appropriate advocacy"—that it is not possible to determine what portion of the fees constitutes legitimate collection costs. [Defendant's SUMF ¶¶ 93–94, 97.] The invoices do not contain allocation showing which work was performed to enforce the Guaranty and which was performed for other purposes, and the breadth of non-collection activity renders the fees indeterminate as a matter of law.

Further, it is difficult, if not impossible, to find that the legal fees in question were reasonable given Montressor's own admission in a court filing that it was oversecured by the value of Mrs. Mattsons Property. [Defendant's SUMF ¶ 101.]

For all of the reasons stated above, including the economically irrational scope of the Adversary Proceeding, the Bankruptcy Court's findings regarding counsel's conduct, the dismissed appeal, the adversarial conduct during the redemption period, the effort to abandon defamation claims against its own counsel, and the volume of unnecessary and contentious filings revealed in the invoices produced, Montresor has failed to carry its burden of establishing that its fees are reasonable as a matter of law. Given that the invoices produced do not permit the Court to determine what fees are collection costs or whether those fees are reasonable, summary judgment must be denied. Reasonableness and allocation are quintessential fact questions that cannot be resolved on summary judgment.

Further, the invoices Mr. Creswell produced in support of the Motion confirm the unreasonableness of the fees. For example, Mr. Creswell billed 5.8 hours ($2,610) on December 26, 2025, for drafting an objection to the Trustee's application to compromise—a matter involving

18

third-party tax credits unrelated to collection of the Guaranty.  [Creswell Aff. Ex. A.]  He billed 5.7 hours ($2,565) on April 6, 2026, for drafting another objection to the Trustee's application to compromise regarding an adversary proceeding involving avoidance claims against third parties. [Creswell Aff. Ex. A.]  He billed 4.4 hours ($1,980) on May 13, 2026, for drafting yet another objection to the Trustee's third application to compromise.  [Creswell Aff. Ex. A.]  He billed 3.5 hours ($1,575) on May 15-17, 2026, for drafting the Motion to Compel Abandonment—the motion seeking to force the Trustee to abandon estate claims against Mr. Creswell himself.  [Creswell Aff. Ex. A.]  And he billed 10.1 hours ($4,545) in a single day on May 5, 2025, for drafting the section 727 discharge complaint—the very action that sought to deny Mr. Mattson's discharge entirely rather than merely excepting Montresor's claim.  [Creswell Aff. Ex. A.]  These entries, which represent only a sampling, demonstrate that the fees were not incurred to "collect the indebtedness" but to pursue an expansive and aggressive litigation strategy far exceeding any legitimate collection effort.

## RULE 56(d) MOTION FOR LIMITED DISCOVERY

While Montresor's Motion should be denied outright as a matter of law, if it is not, Rule 56(d) relief is warranted. Montresor has not produced the underlying records necessary for the Court to evaluate its fee claim, and Defendant does not seek broad or open-ended discovery, but the core billing and allocation records necessary for the Court to assess Montresor's claim under the Foreclosure Judgment and the Guaranty and such other documents as are necessary to understand the purpose of the legal services performed.

Accordingly, Defendant requests discovery under Me. R. Civ. P. 56(d) to obtain the following, among other things:

      a.    All contemporaneous time entries and detailed invoices underlying the

19

$126,540 and $9,675 totals [Creswell Aff. ¶¶ 1–2].

b. Communications between Montresor and Mr. Creswell (or other counsel) allocating work between the Bankruptcy Case, Adversary Proceeding, and the Foreclosure Action.

c. Any engagement letter and payment terms by which Montresor engaged Mr. Creswell in order to determine whether Montresor will have liability for any legal fees not approved by the Court and whether any of the fees have been paid yet.

d. Any orders or rulings in the bankruptcy court allowing or disallowing fees and any transcript that is relevant.

e. The Loan Sale Agreement and assignment documents showing Montresor's rights at the time fees were incurred.

f. Communications among Mr. Beliveau, Mr. Creswell, Conor Beliveau, Gwen Creswell, Emmett Beliveau, and any other member, lender, or principal of Montresor.

g. Financial records, including bank statements, and organization documents of Montresor and its principals.

Appropriate discovery is necessary to present facts essential to justify opposition and to allow the Court to evaluate reasonableness, allocation, and compliance with the Court's previous decisions.

*[remainder of page intentionally left blank]*

20

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny the Motion and grant such other relief as the Court deems just and equitable.

Dated: July 29, 2026

/s/ _____
Kevin J. Mattson Defendant, Pro Se
P.O Box 596
Gardiner, ME 04345
Email: kevinmattson2112@gmail.com
Phone: (207) 242-5250

## CERTIFICATE OF SERVICE

I, Kevin J. Mattson, hereby certify that on July 29, 2026, I served a true and correct copy of the foregoing document upon counsel for Plaintiff, Randy J. Creswell, Esq., by electronic mail pursuant to M.R. Civ. P. 5(b).

/s/ _____

21