**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| KEVIN J. MATTSON, | ) | Case No. 24-20188 PGC |
| | ) | |
| Debtor. | ) | |

**MOTION FOR REMOVAL OF CHAPTER 7 TRUSTEE, PURSUANT TO**
**11 U.S.C. §§ 105 AND 324, AND REQUEST FOR EXPEDITED DETERMINATION**

NOW COMES Creditor, Severin M. Beliveau, Esq. ("Beliveau"), pursuant to 11 U.S.C. §§ 105 and 324(a), Federal Rules of Bankruptcy Procedure 9013 and 9014, and D. Me. LBR 9013-1, 9013-4, and 9014-1, and requests that the Court remove Chapter 7 Trustee, Edmond J. Ford, Esq. ("Trustee"), as Chapter 7 trustee in the above-captioned case of Debtor, Kevin J. Mattson ("Debtor"), and order the United States Trustee ("UST") to appoint a successor Chapter 7 trustee for the benefit of Debtor's estate and its creditors.

Under § 324(a) of the United States Bankruptcy Code ("Code"), the Court can remove a Chapter 7 trustee for "cause." The factors supporting cause are: (i) incompetence; (ii) lack of disinterestedness; (iii) conflicts of interest; (iv) exercise of poor judgment; (v) improper motivations or personal animus; (vi) breach of fiduciary duties; (vii) lack of diligence; and/or (viii) conduct generally adverse to the estate's interests.

Over the last 20 months the Trustee has managed to check all the boxes for removal. And, objectively, it is not close. The Trustee should be immediately removed for the benefit of the estate and its creditors.

For the reasons set forth herein, this Motion also includes a request for expedited determination in accordance with D. Me. LBR 9013-4(a)(2)(B).

In support of his Motion, Beliveau states as follows.

## I. Constitutional Authority, Jurisdiction, and Venue

1. The Court has constitutional authority to enter final orders on this Motion, it has jurisdiction over this case pursuant to 28 U.S.C. § 1334, this is a statutorily core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and venue is proper pursuant to 28 U.S.C. § 1409(a).

## II. Facts

2. On September 12, 2024 ("Filing Date"), multiple petitioning creditors, including Beliveau, commenced this bankruptcy case against Debtor through the filing of a Chapter 7 Involuntary Petition Against an Individual (D.E. 1).

3. On October 10, 2024, the Court issued its Order for Relief in an Involuntary Case ("Order for Relief") (D.E. 10).

4. On October 23, 2024, the Court issued its Order (D.E. 30) granting Debtor's Motion to Convert Case from Chapter 7 to Chapter 11 (D.E. 13).

5. On February 11, 2025, the Court issued its Order re-converting Debtor's case to one under Chapter 7 of the Code (D.E. 80).

6. On February 14, 2025, the Trustee was appointed successor Chapter 7 trustee (D.E. 88).

7. On February 18, 2025, Marcus Clegg Bals & Rosenthal ("Marcus Clegg") entered its appearance on behalf of Debtor (D.E. 92).

8. On February 25, 2025, Debtor signed and filed Amended Schedules under penalties of perjury (D.E. 94). Marcus Clegg filed the Amended Schedules as Debtor's counsel.

9. On May 5, 2025, an unsecured creditor in Debtor's case, Montresor LLC ("Montresor"), commenced an Adversary Proceeding against Debtor seeking the denial of his

discharge under § 727(a) of the Code. *See* Montresor LLC v. Kevin J. Mattson, Adv. Proc. No. 2025-2006 ("727 Proceeding").

10. Beliveau is a member of the limited liability company, Montresor.

11. From May to December 2025, Montresor conducted a substantial amount of discovery in the 727 Proceeding, including the service of subpoenas for documents and records upon numerous banks, lenders, businesses, and the accounting firm where Debtor (and his other 5 companies that filed Chapter 11 cases in 2024) had accounts or otherwise did business prepetition. That discovery process generated tens of thousands of pages of documents, bank statements, and other financial records.

12. On August 7, 2025, the Trustee commenced the Adversary Proceeding entitled, Edmond J. Ford, Trustee v. Terence Conklin, *et al.*, Adv. Proc. No. 25-2009 ("Tax Credit Proceeding"), against Marcus Clegg, Seton Unit 4, LLC ("Seton 4"), and Terence J. Conklin ("Conklin"). In his Complaint, the Trustee alleged three claims: (1) avoidance of a pledge from Debtor to Conklin under § 547 of the Code; (2) avoidance of a grant of a security interest from Debtor to Conklin in the Tax Credit (as defined in the Complaint/never-to-date scheduled by Debtor/discussed *ad nauseum* in this case) under § 544 of the Code; and (3) a declaratory judgment that the Tax Credit was property of the estate under § 541 of the Code (against Seton 4 and Marcus Clegg).

13. On December 3, 2025, the Trustee filed a Motion to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a) ("First Application to Compromise") (D.E. 178) seeking the Court's approval of a Settlement Agreement among the Trustee, Marcus Clegg, Seton 4, and Conklin relating to Debtor's case and the Tax Credit Proceeding.

14. On December 8, 2025, Montresor filed an Objection to the Proof of Claim of Conklin (Claim No. 33) (D.E. 182).

15. On December 12, 2025, Marcus Clegg filed a Motion to Withdraw as counsel for Debtor (D.E. 183).

16. On December 16, 2025, the Court issued its Order (D.E. 190) approving Marcus Clegg's request (D.E. 183) to withdraw.

17. On December 16, 2025, Debtor, then acting *pro se*, filed a Stipulation to Waiver of Discharge ("Waiver") (D.E. 191) in his case.

18. On December 17, 2025, the Court issued its Discharge Order in accordance with § 727(a)(10) and Debtor's Waiver. The issuance of the Discharge Order constituted a denial of Debtor's discharge under § 727(a)(10) as of that date. *See* Order, dated April 24, 2026 (D.E. 310). It also ended Montresor's 727 Proceeding (as moot).

19. On December 26, 2025, Montresor filed its First Objection (D.E. 201) to the Trustee's First Application to Compromise. In its First Objection, Montresor asserted that, *inter alia*, the proposed settlement among the Trustee, Marcus Clegg, Seton 4, and Conklin regarding the Tax Credit Proceeding was an abuse of the Trustee's discretion pursuant to Federal Rule of Bankruptcy Procedure 9019 and the factors under *Jeffrey v. Desmond*.

20. On January 19, 2026, the Trustee filed a 287-page Reply memorandum with exhibits in response to Montresor's First Objection and supporting the Trustee's First Application to Compromise (D.E. 211).

21. On January 31, 2026, the Trustee filed another Supplemental Memorandum in response to Montresor's First Objection and supporting of the Trustee's First Application to Compromise (D.E. 219).

22. On February 4, 2026, the Trustee filed a Motion for Steven M. Notinger, Esq. to appear *pro hac vice* in this case on the Trustee's behalf (D.E. 221). The Court granted that Motion the same day (D.E. 222).

23. On February 6, 2026, the Trustee filed yet another supplemental document in response to Montresor's First Objection and supporting the Trustee's First Application to Compromise (D.E. 225).

24. On February 19, 2026 – despite not being a party to the contested matter between Montresor and Conklin – the Trustee filed an Application to Compromise Montresor's Objection to Conklin's Proof of Claim (D.E. 230), purportedly under Federal Rule of Bankruptcy Procedure 9019.

25. On February 25, 2026, the Court conducted a hearing on the Trustee's First Application to Compromise and Montresor's Objection thereto. At the conclusion of that hearing, the Court denied the Trustee's First Application to Compromise for many of the reasons set forth in Montresor's First Objection and because the proposed settlement was an abuse of the Trustee's discretion. *See* Minute Order (D.E. 235).

26. On March 7, 2026, Montresor filed its Objection to the Trustee's Application to Compromise Montresor's Objection to Conklin's Claim (D.E. 236).

27. On March 16, 2026, the Trustee filed a Motion to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a) ("Second Application to Compromise") (D.E. 241) again seeking the Court's approval of a Settlement Agreement among the Trustee, Marcus Clegg, Seton 4, Conklin, and Geoff Houghton ("Houghton") in relation to Debtor's case, the Tax Credit Proceeding, and claimed avoidance claims against Houghton.

28. Also on March 16, 2026, Beliveau caused Debtor to be served with a Disclosure Subpoena 14 M.R.S. § 3122 for the purpose of ascertaining, in Maine District Court ("District Court"), Debtor's ability to pay Beliveau's Judgment against him. *See also* 14 M.R.S. § 3120 – 3138.

29. On March 31, 2026, the Court conducted a hearing on Montresor's Objection to Conklin's Claim and set it for an evidentiary hearing.

30. On April 6, 2026, Montresor filed its Second Objection (D.E. 263) to the Trustee's Second Application to Compromise. In its Second Objection, Montresor asserted that, *inter alia*, the proposed settlement among the Trustee, Marcus Clegg, Seton 4, Conklin, and Houghton was an abuse of the Trustee's discretion pursuant to Federal Rule of Bankruptcy Procedure 9019 and the *Jeffrey v. Desmond* factors.

31. On April 10, 2026, the Trustee filed an Application to Employ (D.E. 278) his firm, Ford, McDonald & Borden, P.A. ("FMB"), as counsel to the Trustee pursuant to § 327 of the Code. The Court granted that Application to Employ – without hearing – on April 13, 2026 (D.E. 286).

32. On April 10, 2026, the Trustee filed his Reply in support of his Second Application to Compromise, along with a Declaration under penalty of perjury executed by Debtor supporting the Trustee's Second Application to Compromise (D.E. 280).

33. On April 15, 2026, the Court conducted a hearing on the Trustee's Second Application to Compromise and Montresor's Second Objection thereto. At the conclusion of that hearing, the Court denied the Trustee's Second Application to Compromise for many of the reasons set forth in Montresor's Second Objection and because the proposed settlement was an abuse of the Trustee's discretion. *See* Minute Order (D.E. 290).

34. On April 18, 2026, the Trustee strangely filed a Motion to Approve Form of Notice of Compromise (D.E. 298) on the same terms advanced in his Second Application to Compromise. The next day, April 19, he withdrew it (D.E. 301).

35. On April 20, 2026, the Trustee filed a Motion to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a) ("Third Application to Compromise") (D.E. 302) once again seeking the Court's approval of a Settlement Agreement among the Trustee, Houghton, and indirectly Debtor relating to alleged avoidance claims against Houghton.

36. On April 22, 2026, the Trustee filed a Motion to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a) ("Fourth Application to Compromise") (D.E. 306) again seeking the Court's approval of a Settlement Agreement among the Trustee, Marcus Clegg, Seton 4, and Conklin in relation to Debtor's case and the Tax Credit Proceeding.

37. On May 12, 2026, Montresor filed its Third Objection (D.E. 327) to the Trustee's Third Application to Compromise. In its Third Objection, Montresor asserted that, *inter alia*, the proposed settlement among the Trustee, Houghton, and involving Debtor was an abuse of the Trustee's discretion pursuant to Federal Rule of Bankruptcy Procedure 9019 and the *Jeffrey v. Desmond* factors.

38. On May 13, 2026, Montresor filed its Fourth Objection (D.E. 330) to the Trustee's Fourth Application to Compromise. In its Fourth Objection, Montresor asserted that, *inter alia*, the proposed settlement among the Trustee, Marcus Clegg, Debtor, and Conklin was an abuse of the Trustee's discretion pursuant to Federal Rule of Bankruptcy Procedure 9019 and the *Jeffrey v. Desmond* factors.

39. On May 17, 2026, Beliveau and Montresor filed a Motion to Compel Abandonment (D.E. 332) of the state law claims against Beliveau and undersigned counsel scheduled by Debtor on his Amended Schedule A/B ¶ 33 as follows:

- "Claim against Severin Beliveau for breach of contract and fraud"
- "Claim against Randy Creswell for slander."

40. In their Motion to Compel Abandonment, Montresor and Beliveau indicated that Debtor testified under oath at his § 341 Meeting of Creditors on March 11, 2025 – conducted by the Trustee over 14 months earlier – that the basis for the scheduled fraud and breach of contract claims against Beliveau and his counsel related to the transactions involving Harpers Development, LLC ("Harpers Development"), the sale of the assets of Central Maine Commerce Center, LLP ("CMCC"), and Beliveau's purported improper receipt of funds in those transactions.

41. On May 27, 2026, the Trustee filed a "Position Statement" regarding Montresor's Objection to Conklin's Claim (D.E. 333).[1] In his Position Statement (p.1) concerning the contested matter in which he was not a party, the Trustee stated:

> "Until there are assets to be distributed to unsecured claims, the Claim Objection is inappropriate. The Trustee is directed by the statute to object to claims only 'if a purpose would be served.' 11 U.S.C. § 704(a)(5). No purpose is served objecting to the Conklin Claim where there is, as yet, no realistic likelihood of a distribution."[2]

42. The Trustee's Position Statement goes on to represent Conklin's interests and present his defenses for him to Montresor's Objection to the Claim – in the contested matter that

[1] A true copy of the Position Paper is attached hereto as Exhibit A.

[2] Of course, § 704(a)(5) does not apply to Montresor because it is not a trustee and it is entitled to object to any claim filed in the case as a party-in-interest. *See* 11 U.S.C. §§ 502(a), 502(b)(1). Perhaps it is not obvious, but the duties and fiduciary obligations set forth in § 704(a) only apply to trustees, such as the current Trustee here, not to creditors. The Trustee did state, though, in his Position Paper (filed 3½ months ago) there was "no realistic likelihood of a distribution" in this case. *See* Position Paper.

the Trustee was not a part of, did not need to be part of, and that he opted to insert himself into anyway on Conklin's behalf. *See* Position Paper, pp. 2 – 8.

43. On May 29, 2026, the Trustee filed his Objection (D.E. 337) to Montresor's and Beliveau's Motion to Compel Abandonment.

44. In his Objection to the Motion to Compel Abandonment, the Trustee indicated that the claims against Beliveau in his "Draft Complaint" potentially had value "in excess of $150,000." *See* Objection, p. 3.[3]

45. In his Opposition, the Trustee also wanted to make it clear (in his view anyway) that he had until October 9, 2026 to bring any claims against Beliveau and undersigned counsel, stating:

> "Delay to allow the Trustee to evaluate claims in the ordinary course will impose no hardship or cost on [Beliveau and Montresor – both creditors and parties-in-interest in the case] and will allow the Trustee the time to adequately investigate the claims." *Id.* ¶ 1.[4]

46. On June 1, 2026, Montresor and Conklin filed a Joint Motion to Approve Stipulation regarding Montresor's Objection to Conklin's Claim (D.E. 339). Montresor and Conklin had reached agreement to resolve their contested matter before the Trustee filed his Position Paper, but he did not know that at the time (because he was not part of the contested matter and neither Montresor nor Conklin needed to tell him that they had settled).

47. On June 4, 2026, Beliveau filed a Motion (D.E. 342) seeking a declaration that the post-petition $15,000 loan from Houghton to Debtor, which purportedly was the consideration

---

[3] A true copy of the Trustee's Objection and Draft Complaint are attached hereto as Exhibit B.

[4] *Compare with* 11 U.S.C. § 704(a) ("(a) The trustee shall – (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest") (emphasis added). The Trustee obviously does not care about Beliveau's interests as a creditor and party-in-interest in this case, or those of undersigned counsel as a potential target of litigation, but he is obligated to care about Montresor's interests, as another party-in-interest, for which the Trustee owes fiduciary duties under § 704(a)(1) of the Code. These are also the same claims the Trustee had actual knowledge of in March 2025, 15 months earlier.

for the Trustee's Third and Fourth Applications to Compromise, was not property of the bankruptcy estate and should be turned over to Beliveau pursuant to a turnover Order issued by the Maine District Court.

48. On June 11, 2026, the Trustee filed his Reply in support of the Fourth Application to Compromise (Tax Credit Proceeding) (D.E. 348). He also filed a Reply in support of his Third Application to Compromise (Houghton/avoidance) (D.E. 349).

49. On June 11, 2026, the Trustee filed his Objection to Beliveau's Motion seeking a determination that the post-petition loan to Debtor was not estate property (D.E. 350).

50. On June 12, 2026, the Trustee filed another Reply (D.E. 352) to Montresor's Fourth Objection to the Fourth Application to Compromise (Tax Credit Proceeding).

51. On June 16, 2026, the Court conducted a hearing on the Trustee's Third Application to Compromise and Montresor's Third Objection thereto. At the conclusion of that hearing, the Court denied the Trustee's Third Application to Compromise for many of the reasons set forth in Montresor's Third Objection and because the proposed settlement was an abuse of the Trustee's discretion. *See* Minute Order (D.E. 355).

52. On June 16, 2026, the Court conducted a hearing on the Trustee's Fourth Application to Compromise and Montresor's Fourth Objection thereto. At the conclusion of that hearing, the Court denied the Trustee's Fourth Application to Compromise for many of the reasons set forth in Montresor's Fourth Objection and because the proposed settlement was an abuse of the Trustee's discretion. *See* Minute Order (D.E. 356).

53. On June 16, 2026, the Court conducted a hearing on Beliveau's Motion seeking a determination that the post-petition loan to Debtor was not estate property. At the conclusion of that hearing, the Court granted Beliveau's Motion and overruled the Trustee's Objection thereto

finding that Houghton's $15,000 loan to Debtor was just that, a post-petition loan and not property of the estate as wrongly argued by the Trustee (D.E. 360).[5]

54. On June 16, 2026, the Court conducted a hearing on Beliveau's and Montresor's Motion to Compel the Trustee to abandon the state law claims against Beliveau and undersigned counsel. At the conclusion of that hearing, the Court denied the Motion to Compel Abandonment and sustained the Trustee's Objection thereto (D.E. 357).

55. On July 8, 2026, the Trustee filed a Motion to Approve Compromise Pursuant to Fed. R. Bankr. P. 9019(a) ("Fifth Application to Compromise") (D.E. 369) once again seeking the Court's approval of a Settlement Agreement among the Trustee, Marcus Clegg, Seton 4, and Conklin in relation to Debtor's case and the Tax Credit Adversary Proceeding.

56. Because the Fifth Application to Compromise resolved nothing, left all the parties in the exact same place they were in one year before, and did nothing to address or resolve the Tax Credit or the estate's entitlement to it, Montresor and Beliveau filed nothing with respect to that proposed "compromise."

57. On August 4, 2026, the Court issued its Order approving the Trustee's uncontested Fifth Application to Compromise.

58. On September 18, 2026, the Trustee filed his Motion for Alan L. Braunstein, Esq. to appear in the case on his behalf, *pro hac vice* (D.E. 407). That Motion was granted by Order dated September 21, 2026 (D.E. 409).

59. On September 20, 2026, the Trustee filed his Application to Employ (D.E. 408) Attorney Braunstein and Riemer & Braunstein ("R&B") as counsel to the Trustee pursuant to §

[5] On June 22, the Trustee delivered Debtor's $15,000 to undersigned counsel for payment to Beliveau per the Maine District Court's Turnover Order.

327 of the Code. The Trustee requested that the Application to Employ be approved without hearing under D. Me. LBR 9013-3(a).

60. On September 21, 2026, the Clerk scheduled a hearing for October 6, 2026 on the Trustee's Application to Employ Attorney Braunstein and R&B (D.E. 410).

61. On September 23, 2026, the Trustee, FM&B, Attorney Braunstein, and R&B filed an 11-count, 49-page Adversary Proceeding Complaint against Beliveau, his wife Cynthia Beliveau, and two former friends and business "partners" of Debtor, thereby initiating the Adversary Proceeding entitled, Edmond J. Ford, Trustee v. Severin M. Beliveau, et al., Adv. Proc. No. 2026-2020 ("R&B Proceeding").

62. In the over 2 years from the Filing Date, and the 1 year, 7 months, and 15 days since the appointment of the Trustee, here is the tally for what the Trustee has to show for his "administration" of the estate:

| | |
|---|---|
| Total Amount of Claims Filed Against Estate: | $12,149,843.68 |
| Total Claims Filed: | 41 |
| Total Professionals Employed by Trustee:[6] | 3 |
| Pending Professional Applications to Employ:[7] | 1 |
| Adversary Proceedings Commenced: [8] | 4 |
| Applications to Compromise Filed: | 7 |

[6] FM&B, Verdolino & Lowey, P.C., and Jason Mills.

[7] R&B.

[8] Tax Credit Proceeding, 727 Proceeding, a recent Adversary Proceeding against Adam Mattson for ~$35,000, and now the R&B Proceeding. The only successful one to date is Montresor's 727 Proceeding. The 41 creditors that filed claims in excess of $12.1 million dollars can send thank-you notes to Montresor to the address in undersigned signature's block below.

| | |
|---|---|
| Applications to Compromise Granted:[9] | 3 |
| Applications to Compromise Denied:[10] | 4 |
| Number of Docket Entries: | 413 |
| Accrued Administrative Expenses under § 503(b):[11] | Who knows |
| Recoveries for estate: | $6,500 |
| Post-petition Debtor funds lawfully intercepted by creditors that should have become property of the estate: | $15,000 |

## III. Discussion

### A. The First Circuit Applies a Totality of the Circumstances Test for Removal of Chapter 7 Trustees for "Cause" under § 324(a) – All the Relevant Factors Support Removal of the Trustee Here

63. Section 324 of the Code provides as follows:

(a) The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause.

(b) Whenever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise.

64. "Pursuant to 11 U.S.C. § 324(a), a trustee can be removed from a pending case for 'cause' after notice and a hearing. [A]lthough sufficient cause is not defined in the Bankruptcy

---

[9] All unopposed.

[10] All contested, with no less than 20 objections, replies, and supplements filed in relation thereto.

[11] It has to a be a lot since we are approaching 2 years with three employed professionals and a Trustee that indicated in filings that he, personally, spent well over 100 hours assessing the Tax Credits alone. It took Montresor's counsel maybe an hour to conclude that the unscheduled refundable Tax Credits were property of the estate. *See, e.g., In re Woodside*, 538 B.R. 518, 523 (Bankr. C.D. Ill. 2015) ("Refundable credits are a different story. The ACTC's [Additional Child Tax Credit] refundable nature means that a taxpayer has a statutory right to receive a refund that exceeds his tax payments if certain conditions are met, including that the CTC is not fully used up to offset tax liability. The fact that the taxpayer's entitlement to the refund is contingent does not matter, as contingent payment rights are nonetheless property of the estate…. The clear majority rule is that debtors have a contingent interest in the ACTC refund for the tax year during which the bankruptcy petition was filed and that the prepetition portion of the refund is property of the estate. *In re Atwood*, 2014 WL 2860992 (Bankr.S.D.Ind.2014) (collecting cases). A debtor's right to receive a refundable ACTC is correctly treated as a property interest that becomes property of the estate by operation of section 541 and that is subject to exemption under section 522.").

Code, it is left for the courts to determine on a case by case basis. *In re AFI Holding, Inc.,* 355 B.R. 139, 148 (B.A.P. 9th Cir.2006) (citing 3 Collier on Bankruptcy ¶ 324.02, at 324–3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2006))." *In re Lupo*, 2011 WL 477856, at *3 (Bankr. D. Mass. Feb. 3, 2011).

65. "Causes for removal include situations in which the trustee is found to be incompetent or unwilling to perform the duties of a trustee; the trustee is not disinterested or holds an interest adverse to the estate; the trustee violates the fiduciary duty to the estate; and where the trustee is guilty of misconduct in office or personal misconduct." *In re Morgan*, 375 B.R. 838, 848 (B.A.P. 8th Cir. 2007), *aff'd,* 573 F.3d 615 (8th Cir. 2009); *In re Wring*, 2015 WL 3824860, at *3 (B.A.P. 6th Cir. June 22, 2015) ("A trustee may be removed under Section 324(a) of the Bankruptcy Code for cause, which case law has defined as including incompetence or being unwilling to perform.").

66. "Whether a trustee should be removed under § 324 is left to the sound discretion of the bankruptcy court." *In re Soori-Arachi*, 2019 WL 5405186, at *1 (Bankr. D.R.I. Oct. 22, 2019) (citation omitted).

**B. <u>The Trustee Has Repeatedly Demonstrated A Stunning Lack of Competence</u>**

67. The Trustee is not competent. It is not subject to credible dispute.

68. There is no way to objectively look at the docket in this case, and the volume of filings and positions of the Truste over the past 18 months, and conclude that the Trustee has performed his duties as Chapter 7 competently. It is undeniable that he has not, and he is not going to figure it out now and going forward, because he is both incapable of doing so and he rejects any suggestions, gentle (Court) or otherwise (Montresor), for how he can competently do

his job.[12] It cannot be credibly argued otherwise. That alone constitutes "cause" for removal under § 324(a) of the Code.

69. From re-conversion of the case in February 2025 to the present, the Trustee's "administration" of the estate is and has been a complete fiasco and a waste of time, money, judicial resources, and missed opportunities to maximize value for estate creditors.

70. The instances of the Trustee's incompetence are many.

71. One, the Tax Credit. Handled competently, the Trustee would have informed Marcus Clegg, Debtor, Seton 4, and Conklin by letter that the Tax Credit, as a refundable tax credit, was property of the estate as of the Filing Date. *See* 11 U.S.C. § 541. That letter would have further informed those parties that if any of them received from Maine Revenue Service ("MRS") any portion of the Tax Credit in the form of money, from 2023 and 2024 in particular, that they were obligated to turn over those funds to the Trustee. *See* 11 U.S.C. §§ 541, 542, 543. The Trustee's letter would have concluded with a warning that if they failed to turn over any and all funds received from MRS, then the Trustee would seek damages and relief against them for intentional violation of the automatic stay and otherwise. *See* 11 U.S.C. §§ 362(a), (k), 549, 550, 551. And that would have been that. Drafting the letter would have taken an hour.

72. But instead, the Trustee commenced the pointless Tax Credit Proceeding to have the Court determine (*i.e.*, confirm) the legal and indisputable truism that the Tax Credit was property of the estate. And in the process it wasted a massive amount of people's time and money, not to mention judicial resources on hearings and briefing. In that adversary proceeding

[12] In Montresor's Objection to the Trustee's Fourth Application to Compromise, it literally drew the Trustee a map in the Conclusion section for how he could accomplish everything he had tried, and failed for almost a year, to accomplish with respect to the Tax Credit, the Tax Credit Proceeding, Marcus Clegg, Conklin, and the avoidance claims against Houghton. *See* Exhibit C attached hereto. But that would have required the Trustee to admit that he was wrong and opposing counsel was right. It is not something the Trustee is capable of doing, as this debacle of a Chapter 7 case demonstrates. At the hearing on the Trustee's Fourth Application to Compromise, the Court even alluded to the road map laid out by Montresor in its Fourth Objection, but the Trustee still had to do it his way.

as well, the Trustee also inexplicably sued Conklin for avoidance of the Pledge and avoidance of Conklin's security interest potentially in the Tax Credit. Why? That makes no sense. Just sue to avoid the security interest and preserve that lien for the estate under §§ 547, 550, and 551. Avoidance of the Pledge is completely unnecessary and counterproductive frankly.

73. And then what happened? Conklin admitted that he never perfected his security interest in the Pledge. So the Trustee's lien avoidance preference claim was a slam dunk, right? All the Trustee needed to do at that point was file a motion for judgment on the pleadings under Rule 12(c) and win and preserve the lien in the Tax Credit for the benefit of the estate.

74. But he did not. No, the Trustee could not figure out how to win that case for the estate's benefit under §§ 547, 550, and 551, so the Tax Credit Proceeding languished for a year until the Trustee declared victory and walked away from the litigation entirely without having resolved a single thing. *See* Trustee's Fifth Application to Compromise.

75. Two, while the Tax Credit Proceeding was pending, the Trustee tried – and failed – 4 times over the course of 7 months to settle that litigation, inexplicably, for the benefit of Marcus Clegg, Debtor, Seton 4, and Conklin.

76. Why the Trustee sought to settle the case for the benefit of those parties and not the bankruptcy estate is a complete mystery. The most likely reasons are his legal incompetence in understanding the substantive law applicable to the Tax Credit and how avoidance claims work under § 547. Plus, he was also beginning to embark on his collusion with Debtor to retaliate against Beliveau and Montresor's for their mounting legal successes against both Debtor and the Trustee in this case and in the 727 Proceeding. Either way, none of that is good, and it plainly constitutes cause for removal under § 324(a) of the Code.

77. But even putting the Trustee's improper motivations and lack of substantive understanding of the law aside (for now), the fact remains that he was unable to competently formulate and execute a Court-approvable settlement with any parties in this case under literally the most forgiving legal standard imaginable – the trustee's business judgment under Rule 9019. *See, e.g., In re Murphy*, 288 B.R. 1, 5 (D. Me. 2002) ("The decision of the trustee will not be disturbed unless it is shown that the trustee acted in an irrational, arbitrary, or capricious manner, clearly contrary to reason and not justified by the evidence.") (citation omitted).

78. On 4 separate occasions, by necessity given the applicable legal standard, this Court concluded that the Trustee had "acted in an irrational, arbitrary, or capricious manner, [and] clearly contrary to reason and not justified by the evidence," because on 4 separate occasions the Court denied the Trustee's applications to compromise.

79. Until this case, undersigned counsel has never been involved in any Chapter 7 case in over 25 years of practice in which a trustee's application to compromise was denied. Not once. In this case, it happened 4 times.

80. Yet it somehow gets worse with regard to the Trustee's Third and Fourth Applications to Compromise. With respect to the Third Application to Compromise, any competent bankruptcy associate or trustee can settle, and then have approved by the bankruptcy court, an avoidance claim for $37,000 in exchange for a settlement payment of $10,000. It is not remotely difficult. Done correctly, it is also not remotely capable of successful challenge by any party-in-interest. Same with the Fourth Application to Compromise.

81. Except in this case – not only were both applications to compromise done incompetently, but that incompetence resulted in actual harm to the bankruptcy estate because the estate lost the ability to recover $15,000 (which would have tripled the amount the Trustee

has recovered to date) from those proposed compromises. Instead, that $15,000 was legally intercepted by Beliveau and applied to his judgment against Debtor. That undoubtedly did not sit well with either the Trustee or Debtor.

82. Why? How? How can that possibly happen?

83. Well, not only because of the Trustee's incompetence in concocting the Rube Goldberg mechanism for the flow of money from Houghton to Debtor to the Trustee (to hold for Debtor), but because the Trustee was then (and is now) taking direction from Debtor on how to structure proposed deals and run the Chapter 7 case. Why the Trustee is taking direction from Debtor on the administration of the estate is inexplicable.

84. Four, the Trustee's pending Application to Employ Attorney Braunstein and R&B as his 2nd counsel in this case has been incompetently handled. That incompetence has both exposed the estate to even deeper administrative insolvency and diminution, but it has harmed R&B as well. And it says a ton about the Trustee's lack of confidence in his own firm, FM&B, in being able to perform the functions of Trustee's counsel that he represented to the Court 6 months ago they possessed.

85. On September 20, 2026, the Trustee filed his Application to Employ Attorney Braunstein and R&B as his 2nd counsel in this case (D.E. 408). The Trustee apparently needs more lawyers to represent him in his administratively insolvent case.

86. On September 23, 2026, the Trustee, with Attorney Braunstein and his firm as proposed counsel, commenced the R&B Proceeding against Beliveau, his wife, and others (D.E. 411).

87. It is fair to say that it probably took Attorney Braunstein and the Trustee more than 3 days to churn out the 49-pages of made-up legal nonsense set forth in the Complaint in the

R&B Proceeding. Assuming that is the case, and because retention of professionals in Chapter 7 under D. Me. LBR 2014-1(b)(1) is effective only as of the date of an application to employ, the Trustee has harmed the estate by potentially creating a § 503(b)(3) substantial contribution administrative claim against the estate for all the time R&B expended in research, preparing, and drafting its 49-pages of the made-up legal nonsense prior to September 20.

88. That could have been easily avoided if the Trustee had simply, and competently, filed the application to employ before R&B spent the time and effort ginning up its retaliatory action against Beliveau to assuage the Trustee's and Debtor's hurt feelings of being "wronged" and embarrassed by Beliveau and Montresor in the case.

89. But seeking the Court's permission to employ R&B before drafting the complaint and filing the R&B Proceeding would not do from the Trustee's perspective. Because the Trustee knows, and he certainly should know, that he would have run the risk of being told by the Court, no, you had 20 months to move this Chapter 7 case forward but you failed to do so despite the clear mandate in § 704(a)(1), so the case should be wound up – not blown up – and you are not going to be permitted to launch off 3 more years of jury-trial litigation and appeals on bogus claims in an effort to punish Beliveau to assuage yours and Debtor's hurt feelings.

90. So, instead, the Trustee consciously sought forgiveness, not permission. He filed the Application to Employ after having R&B prepare and filing the Complaint. Apparently, despite all evidence to the contrary in this case, the Trustee still appears to believe that this Court is his rubber stamp. *See* D. Me. LBR 9013-3(a); Federal Rule of Bankruptcy Procedure 9019. Fortunately, the Court scheduled the matter for hearing on October 6.

91. On October 6, Beliveau asserts that the only stamp that should be applied to the Trustee's incompetently prepared Application to Employ R&B is a rejection.

92. The Application to Employ is also incompetently prepared because, *inter alia*, it fails to comply with Local Rule 2014-1(c) concerning the "particularized, case-specific summary of the services to be performed by the professional. The application shall include a good faith estimate of the anticipated range of fees to be charged for such work. If the range of fees is impossible to forecast, the application shall explain why." The Trustee's Application to Employ R&B is completely devoid of any such information, for transparently obvious and cynical reasons.

93. Nor does the Application to Employ R&B comply with Local Rule 2014-1(a)(1), because Attorney Braunstein's Signed Statement of Professional Person fails to actually list all the potential parties and connections to R&B has to the case as required by Local Form 1.

94. With respect to the R&B Proceeding Complaint itself, one final and additional notable instance of incompetence must be discussed here: The comparison – and utter incongruity – of the new, improved, and completely made-up R&B Complaint with the Draft Complaint the Trustee was shopping and threatening people with (to no avail) in late March 2026.

95. It is clear that something happened between April and September 2026 to cause the Trustee to completely reverse course on his legal theories for recovery against Beliveau and others. The Court will recall, in March 2026, the Trustee was begging people to tell him why his Draft Complaint against Beliveau, John Orestis, CMCC, and Chris Harte for $150,000 was factually or legally baseless, but no one took the bait. Notably, nowhere does the Draft Complaint ever once mention a completely secret and unstated "partnership" between Beliveau and Debtor as a potential basis for relief. Nevertheless, the Trustee, lacking any courage of his convictions or confidence in his own pleading, went dark on everyone.

96. Then June 16th happened. On June 16, this Court denied the Trustee's Third and Fourth Applications to Compromise. Not only that, Beliveau's motion seeking the $15,000 was granted. That apparently was all too much for the Trustee to bear.

97. For his part, at the conclusion of that hearing, Beliveau "heard" the Court loud and clear that the case and all the various litigations, filings, briefings, and disputes really needed to come to an end. Since June 16, Beliveau and Montresor have made no filings in Debtor's case.

98. But that was not going to work for the Trustee. How else would he be able to get back at Beliveau and Montresor, and their counsel, for all his embarrassing losses over the prior year?

99. Not content to let well enough alone, the Trustee sought to engage Attorney Braunstein and R&B at some point (maybe at ABI in July?) without this Court's advance knowledge of his intentions, to concoct a brand new secret "partnership" legal theory so they could file a raft of spurious claims against Beliveau and his wife for, no, not just $150,000, that is far too low. That will not do. No, their claims would have to be for millions and millions of dollars. Yes, much better. Millions and millions of dollars is much better than $150,000.

100. If the claims in the newly-minted R&B Proceeding are valid, then the Trustee (and his firm) is completely incompetent because he failed to include them in the Draft Complaint that he threatened people with in March 2026. Period.

101. If the claims in the new R&B Proceeding are all entirely made up – which, they are – then the Trustee (and R&B) is completely incompetent because he does not understand super basic legal principles and valid causes of action. Period.

102. Incidentally, what happened to the Trustee's purported claims against Orestis, Harte, and CMCC? If those claims were legitimate in March 2026 when the Trustee was peddling to his Draft Complaint to their counsel, then why are they not named as parties in the R&B Proceeding? (No answer necessary).

103. This latest bit is all a sham. That the Trustee is incompetent is obvious.

> Not only does [the trustee] purport to be a priority creditor and the holder of an administrative claim, she has 1) impugned the integrity of the bankruptcy process; 2) impugned the integrity and competence of the bankruptcy professionals involved in the case; 3) demonstrated a disregard for the orderly administration of the case by filing numerous duplicative and frivolous pleadings, which establish ignorance of the law and the practicalities inherent in the administration of a Chapter 7 bankruptcy case; 4) caused unnecessary expense to the estate; and 5) caused needless delay because of the necessity of parties in interest to respond to her numerous filings.

*In re Lupo*, 2011 WL 477856, at *3 (Bankr. D. Mass. Feb. 3, 2011).

### C. The Trustee's Indifference to His Admitted Lack of Diligence in Expeditiously Administering the Estate, all of Which Constitutes Cause for Removal for Breach of Fiduciary Duty

104. "Cause" exists under § 324(a) when the trustee "unreasonably delays in the performance of . . . duties." *In re Drinkwater*, 178 B.R. 590, 594 (Bankr. D. Mass. 1995).

105. The Trustee's expressed view for when and how he is statutorily required to administer the estate under § 704(a) is, I will get to it, when I get it, and I have until the expiration of the §§ 108 and 546 statute of limitations periods (on October 9, 2026) to get to it.

106. The Trustee's imperious view of his obligations under § 724(a) is incompatible with his fiduciary duties under the plain language of the statute. *See* 11 U.S.C. § 704(a)(1) ("The trustee shall – (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest") (emphasis added).

107. So the Trustee did eventually get around to "it" by filing the R&B Proceeding against Beliveau, his wife, and Debtor's former friends and business "partners" on September 23, 2026 – never mind that the Trustee has known about the claims and allegations set forth in that Complaint since March 2025 (and he was threatening people with a completely different draft complaint and legal theory a one year after that, in March 2026). "Expeditiously" is a relevant term for the Trustee.

108. Regardless, it is simply too late to bring the R&B Proceeding at this terminal stage of the case. The Trustee's failure to bring that action far earlier in the case, a year ago, 6 months ago, and on whatever legal theory *du jour* suited him at the time, is a breach of his fiduciary duties under § 704(a)(1).

> Notwithstanding these many warning signs, the Trustee took no action in the probate proceeding to have an alternate executor appointed, and she inordinately delayed pursuing any action in the bankruptcy court to recover assets from the Gremminger estate to which the bankruptcy estate legally was entitled. Moreover, the Trustee neglected to provide a written response to any of Lamesa's inquiries, and she made no formal demand, prior to 2005, that the Schoolers turn over the assets they received from the Gremminger estate….
>
> When the Schoolers did not promptly acknowledge and fulfill their obligation to turn over the assets to the bankruptcy estate, the Trustee should have pursued other options for seizing the inheritance…. Under the circumstances presented here, the Trustee's failure to do so demonstrated an indifference on her part to fulfilling her duties to "collect and reduce to money the property of the estate for which [she] serve[d], and close such estate as expeditiously as [was] compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1).

*In re Schooler*, 725 F.3d 498, 513 (5th Cir. 2013); *Sheehan v. Scotchel*, 536 B.R. 166, 168 (N.D.W. Va. 2015) ("The Scotchels' concern regarding inaction by the Trustee to pursue or sell the claim is warranted in light of his statutory obligation to 'collect and reduce to money the property of the estate' as expeditiously as possible. 11 U.S.C. § 704(a)(1)").

> Section 324(a) provides that after notice and hearing the Court may remove a trustee for cause. Cause as used in the aforestated section is not defined in the

> Code and must be determined on a case to case basis. *Colliers Bankruptcy Practice Guide,* Vol. 2, § 29.02. Consequently, "cause" to remove a trustee within the meaning of § 324(a) may be found where a trustee fails to comply with one or more of his obligations as listed in § 704.
>
> Fifteen months have transpired since trustee's appointment. The trustee's failure to expend reasonable efforts to sell chattels, turn over leased premises, or undertake efforts to collect on either the insurance claim or the mortgage shows a lack of due diligence in carrying out his duties under 704(1).

*Matter of Island Amusement, Inc.*, 74 B.R. 18, 20 (Bankr. D.P.R. 1987).

109. Finally, here, the Trustee's failure to conduct any transparent cost-benefit analysis prior to the filing of the R&B Proceeding is also a breach of his fiduciary duties under § 704(a)(1), particularly given the hard facts of the case.

> Although "a trustee or debtor-in-possession has a substantial degree of prosecutorial discretion to sue or not to sue," *In re V. Savino Oil & Heating Co.,* 91 B.R. at 656; *see In re Photo Promotion Assocs., Inc.,* 881 F.2d 6, 8 (2d Cir.1989) (recognizing "the broad discretion a bankruptcy judge has in applying [ ] § 549(a)"), it would be an abuse of discretion to bring an action to set aside a post-petition transfer if it would not financially benefit the estate. In order to make this assessment, a trustee must conduct a cost-benefit analysis. As explained in *In re C. Keffas & Son Florist, Inc.,* 240 B.R. 466, 474 (Bankr.E.D.N.Y.1999):
>
> [i]f the trustee fails to make this necessary cost-benefit analysis, then the trustee will necessarily breach the statutory mandate under 11 U.S.C. § 704(1) .... This is not an instance of second-guessing the trustee in a retrospective analysis at the end of the case. It is very definitely an ex ante, and not an ex post, approach that is mandated by the trustee's statutory duty of maximizing proceeds of distribution to the creditors, net administrative expenses, and distributing those proceeds as expeditiously as possible. *The proper application of this ex ante analysis does-it is undeniable-require the exercise of practical judgment.*
>
> *If a trustee incurs transaction costs for the estate when no purpose would be served by [such conduct], then that constitutes a per se breach of that duty.*

*In re Bean*, 251 B.R. 196, 204 (E.D.N.Y. 2000), aff'd, 252 F.3d 113 (2d Cir. 2001) (emphasis in original).

110. There are over 41 creditors with $12.1 million dollars of allowed claims in the case. The Trustee has collected $6,500 to date for the estate. How deep the current administrative insolvency of the case is today is anyone's guess.

111. Jason Mills and Verdolino & Lowey, P.C. have been an estate professional since March 5, 2025. The Trustee's firm has been employed since April 10, 2026. R&B now has a potential administrative expense claim against the estate under § 503(b). No one, to date, as filed a fee application. It is therefore presently impossible for anyone other than potentially the Trustee, including the Court, to determine how deep the administrative expense hole is before any net recoveries could even possibly flow to prepetition creditors. But that is not information the Trustee has shared with anyone (and you would not if you were him). Maybe the Trustee just wants to run the R&B Proceeding to punish Beliveau and (hopefully) pay himself and his firm, prepetition creditors of the estate be damned.

112. Beliveau knows that Mr. Mills has spent considerable amounts of time reviewing documents, bank records, tax records, corporate documents, litigation filings in prepetition cases involving Debtor, because undersigned counsel provided all those materials to the Trustee and Mr. Mills in 2025. Remember all those tens of thousands of documents, bank records, and the rest that Montresor received in discovery in the 727 Proceeding, well, it voluntarily produced and transferred those materials and information to the Trustee to aid the Trustee in his administration of the estate and pursuit of potential claims.

113. What is most interesting is that over the past 19 months, undersigned counsel can document and identify when Mr. Mills and the Trustee accessed those records and materials it produced and transferred, because they had to be transferred via this firm's share-file program,

Titan. The files were far too large to email given their volume. Titan generates a notice to the host (me) each time the files are accessed to a transferee.

114. Almost without fail, Mr. Mills and the Trustee have accessed those files and records most frequently immediately after the Trustee either lost a contested matter before the Court in which Montresor or Beliveau were the opposing party, or he tried to engage undersigned counsel via email with threats to bring claims against Beliveau, only to be rebuffed in direct terms.

115. Basically, Beliveau and Montresor voluntarily provided the Trustee with a massive amount of information well over a year ago to purse claims on behalf of the estate, and, as it turns out now almost 17 months later, the only claims he is pursuing are against Beliveau in the R&B Proceeding on completely invented legal theories. Admittedly Montresor and Beliveau did not anticipate that the Trustee would ultimately use all the materials and documents provided to assert claims against Beliveau. But it is what it is. The Trustee is just not someone that can be trusted (pun intended). The world is full of people like that.

116. At any rate, what is the Trustee's plan now?

117. Recover millions and millions of dollars from Beliveau in the R&B Proceeding, pay all administrative expenses claims in full, and generate a meaningful dividend distribution (is 1% meaningful? 3%?) to the $12.1 million dollars of claim holders? How much is the R&B Proceeding going to cost the estate, assuming the Complaint is not completely eliminated on a Rule 12(b)(6) motion? Two? Three? Four hundred thousand dollars after a jury trial in Bankruptcy Court and all appeals are exhausted?

118. How collectible is Beliveau? Is the Trustee going to discover three years from now that a 92-year old Beliveau or his estate is judgment proof?

119. And how much exposure does the estate, the Trustee personally, Attorney Braunstein personally, and their firms have to Beliveau on his counterclaims when he files them in the R&B Proceeding (assuming the case is not eliminated under Rule 12(b)(6) – or, better yet, is completely shut down now by the Court before the Trustee wastes any more of people's time, money, and resources because he is embarrassed and upset and needs to have his feelings and "authority" vindicated).

120. Beliveau will not settle the R&B Proceeding if it advances. He has zero incentive to, and he has zero liability to the estate. But he does have every incentive to collect from R&B, FM&B, the Trustee, and Attorney Braunstein on his counterclaims. At least R&B is collectible.[13]

121. The answers to all these questions are – who knows – because the Trustee did not transparently go through any of those analyses prior to surreptitiously filing the R&B Proceeding and asking this Court to rubber stamp his latest complete failure-of-judgment (executed after-the-fact).

> In other words, the Trustee had discretion to seek to avoid the transfers. In exercising his discretion for the benefit of the bankruptcy estate and its creditors, the Trustee was obliged to undertake a cost-benefit analysis before moving to avoid the post-petition transfers…. This, he candidly admits, Trustee Jerry Burns did not do.

*Peoples Bank & Tr. Co. v. Burns*, 95 Fed. Appx. 801, 806 (6th Cir. 2004).

122. All of this constitute breaches of the Trustee's fiduciary duties under § 704(a)(1) of the Code and further supports his removal.

[13] The R&B Proceeding is sort of like a hegemon unmoored from reality starting a war with a third-tier power for no objectively intelligible reason, with no clearly stated goals to be accomplished, no appreciation of any critical choke points to undermine the entire operation, no thought-out exit strategy, ever-shifting rationalizations for its own failings and the "necessity" of the war in the first place, no way to unilaterally bring the war to a close, and zero understanding of what actually motivates the individuals controlling the third-tier power. Such a war like that only ends when the perceived lesser of the two combatants says it does.

### D. The Trustee Has a Conflict of Interest Because the Bankruptcy Estate Possesses Malpractice Claims against the Trustee and his Firm, FM&B

123. The Trustee's incompetent and inept handling of the flow of settlement monies in relation to the Third and Fourth Applications to Compromise directly caused the estate to suffer the harm of the loss of $15,000, which, had it been handled with the appropriate standard of care, would not have occurred.

124. The Trustee and his firm, FM&B, committed malpractice while representing the Trustee in this case as estate professionals, and the Trustee is now required on behalf of the estate to pursue that malpractice claim against FM&B. Given that the Trustee has only recovered $6,500 in 2 years of administering the estate, the recovery of $15,000 is not an immaterial amount under those circumstances.

125. Because the Trustee, himself, has a conflict of interest between the estate and his status as a member of FM&B, he must be removed and replaced with a successor trustee that can pursue that malpractice claim for the benefit of the estate. *See In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987) ("The test must be more an objective one. The question is not necessarily whether a conflict exists – although an actual conflict of any degree of seriousness will obviously present a towering obstacle – but whether a potential conflict, or the perception of one, renders the lawyer's interest materially adverse to the estate or the creditors.").

126. Also, in the event that the R&B Proceeding is permitted to or does proceed, then, assuming the Complaint survives a Rule 12(b)(6) motion, the Trustee is going to be sued, personally, by Beliveau and his wife in their counterclaim. So is his firm, Attorney Braunstein personally, and R&B. With respect to the Trustee, that is going to create a conflict of interest, because his personal interests in defending that action will diverge from the interests of the estate in limiting its exposure to Beliveau in favor of placing that exposure on the Trustee, personally.

> [T]his court has explained that a trustee acting with the explicit approval of a bankruptcy court is entitled to absolute immunity, as long as there has been full and frank disclosure to creditors and the court.... This view has found near-universal favor elsewhere…. Only if a trustee prevaricates or otherwise acts in bad faith does he doff the cloak of derived judicial immunity.

*In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999). The Trustee here is well beyond prevarications and bad faith.

127. "In our view, *Mosser,* properly construed, strongly indicates that parties interested in the administration of a bankruptcy estate can seek to surcharge the trustee for negligence." *Id.*, at 7.

> More importantly, the reasoning depends on a misunderstanding of the word "surcharge," which is most fittingly defined as "[t]he imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of his fiduciary duties." *Black's Law Dictionary* 1441 (6th ed.1990). Given this definition, there is simply no principled way after *Mosser* to avoid the conclusion that a bankruptcy trustee can be personally liable for negligent breach of fiduciary duty. It follows inexorably that LeBlanc's pleading, taken in isolation, states a cause of action upon which relief can be granted.

*Id.*

> Of course, a party who becomes aware of actions by a trustee that lead to a diminishment of estate assets could also move the court for the removal of the trustee pursuant to 11 U.S.C. § 324. The successor trustee could then investigate and pursue an action for damages, if the situation so warranted. *See San Juan Hotel Corp.,* 847 F.2d at 935; *Kates v. Transamerica Ins. Group (In re Prairie Cent. Ry.),* 209 B.R. 232, 236 (Bankr.N.D.Ill.1997) (Chapter 7 trustee has standing to sue former Chapter 11 trustee for breach of fiduciary duty).

*In re J.F.D. Enterprises, Inc.*, 223 B.R. 610, 622 (Bankr. D. Mass. 1998), *aff'd sub nom. DiStefano v. Stern*, 236 B.R. 112 (D. Mass. 1999), *aff'd sub nom. In re JFD Enterprises, Inc.*, 215 F.3d 1312 (1st Cir. 2000).

128. These factors also support removal of the Trustee (among other relief).

**E. The Trustee Lacks Disinterestedness Because he is Aligned with Debtor to Financially Harm Beliveau in Retaliation for Beliveau's Participation in the Commencement of Involuntary Proceeding and for Exposing the Trustee's <u>Multiple Abuses of Judgment, Negligence, and Failings in this Case</u>**

129. "'Cause' may be an adverse interest to the estate. *See* 11 U.S.C. § 101(14)(C)." *In re Lupo*, 2011 WL 477856, at *3; *In re Drinkwater*, 178 B.R. at 594 ("Cause has been found to exist, inter alia, where the trustee is not disinterested[.]")

> According to the United States Court of Appeals for the First Circuit, an "adverse interest" is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate. *See Rome v. Braunstein,* 19 F.3d 54, 58 n. 1 (1st Cir.1994). Additionally "cause" may include incompetence or violation of a trustee's fiduciary duties. *See In re AFI Holding, Inc.,* 355 B.R. at 148.

*In re Wring*, 2015 WL 3824860, at *3.

> There is no question that the purpose of the incorporation of the disinterest requirement of 11 U.S.C. § 327 was to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration. Certainly a 'disinterested' person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.

*In re Martin*, 817 at 181.

> Even if an appearance of impropriety is not an adequate basis upon which to disqualify an employed professional, *see Tevis,* 347 B.R. at 688 (stating that what constitutes material adversity for a lawyer is defined by neither bankruptcy law nor other federal law, but by California state law), it can be "cause" for a trustee's removal under § 324. Such a condition tends to create disharmony and lack of confidence among the creditor body.

*In re AFI Holding, Inc.*, 530 F.3d at 851; *In re Martin*, 817 F.2d at 180–81 ("A trustee/fiduciary must be free from any hint of bias. All of this evidence fits within the parameters of a materially adverse interest based on either an appearance of impropriety or a potential conflict of interest. Either is a viable cause for removal.").

130. One, the Trustee does possess direct economic interests against the estate that lessen its value to other creditors, and that is his and his firm's unpaid and accruing administrative expense in the case. There is no money in the estate to pay those claims, those of his accountants, those of Mr. Mills, and those (potentially) of R&B.

131. Two, the Trustee and his firm, FM&B, possess economic interests actually or potentially in dispute with the estate with respect to the estate's malpractice claim against FM&B.

132. Three, the Trustee plainly possesses a predisposition that creates a bias against the estate, because that is exactly how he has conducted himself through this case, particularly with respect to the Tax Credit vis-à-vis Marcus Clegg, Debtor, Seton 4, and Conklin. All of the Trustee's applications to compromise were designed to benefit those parties over the interests of the estate, and for that primary reason, among others, the Court denied all of the Trustee's Applications to Compromise as an abuse of his discretion.

133. Four, for the reasons discussed above in detail concerning the Trustee's incompetence and many breaches of his fiduciary duties under § 704(a) of the Code, that too constitutes a lack of disinterestedness for purposes of the removal analysis.

134. Five, the Trustee's alignment with Debtor and Conklin and against Montresor and Beliveau also constitutes a lack of disinterestedness, because at the very least, it creates an appearance of bias on the Trustee's part in favor of those parties and against Beliveau and Montresor.

135. In Conklin's instance, the Trustee bizarrely filed briefs on his behalf and against Montresor with respect to Montresor's Claim objection that did not concern the Trustee. That the Trustee inserted himself into a contested matter on a claim objection between two non-debtor

parties is flat-out absurd, particularly when his justification for doing so was § 704(a)(5), which does not apply to Montresor. To the extent the Trustee believes otherwise, then he is incompetent and incapable of understanding his own failings.

136. As for Debtor, Debtor and Trustee are actively colluding and working together to inflict as much financial and other harm on Beliveau as they can, all in retaliation for Beliveau's and Montresor's exercising of their legal rights in this case and outside of bankruptcy. They both plainly feel wronged. And they are both completely incapable of objective introspection and acceptance of responsibility for their own conduct and failings.

> In the absence of abusive or fraudulent conduct, the trustee's duty is simply to recover money to distribute to creditors. He is not concerned with abstract concepts of justice when there is no possibility of recovery for the estate…. Consequently, [t]he commencement of litigation by a trustee . . . on behalf of an estate in bankruptcy under the avoidance provisions is permissive and not mandatory. . . . As aptly explained in *In re Haugen Constr. Serv., Inc.,* 104 B.R. at 240:
>
> A trustee is under no mandatory duty to pursue and recover every transfer that might be avoidable under one of the Bankruptcy Code's avoidance sections. The relevant empowering sections 544, 545, 547, 548, 549 and 550 give the trustee discretion to utilize the remedies set forth but do not force him to do so. Each section says that a trustee "may" pursue the remedy, not that he must. In making a decision whether to pursue ... any of the [ ] recovery remedies, a trustee should do so only to the extent such action is "compatible with the best interest of parties in interest." *See* Section 704(1). Such a decision involves weighing a myriad of factors and often requires making the decision at a time when not all of the factual inputs are available and when the estate does not have money available to conduct an expansive investigation of the facts. These factors include: the factual and legal merits of the prospective action; the probable value of the recovery to the estate; the probable cost of the action to the estate. In making a decision, a trustee, cognizant of his fiduciary role, must avoid spurious lawsuits as well as those which, while having theoretical legal merit, would be unduly expensive to the estate, involve undue risk to the estate or likely result in minimal recovery for the estate.

*In re Bean*, 251 B.R. at 203–04.

> The present case represents a textbook example of purposeless litigation by a trustee. The issue in this action is not whether the debtor should be punished for

> engaging in a post-petition transfer of his property. That may be the subject of another day if his conduct be deemed to rise to the level of criminal, fraudulent or abusive behavior. What is at stake is the trustee's misguided notion that an avoidance action should be pursued whenever there is a post-petition transfer even though it has not resulted in any damage to the bankruptcy estate. The standard is not, as the trustee maintains, "to enforce the code as a policeman," and to inflict wanton punishment; rather, it is to use good common judgment in the exercise of an appropriate discretion.
>
> Here, the only purpose served by the avoidance action would be to punish the purchasers.

*Id.* at 205–06 ("Accordingly, it was a gross abuse of the trustee's discretion to pursue an avoidance action which could not possibly financially benefit the estate.")

> Ultimately, the Trustee's avoidance of the transfers appears to have been motivated not by a desire to serve the best interests of the estate, but a desire to vindicate his own authority. Yet, "the Trustee's duty to act in the best interest of the bankruptcy estate does not include an obligation to punish debtors, let alone others, for punishment's sake.". . . Where, as here, there is no evidence of abusive or fraudulent conduct, the Trustee is not to be concerned with abstract concepts of justice, but should act to protect the bankruptcy estate and its creditors…. Based on the present record, it is far from clear that the Trustee so acted in this case. The Trustee may ultimately be vindicated, but justice requires that he be put to the test.

*Peoples Bank & Tr. Co. v. Burns*, 95 Fed. Appx. at 806.

137. Given the Trustee's close and extensive communication with Debtor and their alignment of personal interests, Beliveau questions whether the Trustee is in compliance with all his obligations under the Maine Rules of Professional Conduct, all of which apply here. *See* D. Me. LBR 9010-1(a)(1), (2); D. Me. Local Rule 83.1 and 83.3.

138. At a minimum, Beliveau believes that investigation into whether the Trustee is in compliance with Rules 1.1 (Competence), 1.3 (Diligence), 1.6 (Confidentiality of Information), 1.7 (Conflict-of-Interest; Current Clients), 1.8 (Duties to Prospective Client), 3.1 (Meritorious Claims and Contentions), 3.2 (Expediting Litigation), 3.3 (Candor Toward the Tribunal), 4.3 (Dealing with Unrepresented Persons), and 8.4 (Misconduct) is warranted in this contested

matter, and will likely become necessary and requested in this Chapter 7 case going forward. *See* D. Me. LBR 9010-1; D. Me. Local Rule 83.3(a), (c), (d), (e).

139. Also, hopefully, the Trustee has advised Debtor that by assisting him in the pursuit of the R&B Proceeding against Beliveau, Beliveau's wife, and Debtor's other business "partners," Debtor is again working against his own personal interests because the core claims alleged in the R&B Proceeding are predicated upon assets of the estate that are, of course, not scheduled anywhere on Debtor's Amended Schedules A/B. Just like Debtor's never-scheduled "Tax Credit," Debtor never scheduled any interests in a "partnership" or claims arising therefrom with Beliveau on his Schedule A/B either.

140. Those unscheduled assets are, purportedly, the most valuable of Debtor's assets in the case. Failing to schedule them, and Debtor's plainly ongoing efforts to actively conceal "them," is absolutely material and problematic (assuming all the case-law that says bankruptcy fraud is bad thing is to be believed). Those failures, along with Marcus Clegg's central role in signing the Amended Schedules and intentionally omitting the most valuable of Debtor's estate assets, will also need investigation under the Code, the Maine Rules of Professional Conduct, and 18 U.S.C. § 157 (Bankruptcy Fraud).

141. For these additional reasons and factors, the Trustee should be removed.

**F. <u>Beliveau Does not Request Any Relief under 11 U.S.C. § 324(b)</u>**

142. Notwithstanding § 324(b)'s requirement that removed trustees be removed from all other cases in which they are serving, Beliveau does not seek that relief upon the Trustee's removal in this case under § 324(a). Beliveau leaves it to the Court and the UST to decide whether the Trustee, given his conduct in this case, is fit to serve as a trustee in other cases.

## IV. Request for Expedited Determination

143. Beliveau seeks expedited determination of this Motion because the Court, *sua sponte,* scheduled a hearing on the Trustee's Application to Employ R&B for October 6, 2026 at 9:00 a.m.

144. Beliveau will be filing an Objection to that Application to Employ in advance of the scheduled hearing. He will also be filing an Objection to the Trustee's Motion for Attorney Braunstein to appear *pro hac vice* within the 14 days provided for in the Court's approval Order.

145. Beliveau submits that determination of this Motion for Removal should be heard in advance of the Application to Employ R&B, because if cause exists to remove the Trustee under § 324(a), then the successor trustee should have the ability and opportunity to determine whether retention of R&B is in the best interests of the estate, or not.

146. That successor trustee will also have the opportunity to determine – objectively and free of all actual and potential taint and personal animus – whether the pursuit of the R&B Proceeding at this final stage of the Chapter 7 case is in the best interests of the estate or, alternatively, a massive liability for the estate and a complete waste of time, money, and judicial resources over the next 2-3 years that should be avoided. *See* Federal Rule of Bankruptcy Procedure 7041; Federal Rule of Civil Procedure 41(a)(1)(A)(i).

147. For these reasons, Beliveau submits that this Motion should be considered on an expedited basis on October 6, 2026 at 9:00 a.m.

## V. Conclusion

The Trustee's handling of this case has been a study of consistently, impossibly-poor judgment, incompetently executed, over substantive legal matters of which the Trustee has only the barest and superficial understanding. The "administration" of this case has been a debacle.

The Trustee has not administered anything in almost two years. Now the "claims" he does want to "administer" are completely made up, nowhere supported by Debtor's Amended Schedules, and directly contrary to the same claims he was cajoling people with a few months ago. And because he has bungled every aspect of the case, he has breached multiple fiduciary duties owed to creditors of the estate, he has engaged in multiple instances of negligence, and he has created exposure for himself, his firm, and the estate in the form of malpractice claims and otherwise.

Worse than all that, though, is that his animating motivation in pursuing the current R&B Proceeding is purely retaliation against Beliveau for his perceived role in challenging the Trustee's "authority" and of preventing the Trustee's many efforts to give away estate assets for no consideration for the direct benefit of Debtor and Marcus Clegg, all of which was rightfully rejected by the Court. And because the Trustee and Debtor now share a common disdain for Beliveau and his counsel, they are now coordinating to inflict as much financial and other harm on him as possible, which, in turn, has deprived of the Trustee of his once "disinterested" status.

Finally, the Trustee intentionally and knowingly opted for stealth and secret over transparency and objective assessment vis-à-vis the Court and parties-in-interest. He could have sought the Court's approval to retain R&B well before the firm commenced work on its bloated, internally inconsistent, and nonsensical Complaint, but instead, knowing that that that approach was likely to be met with substantial skepticism from the Court given the circumstances, he intentionally chose to expose the estate to a substantial benefit administrative expense claim, put all fees of R&B at risk, and ask the Court for its rubber-stamp approval of retention, but only after-the-fact.

It is difficult to understand how the Trustee has been entrusted with the role of a fiduciary, an individual required and expected to exercise good, sound, and knowledgeable judgment for the benefit of constituents. That is not who the Trustee is, or what he is capable of.

Under the totality of the circumstances, cause exists for the removal of the Trustee of the under § 324(a) of the Code.

WHEREFORE, Severin M. Beliveau, Esq., requests that this Court: (i) remove Chapter 7 Trustee, Edmond J. Ford, Esq., as Chapter 7 trustee in the above-captioned case of Debtor, Kevin J. Mattson, and order the United States Trustee to appoint a successor Chapter 7 trustee for the benefit of Debtor's estate and its creditors; (ii) authorize, in the event that the Motion is not granted, the conduct of discovery on all issues relevant to this Motion and contested matter; (iii) schedule an expedited hearing on this Motion for October 6, 2026 at 9:00 a.m.; and (iv) grant him such other and further relief as is just and appropriate under the circumstances.

Dated: September 29, 2026

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditor,
Severin M. Beliveau, Esq.

CRESWELLLAW
PO Box 7340
Portland, ME 04112
207.358.1010
rcreswell@creswelllaw.com

## CERTIFICATE OF SERVICE

I, Randy J. Creswell, hereby certify that I served on this day copies of the above Motion, proposed Order, and Certificate of Service upon each of the parties listed on the Notice of Electronic Filing via the Court's Administrative Procedures Governing the Filing and Service by Electronic Means (unless otherwise indicated below).

Dated: September 29, 2026

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditor,
Severin M. Beliveau, Esq.

CRESWELLLAW
PO Box 7340
Portland, ME 04112
207.358.1010
rcreswell@creswelllaw.com

**Service List**

Kevin J. Mattson (via email only)

Terence J. Conklin (via email only)

Seth W. Brewster, Esq. (via email only)

John C. Orestis (via U.S. Mail)
PO Box 777
Lewiston, ME 04240