**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE (Portland)**

*************************

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **Kevin J. Mattson,** | **Case No. 24-20188-PGC** |
| **Debtor** | |

*************************

**TRUSTEE'S OBJECTION TO**
**MOTION TO REMOVE TRUSTEE**
**(D.E. 414)**

***NOW COMES*** Edmond J. Ford, Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate of Kevin J. Mattson (the "Estate"), by his attorneys Ford, McDonald & Borden, P.A., and Objects to the Motion for Removal of Chapter 7 Trustee, Pursuant to 11 U.S.C. §§105 and 324 and Request for Expedited Determination [D.E. 414] (the "*Motion*") and in support thereof says as follows:

**A. Introduction.**

The Trustee has served in this (and every case) to the best of his ability and true to the law. His competence and impartiality have been on display to the Court for over a year. The Trustee makes this response because, once he accepted the appointment, he undertook to handle the matter to its conclusion to the best of his ability and that includes defending himself from unjustified attacks.

The Motion to Remove fails because it fantasizes the history of this case and the law. The Motion to Remove fails because it is nothing more than an attempt to use intimidation to avoid consequences.

As for the value of the recently filed Complaint against Atty. Beliveau. Shakespeare's Hamlet comes to mind: "The lady doth protest too much, methinks."

**B. Specific Responses to the Facts Pursuant to LBR 9013-1 (c)(2):**

The specific responses to the factual allegations are contained in the Appendix.

**C. Standard for Removal: Movant Should Show Fraud or Loss to the Estate by Clear and Convincing Evidence.**

The Court may remove a trustee for cause. 11 U.S.C. §324(a). The code does not define "cause" and leaves it to the Bankruptcy Court to determine on a case-by-case basis. In re Wring, 2015 Bankr. LEXIS 2032, *9, 73 Collier Bankr. Cas. 2d (MB) 1630 (2015) ("The Code does not define cause, so bankruptcy 'courts are left to make the determination on a case-by-case basis.'") (Citation omitted). It is "left to the sound discretion of the bankruptcy court."

Id. The party seeking removal has the burden to prove cause:

> The party seeking removal of the trustee has the "burden of establishing 'cause' by setting forth specific facts that support removal," and "[c]onclusory contentions not supported by specific facts are insufficient grounds for removal of a trustee.

Id.

"Generally, the courts will not remove a trustee absent actual fraud or injury." 3 Collier on Bankruptcy P 324.02 (16th 2026); In re Drinkwater, 178 B.R. 590, 594, (Bankr. D. Mass. 1995), *quoting*, In re Lundborg, 110 B.R. 106, 108 (Bankr. D. Ct. 1990) ("In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud."); In re Acadiana Electrical Serv.,66 Bankr. 164, 165 (Bankr. W.D. La. 1986); United States ex rel. People's Banking Co. v. Derryberry (In re Hartley),50 Bankr. 852, 859 (Bankr. N.D. Ohio 1985).); In re Freeport Italian Bakery, Inc., 340 F.2d 50, 54, 1965 U.S. App. LEXIS 6938, *8 (1965) ("We have traditionally stressed the elements of fraud and actual injury to the debtor interests.")

Because the matter is so serious, the standard of proof the movant must meet is clear and convincing:

> Removal of a bankruptcy trustee is probably as serious of an action as a bankruptcy judge could possibly decide. Accordingly, any allegations that a trustee should be removed must be proven by clear and convincing evidence, not by a mere preponderance of evidence.

In re Walker, 2004 Bankr. LEXIS 2187, *2, 44 Bankr. Ct. Dec. 33, 18 Fla. L. Weekly Fed. B 48 (2004), *affirmed,* 2006 U.S.Dist. LEXIS 107886, *affirmed,* Walden v. Walker, (In Re Walker), 515 F.3d 1204 (11th Cir. 2008).

Atty. Beliveau has not established fraud or injury to the estate.

### D. Beliveau Misstates The Standard for Approval of a Compromise by the Bankruptcy Court.

Beliveau asserts the Trustee is incompetent because he failed to obtain approval of certain compromises. He asserts that the incompetence is proven by the standard for compromise approval. Beliveau is wrong.

Beliveau wrongly asserts that this Court may deny approval of a Trustee's proposed settlement only if the proposal is "arbitrary and capricious." *Motion*, ¶ 77. While the District of Maine did suggest that standard in *dicta* in the 2002 decision In re Murphy, 288 B.R. 1, 5 (D. Me. 2002), the First Circuit has made it clear that the inquiry the Bankruptcy Court undertakes is more searching:

> The authority to approve or disapprove a settlement lies within the sound discretion of the bankruptcy court, and we will overturn the exercise of that discretion only upon a showing of abuse. See, e.g., Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.), 382 F.3d 68, 71 (1st Cir. 2004). . . . The task of both the bankruptcy court and any reviewing court is "to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (alterations, internal quotation marks, and citation omitted).
>
> . . .
>
> Nevertheless, a bankruptcy court cannot blindly take the trustee's word that a settlement is fair and reasonable. It "must apprise [it] self of all facts

> necessary to evaluate the settlement and make an 'informed and independent judgment.'"

City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 91-92, 2011 U.S. App. LEXIS 18115, *20-21, 55 Bankr. Ct. Dec. 89 (1st Cir. 2011).

The Court is required to make an "informed and independent judgment" and the fact that the Court's judgment differs from the Trustee's does not establish that the Trustee's judgment was arbitrary or capricious.

**E. The Settlements Related to the Tax Credit were Not Arbitrary nor Capricious but Attempted to Maximize Value from a Worthless Tax Credit Claim.**

At no time did this Court find that any proposed settlement was "arbitrary and capricious." *Contra*, *Motion* ¶ 78. There are four (4) settlement motions to which Beliveau points as being arbitrary and capricious. None were denied for that reason.

Three of the four settlements related to the value of a possible State of Maine refundable Historic Rehabilitation Tax Credit. The first proposal was the lottery ticket proposal – the estate shares in any ultimate recovery, if any, after certain costs needed to create the tax credit.

During the course of negotiating and proposing that settlement, the Trustee obtained the National Park Service application in its then existing two parts, talked with tax counsel, talked with historic rehabilitation specialists, researched the tax law, researched the National Park Service regulations, talked with the National Park Service personnel, talked with personnel at the State of Maine, and talked with the lender that had foreclosed and taken back title to the property. The Trustee concluded that there was virtually no chance that, in the absence of tax fraud, there would ever be a refunded tax credit.

The Trustee continues to believe that is true and no party in this proceeding has offered a rebuttal. The Debtor, Kevin Mattson, has stated he might be able to accomplish amendments to the National Park Service "Parts 1 & 2" that would allow him to claim the credits, but: (a) his

proposed efforts require money he does not have; and (b) his proposed theories depend on claiming that the present "owner" is not the "owner" for the purposes of the National Park Service regulations. In other words, he is dreaming.

If the asset is worthless, a sale that turns it into a lottery ticket is an appropriate exercise of business judgement. The first settlement did that – it converted the Trustee's rights into a lottery ticket and let someone else spend the money to prove the Trustee wrong. If the Trustee was wrong the estate wins. If the trustee was right the estate loses nothing.

The court denied the settlement because, based on what the Court had heard from Mr. Mattson in this and other cases, the Court did not believe the Trustee had correctly analyzed the worth of the tax credit. The Court found that

> the trustee has not carried his burden to establish that the compromise is in the best interest of the estate under the Healthco factors. Specfically I find that the trustee will likely prevail on his claims asserted against Mr. Conklin, Marcus Clegg and Seton Unit 4, LLC, in the AP 25-2009, . . . with respect to the other Healthco factors, paramount interest of the creditors and collectability, I find that the Trustee has not satisfied his burden. Mr. Mattson is the architect of this complex tax structure and has repeatedly asserted before this court both in his reply in this matter and in related bankruptcy cases in this court, of which the court can take judicial notice, that all that remains to collect the tax credit is for him to file applicable tax return. While the Trustee's argument is strong, I find that it ultimately cannot be accepted as fact in the face of Mr. Mattson's own comments allegedly made in support of the same compromise. In comparison to the relatively simple path of waiting for Mr. Mattson to file his tax returns, the hypothetical risks raised by the trustee are speculative at best. For those reasons the application to compromise is denied.

Hearing Recording, at 1:50:36. [D.E. 233].

The trustee managed to negotiate two more settlements with cash payments. The court rejected the first cash payment settlement, without prejudice, because the Trustee, in argument, described the settlement as equivalent to a sale and the Court held that notice of the opportunity

to make counter offers and a description of the sale terms was required. Hearing Recording, at 37:01 [D.E. 289].

The Court rejected the second cash payment settlement because it was simply too little money:

> Where I have come down on this is that I am going to deny the application to compromise. I am persuaded by the argument that the United States Trustee has made. I believe that the $5,000.00 compared to what the tax credits may offer, understand that's speculative, but it is some amount of money the parties are willing to spend money to settle the adversary proceeding or otherwise resolve things. And when compared to that to the . . Mr. Ford, you determine what actions you have to take as trustee, but one course of action is just to sit and see what happens with the tax credits. I think Mr. Creswell has outlined a whole strategy of how to approach it, and I understand he is not your counsel, but I have already made either a ruling or, I don't think the matter was ever squarely before me but, I have made very very strong hints, that I believe the tax credits are property of the estate. So given that, I really worry about the dismissal with prejudice aspect of this compromise. So before I rule, Mr. Ford – (3:05) . . . (10:34). I am not approving the compromise. I have some concern, I understand the position that, Mr. Ford, your response to the US Trustee is that the terms of the settlement are clear and the impact on the estate is clear, I don't think they are either and I therefore don't believe that the Trustee has met the Trustee's burden on that front and on the burden of establishing that the amount of money, $5,000.00, is something that would be a benefit to the estate of settling the claims with prejudice. So. That's denied.

Hearing Recording, at 1:49 [D.E. 354]. The Court did not accept the Trustee's judgment but it did not indicate that the Trustee was incompetent.

Since that June 16, 2026, hearing the Trustee has obtained a final compromise of A.P. 25-2009 that waives Conklin's security interest and dismisses the remaining claims without prejudice. [D.E. 369]. The Court approved that compromise on August 4, 2026. [D.E. 387]. As the court and the US Trustee asked, the Trustee is now just waiting to see if a tax credit materializes. It will not.

Mr. Mattson has informed the Trustee that he has filed the returns for 2023 and 2024 without claiming the tax credit.[1] He is not entitled to the tax credit for the reasons outlined by the Trustee. If matters change, Mr. Mattson retains the right to amend his returns as permitted by applicable tax law, but, in the Trustee's view, lawful amendments to claim this credit will not happen.

The Trustee remains convinced that the Tax Credit is a phantom – worthless. The Trustee remains the only person in this case other than the Debtor who has studied the tax credit issues. The Trustee's study leads him to the conclusion that the Debtor is wrong to think that the Tax Credit can be obtained. Reliance by the Trustee on his own study over the opinions of the debtor is not incompetence.

Today, there is no tax credit. There never was a tax credit. There will never be a tax credit. Attempting to settle understanding that reality is not incompetence.

**F. Settlement of the Claims Against Houghton and Island Brewing.**

The Court denied approval of the settlement of claims against Houghton [D.E. 302] and Island Brewing, Hearing Recording, at 19:40. [D.E. 355]. The Court "understand[s] the Trustee's business judgment, in this instance,. . . based on what I have heard, and I get that litigation can be expensive, but I don't have confidence as the court in seeing that enough has been done to support ordinary course, to make sense of what this arrangement is regarding the loan, and so based on that I am going to deny this application without prejudice to what you might want to do in the future." Hearing Recording, at 17:42. [D.E. 355]

---

[1] Beliveau's contrary protestations in Court were wrong. *See,* Hearing Recording, at 7:34 [D.E. 354]. R Creswell said: "I **guarantee** that he [Mattson] held off on the 2023 because that is the first one that gets filed that would trigger the first whatever, 180 grand or whatever it is. I **know** that he is going to file his tax returns and that is going to monetize that tax credit. Everyone is focused on whether that tax credit is going to turn into money. **It is going to turn into money**. Is it going to be recaptured? Of course it will, but once the money is gone, the State can chase around for it. That is the fundamental disconnect." Attorney Creswell's guarantees did not materialize.

The Court found fault with the Trustee's proposed settlement but it did not find that the Trustee acted arbitrarily, capriciously or incompetently.

### G. The Trustee's Statement of Position on the Conklin Claim Objection was Appropriate.

Beliveau asserts that the Trustee's settlement of the Conklin claim [D.E. 13 and Order at D.E. 362] and his Statement of Position [D.E. 333], are evidence of bias. They are not.

The Trustee's actions were not motivated by bias but to limit abuse by Beliveau. Beliveau, acting through Montresor, objected to the Conklin claim asserting an absence of consideration received by the maker of the note. The theory was that the acknowledged consideration (the money lent) did not go to the maker of the note and so that note was unenforceable. That objection, on that theory, was an abuse. It misstates basic contract law. The misstatement by experienced attorneys (Beliveau and Creswell) was so basic that an outside observer could conclude it was intentional.

As the Bean court stated, the role of the Trustee is not to inflict punishment for abusive behavior but, "[t]his does not mean that the trustee and the bankruptcy court are expected to permit abusive or fraudulent conduct to go unchecked." McCord v. Agard (In re Bean), 251 B.R. 196, 203, 2000 U.S. Dist. LEXIS 10568, *14 (2000). The Trustee took the smallest step possible to prevent the abuse which was to point out the fundamental misstatement of the law.

Beliveau's ultimate agreement with the Trustee establishes lack of bias. The Trustee had proposed to compromise the Conklin claim in February, 2026 [D.E. 230]. In March, 2026, Beliveau, acting through Montresor, LLC, objected to that compromise. [D.E. 236]. In May, 2026, the Trustee filed his Statement of Position [D.E. 333]. In June, 2026, Beliveau, acting through Montresor, filed his own compromise which contained the same economic terms as the

Trustee's proposal. [D.E. 339]. Beliveau asserts that he came to the resolution with Conklin before, and therefore independent of, the Trustee's Statement of Position. *Motion*, ¶46.

Beliveau asserts that he independently concluded that the Trustee's economic resolution filed in February was fair and just. Beliveau's agreement with the Trustee, independent of and before the Trustee's Statement of Position, establishes that the Trustee made an unbiased decision.

**H. <u>The Trustee Has Acted with Appropriate Speed</u>.**

Beliveau asserts that the Trustee has taken too much time before suing. *Motion*, ¶¶ 104 - 108. Beliveau asserts that the Trustee knew of the theories on which he sued since the meeting of creditors in March 2025. Beliveau is wrong.

The Trustee has sued Beliveau asserting (a) a partnership between Beliveau and Mattson; (b) breach of a partner's fiduciary duty; (c) preference; (d) partner liability for contribution; (e) constructive fraudulent transfer arising from the October 31, 2023 Settlement Agreement; (f) fraudulent transfer recovery from the 2017 Exit Agreement; (g) fraudulent transfer recovery from the Newcastle Ventures secured party sale; (h) recovery under Article 9 relating to the Newcastle Ventures secured party sale; (i) recovery of the Debtor's share of the Harpers Development Receivable; (j) disallowance of Beliveau's claim under Section 502(d); and (k) disallowance of a portion of Beliveau's claim under Section 502(b)(1).

None of those claims were listed in the schedules. Apart from the Harpers Development claim, none of those claims were suggested by the testimony of the Debtor at the meeting of creditors. Instead, the amended schedules [D.E. 94, p. 17, Q. 33] assert claims of "fraud" or "breach of contract" against Beliveau. The Trustee has not asserted a breach of contract claim. The Trustee has asserted claims to recover fraudulent transfers but that is different from and not a fraud claim. The Trustee has not asserted a fraud claim.

The Trustee acted with appropriate speed understanding and unraveling a complex structure created by Atty. Beliveau.

**I. The Trustee is "impartial and independent as the lot of humanity will admit."**[2]

With no evidence, Beliveau asserts collusion.

There is no collusion between the Debtor and the Trustee. The Trustee has brought this action after extensive consideration (and consultation with his professionals) of the costs and benefits. The Trustee has concluded that it is a righteous claim.

**J. There is no malpractice by the Trustee's firm.**

Attorney Beliveau asserts that because he was able to defeat the proposed compromises that would have generated $15,000.00 for the estate [D.E. 355 & 356] the Trustee's firm must have committed malpractice. *Motion*, ¶¶80, 81, 123, 124. Atty. Beliveau is suggesting that: (a) his own objections were groundless; and (b) that this Court's orders sustaining his objections were not correct. Because Atty. Beliveau cannot credibly argue that his own papers and the Court's subsequent orders are in error, no breach of duty by the Trustee's firm could have proximately caused the Court to enter those orders. *See,* Corey v. Norman, Hanson & DeTroy, 1999 ME 196, P10, 742 A.2d 933, 939, 1999 Me. LEXIS 220, *12 (1999) (A required element of a malpractice claim is: "that the breach of that duty proximately caused an injury or loss to the plaintiff.") There is no viable malpractice claim.

**K. Atty. Beliveau's threats of personal liability of the Trustee are not grounds to remove the Trustee.**

Attorney Beliveau threatens the Trustee and his counsel personally saying:

> in the event that the R&B Proceeding is permitted to or does proceed . . . the Trustee is going to be sued personally, by Beliveau and his wife in

[2] Mass. Constitution Pt. 1, Art. XXIX

> their counterclaim. So is his firm, Attorney Braunstein personally, and R&B.

*Motion*, ¶126. Except a vague reference to negligence, *Motion.* ¶127, he does not explain what wrong the Trustee's firm has committed. Vague contentions of wrong are not enough. 3 Collier on Bankruptcy P 324.02 (16th 2026) ("A conclusory statement unsupported by facts is clearly not enough to warrant removal.")

**L. The unpaid fees the Trustee's firm has accrued, but for which payment has not been sought are not grounds to remove the Trustee.**

Beliveau asserts that the Trustee's firm's unpaid fees, for which payment has not been sought, create an irreconcilable conflict to his continued work as trustee.

Beliveau's fee conflict claim is unrealistic. It is a reality of the life of a trustee that work is done for which payment is not received. It also frequently occurs that work must be done, on the risk of non-payment (or partial payment) to effect a recovery. Removing a trustee every time fees exceed the cash balance in the estate is unrealistic and not required by the statute. *See,* In re Martin, 817 F.2d 175, 181 (1987) (Discussing the disinterestedness requirement - "We realize that any attorney -- other than one working purely as a volunteer -- has a financial interest in the matters entrusted to his care, so in that sense, there is always some danger that the lawyer's judgment will be shaded by his own economic welfare. Yet, that risk, standing alone, seems acceptable.")

**CONCLUSION**

Although he did not ask to be appointed, the Trustee has performed his duty. That duty includes pursuing, for creditors, valuable claims even if those claims are against Beliveau.

**WHEREFORE**, the Trustee respectfully requests that this Honorable Court order and decree as follows:

A. That the Motion be denied; and

B. For such other and further relief as is just and equitable.

Respectfully submitted,
Edmond J. Ford, Ch. 7 Trustee

By his Attorneys,
FORD, McDONALD & BORDEN, P.A.

Date: October 14, 2026

By: *<u>/s/ Edmond J. Ford</u>*
Edmond J. Ford Bar # 010174
815 Elm Street, Suite 5 B
Manchester, NH 03101
(603) 373-1737 (Telephone)
(603) 242-1381 (Facsimile)
eford@fordlaw.com

Certificate of Service

On October 14, 2026, I electronically filed the foregoing document through the Court's CM/ECF systems which will send a notice of electronic filing to the parties on the Court's electronic service list.

On October 14, 2026, I forwarded a copy of the foregoing by email to Terrence Conklin at tjconks@gmail.com and to Kevin Mattson at kevin@dirigocapitaladvisors.com.

*<u>/s/ Edmond J. Ford</u>*
Edmond J. Ford (Bar # 010174)

APPENDIX

**Response Pursuant to LBR 9013-1 (c)(2)**

2. Paragraphs 2 – 10 are Admitted

3. Trustee has insufficient information to admit or deny the allegations in Paragraph 11.

4. Trustee admits the first sentence of Paragraph 12. Trustee responds to the second sentence that saying that the complaint speaks for itself and, but for the editorial parenthetical, the second sentence adequately describes a summary of the complaint.

5. Trustee admits paragraphs 13 through 18.

6. The first sentence of paragraph 19 is admitted. The second sentence is denied.

7. The first sentence of paragraph 20 is admitted. The assertion that the Trustee filed a 287 page reply memorandum is denied. The Trustee did file, as an exhibit to the Reply a copy of the National Park Service permit necessary to understand the possibility of a tax credit. As the trustee then pointed out, there was then virtually no chance that the tax credit would be realized.

7. The allegations of paragraphs 21and 22 are admitted.

8. The allegation of paragraph 23 refers to the Notice of Chalk which the Trustee filed to assure the availability of exhibits he planned to use to hearing participants who were not present in person. To the extent the allegations of paragraph 23 are inconsistent with the foregoing sentence they are denied.

9. The allegation, but not the editorial commentary, of paragraph 24 that the Trustee filed an application to compromise a controversy with Terrence Conklin is admitted. It was not captioned as an Application to Compromise Montresor's Objection. Trustee notes that the compromise was approved by Court order entered June 17, 2026 [D.E. 362].

10. The allegations of the first sentence of paragraph 25 are admitted. The remainder of the allegations of paragraph 25 are denied.

11. The allegations of paragraph 26 are denied – Montresor did file an objection but it did not bear the title Beliveau recites.

12. The allegations of paragraph 27 are admitted.

13. The Trustee has insufficient information to form a belief as to the truth of the allegations of paragraph 28.

14. The allegations of paragraph 29 are admitted.

15. The allegations of the first sentence of paragraph 30 are admitted. The allegations of the second sentence of paragraph 30 are denied.

16. The allegations of paragraph 31 are admitted.

17. The allegations of paragraph 32 are admitted.

18 The allegations of the first sentence of paragraph 33 are admitted. The allegations of the second sentence are denied, and in particular but without limitation, the court denied the motion "without prejudice."

19. The factual allegations of paragraph 34 are admitted, the commentary is denied.

20 The allegations of paragraph 36 are admitted.

21. The allegations of the first sentence of paragraph 37 are admitted. The remainder of the allegations in paragraph 37 are denied.

22. The allegations of the first sentence of paragraph 38 are admitted. The remainder of the allegations in paragraph 38 are denied

23. The allegations of paragraph 39 are admitted.

24. The allegations of paragraph 40, to the extent that they recite the assertions of the mentioned pleading are admitted except that there is no mention is the cited pleading of the receipt of money.

25. The allegations of paragraph 41 are admitted.

26. The allegations of paragraph 42 are denied.

27. The allegations of paragraphs 43 – 44 are admitted.

28 The allegations of paragraph 45 are admitted except that the allegations of footnote 4 are denied. In particular, and without limitation, the assertion that the Trustee had "actual knowledge of [the claims in the Complaint] in March 2025]" is denied.

29. The allegations of the first sentence of paragraph 46 are admitted. The allegations of the second sentence are denied.

30. The allegations of paragraph 47 that Beliveau filed D.E. 342 are admitted. The characterization of the motion is denied.

31. The allegations of paragraphs 48 and 49 are admitted.

32. The allegation of paragraph 50 that the Trustee filed a reply is admitted. Every other allegation in paragraph 50 is denied.

33. The allegation of paragraphs 51-53 that the Court conducted a hearing and denied the applications to compromise and granted Beliveau's Motion are admitted. Every other allegation is denied except that Trustee admits timely paying the $15,000.00 consistent with the Court's order.

34. The allegations of paragraphs 54 and 55 are admitted.

35. The Trustee has insufficient information to form a belief as to the truth of the allegations of paragraph 56 relating to Beliveau's intent and so denies the same; the Trustee denies the remaining allegations of paragraph 56.

36. The allegations of paragraph 57 – 60 are admitted.

37. The allegation that the Trustee through his counsel filed the Adversary Proceeding in Paragraph 61 is admitted. The trustee has insufficient information to form a belief as to the truth of the remaining allegations and so denies the same.

38. The allegations in paragraph 62 are admitted except that the amount of the filed claims is denied; footnote 9 is denied; and Trustee denies the normative assertions and sarcasm ("should have", "who knows", "thank you notes") and denies editorial comment implied or stated in all the footnotes.