**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| KEVIN J. MATTSON, | ) | Case No. 24-20188 PGC |
| | ) | |
| Debtor. | ) | |

**OBJECTION TO CHAPTER 7 TRUSTEE'S APPLICATION FOR AUTHORITY**
**TO EMPLOY RIEMER & BRAUNSTEIN LLP AS CO-COUNSEL**

NOW COME Creditors, Severin M. Beliveau, Esq. ("Beliveau") and Montresor LLC ("Montresor") (together, "Creditors"), pursuant to 11 U.S.C. §§ 105 and 327(a), Federal Rules of Bankruptcy Procedure 2014, 9013, and 9014, and D. Me. LBR 2014-1, 9013-1, and 9014-1, and object to the Chapter 7 Trustee's Application for Authority to Employ Riemer & Braunstein LLP ("R&B") as Co-Counsel, dated September 20, 2026 (D.E. 408) ("R&B Application"), filed by the current Chapter 7 Trustee, Edmond J. Ford, Esq. ("Trustee").

In support of their Objection, Creditors state as follows.

## I. Constitutional Authority, Jurisdiction, and Venue

1. The Court has constitutional authority to enter final orders on this Motion, it has jurisdiction over this case pursuant to 28 U.S.C. § 1334, this is a statutorily core matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and venue is proper pursuant to 28 U.S.C. § 1409(a).

## II. Facts

2. On September 12, 2024, multiple petitioning creditors commenced this bankruptcy case against Debtor through the filing of a Chapter 7 Involuntary Petition Against an Individual (D.E. 1).

3. On February 11, 2025, the Court issued its Order re-converting Debtor's case to one under Chapter 7 of the Code (D.E. 80).

4. On February 14, 2025, the Trustee was appointed successor Chapter 7 trustee (D.E. 88).

5. A year later, on April 10, 2026, the Trustee filed an Application for Authority to Employ Ford, McDonald & Borden, P.A. ("FM&B") as Counsel ("FM&B Application") (D.E. 278) as his counsel pursuant to § 327(a) of the United States Bankruptcy Code ("Code"). FM&B is the Trustee's firm.

6. In the FM&B Application, the Trustee states and represents:

> On February 25, 2025, Edmond J. Ford was appointed Chapter 7 Trustee. The Trustee mistakenly failed to file an employment application at that time as counsel to the Trustee. The Trustee is filing his employment application at this time. Based upon the amount of current and future time counsel has into the case and the likely recovery, the Trustee does not believe he will need to ask the Court for Nunc Pro Tunc employment.[1]

FM&B Application ¶ 2 (emphasis added).

7. In the FM&B Application, the Trustee states and represents:

> The Trustee seeks entry of an Order authorizing the employment of the law firm of Ford, McDonald & Borden, P.A. as his counsel in this case on a general retainer basis to assist him in the recovery and liquidation of any assets that may exist for the benefit of the Estate, and all other matters which may come to the attention of the Trustee or his Counsel.

FM&B Application ¶ 3 (emphasis added).

[1] Because the Trustee "mistakenly failed" to seek retention of his firm upon his appointment in February 2025 – *i.e.*, over a year earlier – he is foreclosed from any *nunc pro tunc* retention relief. *See In re Jarvis*, 53 F.3d 416, 420 (1st Cir. 1995) ("Most courts have flatly refused to accept mere oversight, without more, as a legitimate basis for granting *post facto* approval. . . . it should be noted that, here, the bankruptcy court was not only applying section 327(a) and Fed. R. Bankr. P. 2014(a), but also was applying its own local rule. The significance of this circumstance is three-fold. First, the rule gives plain notice of the 'extraordinary circumstances' standard. Second, once local rules have been properly promulgated, lawyers and litigants are duty bound to comply with them…. Third, a special degree of deference – above and beyond the traditional standards of decisionmaking and appellate oversight – attaches to a court's interpretation of its own local rules."); *see also* D. Me. LBR 2014-1(b)(1) ("General Rule. For professionals other than chapter 11 debtor's counsel, approval of retention will be effective as of the date that the application is filed."). In April 2026, though, the Trustee was fine with that because the estate was administratively insolvent, he believed that it was going to stay that way, and he and his firm were not going to expend much "future time" administering the case. But that was April. Now it is October, and the Trustee's new and improved view is that there are millions and millions of Beliveau's dollars just awaiting for the estate a few years from now.

8. In the FM&B Application, the Trustee states and represents:

> The Trustee selected Ford, McDonald & Borden, P.A. due to the firm's experience in bankruptcy cases, and the Trustee believes that Ford, McDonald, McPartlin & Borden, P.A. is well qualified to represent him in this case.

FM&B Application ¶ 4 (emphasis added).

9. In his FM&B Application, the Trustee states and represents:

> The current hourly rates of attorneys at the firm are:

| | |
|---|---|
| Edmond J. Ford | $550.00 |
| Steven M. Notinger | $400.00 |
| Marc W. McDonald | $400.00 |
| Ryan M. Borden | $325.00 |

FM&B Application ¶ 5.

10. Finally, the Trustee states and represents in the FM&B Application:

> The professional services that Ford, McDonald & Borden, P.A. would render to the Trustee include the following:
>
> a. Preparing all necessary pleadings associated with the liquidation and recovery of estate assets;
> b. Representing the Trustee in all court proceedings;
> c. Assisting the Trustee in the investigation of any potential assets; and
> d. Performing such other legal services as may be required in the interests of creditors of the Debtor.

FM&B Application ¶ 10 (emphasis added).

11. Based upon the Trustee's representations in the FM&B Application and associated Signed Statement of Professional Person of Steven M. Notinger, Esq. (dated April 8, 2026), on April 13, 2026 (D.E. 286), the Court granted the Trustee's application to employ his firm, FM&B, as his counsel in this Chapter 7 case.

12. Five months later, and notwithstanding the Trustee's earlier representations to the Court in the FM&B Application, on September 20, 2026, the Trustee filed the R&B Application

seeking to employ R&B and Alan L. Braunstein, Esq. as his co-counsel in this case.[2]

13. In the R&B Application, the Trustee states and represents:

> The Trustee requires legal representation in relation to certain aspects of this case that may require legal work in connection with this case, including, but not limited to <u>investigating identifying</u> and prosecuting <u>potential</u> causes of action under the bankruptcy code beneficial to creditors; and possible prosecution of objections to claims. The Trustee believes that the Firm is well-qualified to represent the Trustee and that the Firm's employment is in the best interests of the Debtor's bankruptcy estate and its creditors.
>
> The Trustee <u>anticipates</u> significant litigation in which the estate would benefit from the <u>resources and experience</u> that Atty. Braunstein and his firm will bring.

R&B Application ¶¶ 5, 6 (emphasis added).

14. In support of the R&B Application, the Trustee filed the Signed Statement of Professional Person (dated September 19, 2026) ("<u>Original Statement</u>") of Attorney Braunstein. The Original Statement did not comply with all the requirements of D. Me. LBR 2014-1.

15. The Trustee had requested that the R&B Application be approved without hearing under D. Me. LBR 9013-3(a). On September 21, 2026, however, the Clerk scheduled a hearing on the Trustee's R&B Application for October 6 (D.E. 410), which was rescheduled to October 27 (D.E. 415).

16. Three days after filing the R&B Application, on September 23, 2026, the Trustee, FM&B, Attorney Braunstein, and R&B filed an 11-count, 49-page Adversary Proceeding Complaint against Beliveau, his wife Cynthia Beliveau, and two former friends and business "partners" of Debtor, thereby initiating the Adversary Proceeding entitled, <u>Edmond J. Ford, Trustee v. Severin M. Beliveau, et al.</u>, Adv. Proc. No. 2026-2020 ("<u>R&B Proceeding</u>").

---

[2] On September 18, 2026, the Trustee also filed his Motion for Alan L. Braunstein, Esq. to appear in the case on his behalf, *pro hac vice* (D.E. 407). That Motion was granted by Order dated September 21, 2026 (D.E. 409), but the Court set the matter for hearing for October 27 following Beliveau's Objection filed on October, 5, 2026 (D.E. 419).

17. On October 6, 2026, the Trustee filed the Signed Supplemental Statement of Professional Person ("Supplemental Statement") of Attorney Braunstein.

18. In his Supplemental Statement, Attorney Braunstein for the first time discloses the following hourly rates to be charged to the bankruptcy estate for R&B's "investigating," "identifying," and prosecuting "potential" causes of action:

> My [Attorney Braunstein's] 2026 hourly rate is $1,095.00; others working with me in the case are Peter Sutton, partner at $745.00, Macken Toussaint, partner at $685.00, and Nicole Dailey, a paralegal at $385.00 per hour.

Supplemental Statement ¶ 5.

## III. Discussion

### A. The R&B Application Fails to Comply with Federal Rule of Bankruptcy Procedure 2014(a)

19. Federal Rule of Bankruptcy Procedure 2014(a)(2) provides as follows:

> (2) *Application for Employment.* The applicant must file the application and . . . must send a copy to the United States trustee. The application must state specific facts showing:
>
> (A) the need for the employment;
> (B) the name of the person to be employed;
> (C) the reasons for the selection;
> (D) the professional services to be rendered;
> (E) any proposed arrangement for compensation; and
> (F) to the best of the applicant's knowledge, all the person's connections with:
>
> - the debtor;
> - creditors;
> - any other party in interest;
> - their respective attorneys and accountants;
> - the United States trustee; and
> - any person employed in the United States trustee's office.

20. The R&B Application does not satisfy Rule 2014(a)(2)(A) because the Trustee fails to sufficiently explain the "need for the employment" of R&B.

21. In the R&B Application, the Trustee states that he needs R&B as his second counsel for "investigating identifying and prosecuting potential causes of action under the bankruptcy code beneficial to creditors," but at the time of the filing of the R&B Application, R&B had already investigated, identified, and prosecuted claims against Beliveau and others by the filing of the R&B Proceeding. It certainly took more than 3 days to draft the Complaint in the R&B Proceeding, so the Trustee's representations to the Court in the R&B Application that he required R&B to determine whether, in the first instance, any such claims existed is misleading at best, and demonstrably false given the timing of the filings.

22. Nor does the Trustee explain why he requires R&B to "investigat[e]," "identify[]," and prosecute "potential" causes of action when he already sought, and obtained, this Court's approval to retain his own firm, FM&B, for those same purposes. Why does the Trustee now need a large Boston firm to do the same legal work that he represented to the Court just a few months ago his firm was completely capable, experienced, and able to do?

23. Were the representations made by the Trustee and FM&B in the FM&B Application false? Is the R&B Application a concession and admission by the Trustee that he and his firm are not, in fact, capable of performing the bankruptcy services they represented to the Court they were able to perform, or that they had the necessary bankruptcy experience to carry out? Are the (manufactured) claims in the R&B Proceeding simply too complex for the Trustee and his firm to understand (to be fair, that is possible, given that the Trustee was advancing completely different legal theories and claims just a few months before he did his about-face and signed the Complaint in the R&B Proceeding).

24. Or, perhaps now, the Trustee believes that he requires a large Boston firm to, hopefully, successfully bring claims against Beliveau and his solo attorney in Portland, Maine

(who practices without any staff or associates), because he and his firm have been universally unsuccessful in that regard to date. *Compare* R&B Application ("The Trustee anticipates significant litigation in which the estate would benefit from the resources and experience that Atty. Braunstein and his firm will bring.") (emphasis added). Again, despite the representations in the FM&B Application to the contrary, FM&B must in fact lack the resources and bankruptcy experience to successfully litigate against the, apparently formidable, Creswell Law LLC and its one lawyer.

25. Nor does the R&B Application comply with D. Me. LBR 2014-1(c) in that it completely fails to "include a good faith estimate of the anticipated range of fees to be charged for such work. If the range of fees is impossible to forecast, the application shall explain why." *See also In re Jarvis*, 53 F.3d at 422 ("once local rules have been properly promulgated, lawyers and litigants are duty bound to comply with them.").

26. According to Attorney Braunstein's Supplemental Statement, his rate is $1,095 per hour. It is Creditors' belief that the estate is currently administratively insolvent because the Trustee has only recovered $6,500 in the last two years. But because of the Trustee's utter lack of transparency in the case on the issue, it is an open question how truly deep that administrative insolvency currently is.

27. Pretending for a moment that the Trustee had actually complied with Local Rule 2014-1(c), at $1,095 per hour, given the scope of the manufactured claims and made-up facts in the Trustee's Complaint in the R&B Proceeding, how expensive is that litigation going to be for the estate? The Trustee certainly thinks it is going to be "significant," a view that Beliveau shares in the event it unfortunately goes forward, albeit surely not in the same way the Trustee anticipates. But assuming that that litigation will cost the estate hundreds of thousands of dollars

and take many years, how are those fees going to be paid? Does the Trustee know? Has he done a cost-benefit analysis with respect to pursuing those claims, considering the time it will take to realize on them even if successful, and also considering the likelihood, or not, of recovery against an 89-year old Beliveau – all of which the Trustee has a fiduciary duty to do under 11 U.S.C. § 704(a)(1). No one knows because nothing the Trustee has filed to date addresses any of that.

> Although "a trustee or debtor-in-possession has a substantial degree of prosecutorial discretion to sue or not to sue," *In re V. Savino Oil & Heating Co.,* 91 B.R. at 656; *see In re Photo Promotion Assocs., Inc.,* 881 F.2d 6, 8 (2d Cir.1989) (recognizing "the broad discretion a bankruptcy judge has in applying [ ] § 549(a)"), it would be an abuse of discretion to bring an action to set aside a post-petition transfer if it would not financially benefit the estate. In order to make this assessment, a trustee must conduct a cost-benefit analysis. As explained in *In re C. Keffas & Son Florist, Inc.,* 240 B.R. 466, 474 (Bankr.E.D.N.Y.1999):
>
> [i]f the trustee fails to make this necessary cost-benefit analysis, then the trustee will necessarily breach the statutory mandate under 11 U.S.C. § 704(1) .... This is not an instance of second-guessing the trustee in a retrospective analysis at the end of the case. It is very definitely an ex ante, and not an ex post, approach that is mandated by the trustee's statutory duty of maximizing proceeds of distribution to the creditors, net administrative expenses, and distributing those proceeds as expeditiously as possible. *The proper application of this ex ante analysis does-it is undeniable-require the exercise of practical judgment.*
>
> *If a trustee incurs transaction costs for the estate when no purpose would be served by [such conduct], then that constitutes a per se breach of that duty.*

*In re Bean*, 251 B.R. 196, 204 (E.D.N.Y. 2000), aff'd, 252 F.3d 113 (2d Cir. 2001) (emphasis in original).

28. Nor does the R&B Application's vague allusion to "significant litigation" satisfy Local Rule 2014-1(c)'s scope of service requirements, particularly given that the Trustee actually knew at the time exactly what was alleged in the R&B Proceeding and against whom that

litigation was directed.[3] That is precisely why the Trustee intentionally elected to wait to file the R&B Application until after the Complaint in the litigation was drafted and ready to go (but again, given the Trustee's admission that he forgot for over a year to file the FM&B Application, Creditors here are willing to entertain the possibility that he did, again, just forget to file the R&B Application before R&B spent substantial amounts of time representing the Trustee without this Court's approval manufacturing and filing claims against Beliveau).

29. None of this is proper, truthful, or remotely candid compliance with Federal Rule of Bankruptcy Procedure 2014 and Local Rule 2014-1.

### B. R&B is not Necessary for Purposes of 11 U.S.C. § 327

> The purpose of 11 U.S.C. § 327 of the Bankruptcy Code is to provide notice to all creditors and parties in interest that the trustee is hiring a professional and is proposing to pay the professional from estate funds. Section 327 also gives the Court the ability to perform a screening process, verify the necessity of employment, ensure the neutrality of the person employed, and control and limit estate expenses, thereby promoting efficient administration of the bankruptcy estate. *See generally* 2 Lawrence P. King, Collier on Bankruptcy, § 327.03 (16th ed. 2009). "Section 327 requires 'prior court authorization of a professional's employment ... to prevent volunteerism and to assist the court in controlling administrative expenses.'" *Farinash v. Vergos (In re Aultman Enters.),* 264 B.R. 485, 490 (E.D.Tenn.2001) (quoting *In re McDaniels,* 86 B.R. 128, 129 (Bankr. S.D. Ohio 1988)).

*In re McKenzie*, 449 B.R. 306, 318 (Bankr. E.D. Tenn. 2011)

> Once the trustee meets the burden of demonstrating that an applicant for professional employment is qualified under § 327, *see* Bankr. Rule 2014(a), the discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.

---

[3] *See* D. Me. LBR 2014-1(c) ("Scope of Service. Every application shall include a particularized, case-specific summary of the services to be performed by the professional. The application shall include a good faith estimate of the anticipated range of fees to be charged for such work. If the range of fees is impossible to forecast, the application shall explain why.").

*In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992); *In re Coal River Res., Inc.*, 321 B.R. 184, 187 (W.D. Va. 2005) ("Even if the employment of a particular professional is allowed under section 327, the bankruptcy court still must decide whether to approve that professional considering "the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.").

> Although the Code vests in the bankruptcy trustee the immediate power to select candidates for employment by the bankruptcy estate, it gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the trustee and the estate, in part by empowering the court to approve candidates so selected…. If the bankruptcy court lacked such discretion, it would simply be a rubber stamp for the selections of counsel or other professionals by participants in bankruptcy proceedings…. The purpose of the rule requiring court approval of employment is to enable the court to control administrative expenses…. Further, [a]bsent extraordinary circumstances, bankruptcy estates should not be consumed by the fees and expenses of court-appointed professionals.

*In re Sw. Food Distributors, LLC*, 561 F.3d 1106, 1112 (10th Cir. 2009) (citations and quotations omitted) ("While the right to select counsel of one's own choice is an undeniable right afforded to participants in bankruptcy, that right is not without boundaries. We cannot say that the court abused its discretion in deciding that the case did not merit the appointment of two sets of counsel, and that Gable & Gotwals could adequately perform the job.").

> The proposed co-counsel have indicated an intention to divide duties between them. Indeed, as mentioned, the consent of the United States Trustee to their employment is contingent upon such a division. Given the integrity of both counsel, the Court has no doubts concerning the good faith of their intention to allocate duties. But a division of duties between counsel, each of whom is capable of performing all of the duties, cannot constitute cause for the employment of both when neither is being hired because of his particular skill to perform the duties so allocated. Here again, if this were cause for their joint employment, there would be little practical significance in the requirement to establish cause. Nor does a complete division of duties between counsel seem practical. For example, the Debtor posed this question at the hearing: is it likely that only one counsel will read and analyze the plan of reorganization that the Debtor has recently filed? We hardly think so, not because of any lack of good faith concerning allocation of duties, but because of the compelling desire that

> each will likely have to master the reorganization process as well as other aspects of this case.

*In re Bible Speaks*, 67 B.R. 426, 427 (Bankr. D. Mass. 1986) (denying application to employ co-counsel to committee).

30. Why is R&B even necessary here if FM&B is an experienced firm with extensive bankruptcy expertise and support staff and at least three attorneys that handle bankruptcy matters? That is at least what the FM&B Application represented to the Court a few months ago.

31. If the R&B Proceeding unfortunately advances beyond its current stage, Beliveau is not going to call Latham & Watkins LLP in New York and see if they have a conflict to serve as co-counsel to Creswell Law. Does the Trustee truly believe that he and his firm are so over-matched by a solo in Maine without any staff or associates that they cannot litigate the R&B Proceeding without the assistance of a large Boston firm? Why was FM&B even retained in the first place if they were incapable of representing the Trustee and the estate's interests in the case on, literally, the only potential "asset" of the estate that the Trustee believes he can monetize?

32. What different or unique expertise does R&B bring to this case, other than their apparent willingness to manufacture non-existent claims based upon made-up facts? To his credit, the Trustee was not advancing any of the made-up claims alleged in the Complaint in the R&B Proceeding just a few months ago when he was threatening people with a completely different litigation on totally different theories (that he never then actually brought).

33. Perhaps that is why the Trustee and the estate "need" R&B – because R&B and Attorney Braunstein are willing to pursue baseless claims and make up facts, whereas the Trustee, until now, was not. Creditors do not know the answers to any those questions. But it is not their burden under § 327 of Code either.

34. But for the avoidance of any doubt, if the retention of R&B is approved and the R&B Proceeding advances – at all – beyond its current status, then it is an absolute certainty that the bankruptcy estate's and its creditors' interests will not have been protected because the "resolution of [this] bankruptcy proceeding" is never going to be "efficient, expeditious, and economical." *In re Harold & Williams Dev. Co.*, 977 F.2d at 910.

35. Much to the contrary, the R&B Proceeding will end only when Beliveau decides it does. And it will end on only his terms.

**C. If the R&B Application is Approved, then One-Half of the Lodestar Approach for Evaluating the Reasonableness of Legal Fees Will Be Eliminated in this District**

36. In his R&B Application, the Trustee proposes to retain R&B and its attorneys at their regular hourly rates, including $1,095 for Attorney Braunstein.

37. Upon information and belief, there are no bankruptcy attorneys regularly practicing before this Court that charge $1,100 per hour for bankruptcy work, regardless of the complexity of the case. A few attorneys in larger firms in Maine with offices nationally charge upwards of $800 – $900 per hour for work in this District, but even those rates are at the high end of the scale.

38. And, to be clear, this is essentially a no-asset Chapter 7 case, with no hard assets administered, no complex sales accomplished under § 363 of the Code, no involved Chapter 11 plans confirmed, no claims-objection contested matters to speak of. It is not a complicated case. And just because the Trustee's administration of it has been a disaster, that does not mean that it has been hard to figure out.

39. It does now, though, have an eleventh-hour, frivolous hail-Mary litigation filed by the Trustee and his proposed counsel, R&B, against his and Debtor's prime antagonist because

they are both personally very unhappy with Beliveau and his counsel. So it does have that (for the time being).

40. Under those circumstances, if R&B is approved as second counsel to the Trustee with rates at $1,095 per hour, then there can never be an instance in this District going forward where any attorney's rate under $1,095 can be successfully challenged under one-half of the lodestar analysis (rate) for the reasonableness of legal fees. If an attorney can charge $1,095 an hour to the estate in a no-asset Chapter 7 case, then any rate less than that in <u>any</u> bankruptcy case in this District regardless of complexity, by necessity, must be reasonable.

> In this Circuit, the methodology employed to evaluate the reasonableness of compensation for professionals is the "lodestar" approach. *See Boston and Maine Corp. v. Moore,* 776 F.2d 2, 6–7 (1st Cir.1985)…. Courts first develop a point of reference by determining a reasonable billing rate and then multiplying it by the number of hours which appropriate tasks should have consumed….
>
> The lodestar rate ought to take into account the type of work performed, who performed it, the expertise that it required, and when it was undertaken. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950–51 (1st Cir.1984). The court must "consider prevailing market rates in determining the lodestar, based on usual and customary rates in the jurisdiction.... No presumption exists that a professional is entitled to the amount he or she requests." *Narragansett Clothing Company,* 210 B.R. at 498–99. Once determined, the applicable rate is multiplied by the hours reported, after those which are duplicative, unproductive, excessive, or otherwise unnecessary are subtracted. *Grendel's Den, Inc. v. Larkin,* 749 F.2d at 950.

*In re Schold*, 554 B.R. 287, 297–98 (Bankr. D. Mass. 2016) (citations and quotations omitted); *see also In re Little*, 484 B.R. 506, 510–11 (B.A.P. 1st Cir. 2013) ("We employ the 'lodestar' approach as a device helpful in determining reasonable attorneys' fees. Courts determine reasonable hourly rates based on the nature of the work, the locality where it was performed, the lawyer's qualifications, and other pertinent criteria.").

41. The Trustee's hourly rate is $550. Attorney Borden with FM&B is $325 per hour. Yet, somehow, the Trustee now wants to pay R&B $385 per hour for a paralegal, and $1,095 an hour for Attorney Braunstein. Undersigned counsel's rate of $450 per hour is apparently absurdly under market for an attorney of his experience and credentials.[4]

42. Creditors assert that none of this appropriate or warranted, that one-half of the lodestar approach in this District should not be eliminated, and that Court should reject both Attorney Braunstein's hourly and the retention of R&B.

**D. R&B is Not Disinterested Because it Has an Administrative Expense Claim Against Estate**

43. Section § 327(a) of the Code provides as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

44. Because the Trustee consciously elected to hide his retention of R&B in order to enable the firm and Attorney Braunstein to investigate, research, coordinate with Debtor, and otherwise draft the Complaint in the R&B Proceeding before seeking this Court's authorization to retain them as second counsel to the Trustee, R&B now, at least potentially, possesses an administrative expense claim against the estate under § 503(b) of the Code. That deprives R&B from being a "disinterested person" for purposes of §§ 101(14)(C) and 327(a) of the Code because they possess, at least potentially, a claim against the estate.

> There is no question that the purpose of the incorporation of the disinterest requirement of 11 U.S.C. § 327 was to prevent even the appearance of a conflict irrespective of the integrity of the person or firm under consideration. Certainly a 'disinterested' person should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.

---

[4] Not for long though, given the relative results of the parties in case and the "quality" of the Complaint filed in the R&B Proceeding at $1,095 per hour.

*In In re Martin*, 817 F.2d 175, 181 (1st Cir. 1987).

## IV. Conclusion

WHEREFORE, Severin M. Beliveau, Esq. and Montresor LLC request that this Court deny the R&B Application, in its entirety, and grant them such other and further relief as is just and appropriate under the circumstances.

Dated: October 20, 2026

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditors,
Severin M. Beliveau, Esq. and
Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME 04112
207.358.1010
rcreswell@creswelllaw.com

## CERTIFICATE OF SERVICE

I, Randy J. Creswell, hereby certify that I served on this day copies of the above Objection and Certificate of Service upon each of the parties listed on the Notice of Electronic Filing via the Court's Administrative Procedures Governing the Filing and Service by Electronic Means (unless otherwise indicated below).

Dated: October 20, 2026

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Creditors,
Severin M. Beliveau, Esq. and
Montresor LLC

CRESWELLLAW
PO Box 7340
Portland, ME 04112
207.358.1010
rcreswell@creswelllaw.com

**Service List**

Kevin J. Mattson (via email only)

Terence J. Conklin (via email only)

Seth W. Brewster, Esq. (via email only)

John C. Orestis (via U.S. Mail)
PO Box 777
Lewiston, ME 04240